# Exhibit 1

Case Nos.

3:16-cv-02056-MPS

3:19-cv-00710-MPS

3:20-cv-00802-MPS

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| |
|---|
| The State of Connecticut, *et al.*<br><br>     Plaintiffs,<br><br>v.<br><br>Aurobindo Pharma USA, Inc., *et al.*<br><br>     Defendants. |

**3:16-cv-02056-MPS**

**August 30, 2024**

**SETTLEMENT BETWEEN THE STATES ON THE ONE HAND, AND
DEFENDANTS HERITAGE PHARMACEUTICALS INC., EMCURE
PHARMACEUTICALS LTD. AND SATISH MEHTA ON THE OTHER HAND**

This Settlement Agreement is made and entered into this 30th day of August 2024 by and among Heritage Pharmaceuticals Inc. ("Heritage"), Emcure Pharmaceuticals Ltd. ("Emcure"), Satish Mehta ("Mr. Mehta") (collectively "Defendants" or "Released Parties") and the States, by and through their respective Attorneys General from the jurisdictions of:

> Connecticut, Alaska, Arizona, California, Colorado, District of Columbia, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

Defendants and the States shall collectively be referred to as the "Parties."

WHEREAS, the States are prosecuting claims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724, including *Connecticut v. Actavis Holdco U.S. Inc.*, No. 2:17-cv-03768 (E.D. Pa.) (the "Action" or collectively, the "States' Actions");

WHEREAS, the States allege in the Action that Defendants violated various antitrust and consumer protection laws by price-fixing and allocating markets for specified drugs;

WHEREAS, arm's-length settlement negotiations have taken place between the States and Defendants, and the result is this Settlement Agreement, which embodies all the terms and conditions of the settlement between the States and Defendants (the "Settlement Agreement");

WHEREAS, the States have concluded that it is in the best interests of the States to enter into this Settlement Agreement; and

WHEREAS, Defendants have concluded that it is in the best interests of Defendants to enter into this Settlement Agreement;

NOW, THEREFORE, in exchange for the mutual obligations described below, the States and Defendants hereby enter into this Settlement Agreement on the following terms and conditions:

## I. DEFINITIONS

As used in this Settlement Agreement:

"Costs Account" means forty percent (40%) of the Settlement Payment, which the States will hold in escrow and use to pay for Settlement Administration Costs and, upon final approval of the Settlement Agreement, for costs of litigating the States' claims, subject to approval of the District Court.  To the extent that monies in the Cost Account are not used to offset costs of States litigating in the multistate actions, any remaining funds may be used for any of the following: (1) Deposit into a state antitrust or consumer protection account (e.g., revolving account, trust account) for use in accordance with the laws governing the account; (2) Deposit into a fund exclusively dedicated to assisting any State to defray the costs of experts, economists and consultants in multistate antitrust investigations and litigations, including healthcare related investigations and litigation; (3) antitrust or consumer protection enforcement, including healthcare-related enforcement, by an individual State or multiple States; or (4) for any other use permitted by state law at the sole discretion of that State's Attorney General.

"Eligible Consumers" mean natural persons who purchased, directly or indirectly, any of the drugs specified in the Action and the two other actions brought by the States pending in the

States' Actions, whether through a cash payment in the absence of insurance, or through insurance, paid a co-pay, deductible, or co-insurance payment.

"Enforcement Period" means a 10-year period from the execution of this Settlement Agreement.

"Final Approval Order" means the order to be entered by the United States District Court for Connecticut or any other presiding federal District Court (the "District Court") that grants final approval of this Settlement Agreement. The Parties intend that the Final Approval Order will include: (1) an affirmance by the District Court that the Notice Plan (as defined below) has been completed; (2) a determination by the District Court that the Settlement Agreement is approved finally as fair, reasonable, and adequate for Eligible Consumers and any other entities on whose behalf the States are settling and releasing their claims for which such approval is needed; (3) an order from the District Court that the monies in the Restitution Account (as defined below) be held in escrow for later distribution pursuant to a District Court-approved distribution plan for Eligible Consumers, as well as Medicaid agencies and non-Medicaid state agencies if required by law, whose claims are being released; and (4) an order from the District Court that monies in the Costs Account are to be disbursed to the States.

"Local Entity(ies)" means any county, city, town, or other local governmental entity.

"Notice Plan" means the plan specifying the manner and content of notifying Eligible Consumers of this Settlement Agreement and informing Eligible Consumers of their rights to comment on or to exclude themselves from the States' Actions and this Settlement Agreement. The Parties contemplate that the Notice Plan will take ninety (90) days or such other time period set by the District Court. The Notice Plan will specify the way in which Eligible Consumers are to be notified of the States' Actions and this Settlement Agreement. The Notice Plan will

recognize a second notification to Eligible Consumers, potentially following a later settlement, may be necessary prior to distribution of funds.

"Preliminary Approval Order" means an order to be entered by the District Court that preliminarily approves this Settlement Agreement. The Parties intend that the Preliminary Approval Order will include the following provisions: (1) preliminary approval of this Settlement Agreement as fair, reasonable, and adequate and in the best interests of Eligible Consumers and any other entities on whose behalf the States are settling and releasing their claims and for which such approval is needed; and (2) approval of the Notice Plan.

"Related Case" means any case in or coordinated with MDL 2724 (E.D. Pa.).

"Released Parties" means Heritage (and all its current and former employees, personnel, agents, and representatives, except for Jeffrey Glazer and/or Jason Malek) and Emcure (and all its current and former employees, personnel, agents, and representatives, including, but not limited to, Mr. Mehta) individually and collectively.

"Restitution Account" means sixty percent (60%) of the Settlement Payment, which the States will hold in escrow for later distribution to victims of the anticompetitive acts alleged by the States, including Eligible Consumers, Medicaid state agencies, and other state agencies whose claims are being released by the States. These amounts are intended to compensate these persons and entities for monies taken from them as the result of these alleged anticompetitive acts.

"Settlement Administration Costs" means costs to be paid for all actual, customary, and reasonable costs and fees incurred in the administration of this Settlement Agreement, which includes costs and fees incurred for the purpose of (1) compiling necessary Eligible Consumer information and providing notice directly to Eligible Consumers and including notice by

publication or paid media as may be needed to effectuate adequate notice, (2) completing

administrative tasks, and (3) processing information gathered about Eligible Consumers.  Such

Settlement Administration Costs expressly include those fees or costs payable to the settlement

administrator appointed by the States.

## II.  SETTLEMENT PAYMENT AND USE OF THAT PAYMENT

Heritage, Emcure, and Mr. Mehta shall pay to the States $10,000,000.00 (the "Settlement

Payment"), within five (5) business days after full execution of the Settlement Agreement by all

Parties.  The Settlement Payment shall be held in escrow by the States pending final approval of

the Settlement Agreement.

Forty percent (40%) of the Settlement Payment – or $4,000,000.00 – will be placed in the

Costs Account and the States will use such funds to pay Settlement Administration Costs and,

upon final approval of the Settlement Agreement, the past and future costs of litigating the

States' claims.  Disbursements for Settlement Administration Costs not to exceed a total of

$600,000 may be withdrawn from the Costs Account before final approval of the Settlement

Agreement and without further District Court order upon preliminary approval of the Settlement

Agreement.

Sixty percent (60%) of the Settlement Payment – or $6,000,000.00 – will be placed in the

Restitution Account.  Any distribution to Eligible Consumers, and where required by law,

Medicaid agencies, and other non-Medicaid state agencies, shall only be distributed at a future

date according to a distribution plan submitted to and approved by the District Court that may

include any subsequent settlements.   The Parties acknowledge that the Settlement Payment paid

by Defendants under this Settlement Agreement constitutes adequate restitution for alleged

injury to Eligible Consumers, Medicaid agencies, and other non-Medicaid state agencies under

the States' claims, and the States confirm that any such Eligible Consumers, Medicaid agencies, and other non-Medicaid state agencies shall look solely to the funds in the Restitution Account in settlement and satisfaction of all claims asserted by the States that are released hereunder against the Released Parties.

The Parties agree and understand that any distribution plan is to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness, and adequacy of the resolution set forth in the Settlement Agreement, and any order or proceedings relating to any distribution plan shall not operate to terminate or cancel the Settlement Agreement or affect the finality of the Final Approval Order, or any other orders entered pursuant to the Settlement Agreement. If the District Court denies final approval of the Settlement Agreement, the full amounts in the Restitution Account and the Costs Account shall be refunded to Defendants within five (5) business days, which shall be the full Settlement Payment less any amounts expended for Settlement Administration Costs not to exceed a total of $600,000.

## III. RELEASED AND RESOLVED CLAIMS

The States release the Released Parties from all claims that the States brought or could have brought against the Released Parties (except on behalf of Local Entities)[1] in the Action brought by States relating to the drugs specified in the Action based on the conduct alleged in that Action, namely, antitrust, consumer protection, fraud or false claims act, "overarching conspiracy," unjust enrichment and disgorgement claims. The States covenant not to sue the Released Parties for all claims that the States brought or could have brought against other

---

[1] Additionally, the states of Florida, Idaho, Illinois, and Missouri do not release the claims they brought or could have brought on behalf of business entities, defined as any partnership, firm, for-profit or not-for-profit corporation, whether domestic or foreign, company, foundation, trust, or any other commercial or business entity or association.

defendants for any other drug for which the States assert a claim in any of the States' Actions based on the conduct alleged in the States' Actions, namely, antitrust, consumer protection, fraud or false claims act, "overarching conspiracy," unjust enrichment, and disgorgement claims. The claims released and the claims on which the States covenant not to sue are collectively referred to as "Released and Resolved Claims."

As permitted by law, each State fully and finally releases and forever discharges the Released Parties from all Released and Resolved Claims. Each State hereby covenants and agrees that it shall not sue or otherwise seek to establish or impose liability, in any capacity and on behalf of itself or any other person or entity or class thereof, against any Released Party based, in whole or in part, on any of the Released and Resolved Claims.

Notwithstanding any term in this Settlement Agreement, Released and Resolved Claims specifically do not include claims unrelated to competition, including:

Any civil or administrative liability under state revenue codes;

Any civil or administrative liability related to a State's Medicaid program under any statute, regulation, or rule for any conduct other than the conduct alleged in the States' complaints, including, but not limited to, state or federal false claims act, anti-kickback or off-label marketing violations for the specified drugs;

Any criminal liability;

Any breach of contract or any liability for expressed or implied warranty claims or other liability for defective or deficient products and services provided by Defendants;

Any liability for unfair or deceptive representations made in the marketing or advertising or for off-label marketing claims for the specified drugs to the extent that such claims are not predicated on the conduct alleged in the Action; and

Any securities-based liability.

**Preservation of Claims against Other defendants**. Heritage's sales of drugs specified in the Action shall, to the extent permitted or authorized by law, remain in the Action against

other defendants in the Action as a potential basis for restitution and other monetary claims and

shall be asserted as a part of any joint and several liability claims against other defendants in the

Action or against other persons other than the Released Parties.

In addition, the Parties expressly waive, release, and forever discharge any and all

provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent.  A general release does not extend to
> claims which the creditor does not know or suspect to exist in his or her favor at
> the time of executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States or other jurisdiction, or principle of

common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.

The Parties may discover facts other than or different from what the Party believes to be true

with respect to price-fixing, market allocation, or bid-rigging within the time periods mentioned

in the States' complaints filed by the States in the States' Actions in the MDL concerning the

Released and Resolved Claims, but each Party expressly waives and fully, finally and forever

settles, releases, resolves, and discharges, upon this Settlement Agreement becoming final, any

suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would

otherwise fall within the definition of Released and Resolved Claims, whether or not concealed

or hidden, without regard to the subsequent discovery or existence of such different or additional

facts.  This provision shall not in any way expand the scope of the Released and Resolved

Claims and shall not convert what is a limited release into a general release.

## IV. COOPERATION

Defendants have to date provided substantial cooperation to the States in the form of

providing an account of the facts known to them that are potentially relevant to the claims in the

Action; furnishing documents and data in their possession, custody, or control that are potentially

relevant to the States' claims in the Action; and exercising best efforts to secure and facilitate cooperation from cooperating individuals covered by their conditional leniency agreements and to make themselves available for interviews.  Under this Settlement Agreement, the States do not intend to, and will not, take any actions to oppose or otherwise interfere with Defendants' efforts to obtain from the District Court a determination that Defendants have provided satisfactory cooperation, pursuant to ACPERA Section 213(c), with respect to their obligations under Section 213(b).  For the purposes of clarity, providing truthful, factual responses to questions posed to the States' counsel by the District Court regarding Defendants' cooperation shall not constitute a violation of this provision.  Defendants shall continue to provide such cooperation to the States, and their respective counsel, as a condition of this Settlement Agreement.  Additional areas of cooperation shall include the following:

A.    Reasonable efforts to assist the States to understand data produced by Heritage and/or Emcure, including consulting with technical personnel to address questions posed by the States' respective data consultants, and to provide any additional information or data reasonably necessary to understand or clarify the data or otherwise render it admissible, and to provide additional data as may be reasonably necessary.

B.    Reasonable efforts to authenticate and lay the foundation to admit as business records any documents identified by the States for use in any of the three States' Actions in the MDL brought by the States.

C.    Identification of persons who are or were working for Heritage and/or Emcure who are likely to have relevant information about the alleged conduct in this Action, including whether such persons remain under the control of Defendants.  The Parties agree for purposes of this provision that Defendants need not produce Mr. Mehta for an interview unless the States can

demonstrate that he has information relevant to States' claims that cannot be provided by other witnesses.

      D.    Attorney proffers on Heritage's, Emcure's, Mr. Mehta's, and current and former employees' knowledge and roles in the conduct alleged in this Action, to the extent not already provided.

      E.    Best efforts to provide access to persons identified in (C) and (G) for interviews, including Matthew Edelson and Anne Sather, to the extent not already provided.

      F.    Production of witnesses identified in (C) and (G) for testimony at trial to the extent that such witnesses are under Defendants' control, and best efforts to produce for testimony at trial witnesses not under Defendants' control.  Defendants will notify the States as reasonably in advance as feasible if any potential witness's status changes with regards to being under Defendants' control.

      G.    Identification of persons at Heritage and/or Emcure who are likely to have relevant information concerning Heritage's pricing information contained in other defendants' documents, and the accuracy of this information, for drugs named in the States' complaints.

      H.    Identification of price increases implemented by Heritage during the relevant time period for each drug named in the States' complaints as to which States allege Heritage entered into a product-specific conspiracy, including identification of supportive documents and data by Bates number.

## V. REQUESTS FOR APPROVAL AND NOTICE

The States intend to seek approval from the District Court for the actions that the Parties contemplate for use of the Settlement Payment, including the contemplated later distribution of settlement proceeds to Eligible Consumers and other entities being released by the States to the

extent that such approval is required.  After this Settlement Agreement is finally executed, the

States will file a motion for preliminary approval of the Settlement Agreement.  The States will

provide a copy of such motion (including all exhibits and attachments to such motion) to

Defendants in advance of filing.

The States shall disseminate notice of the potential approval of this Settlement

Agreement according to the Notice Plan to potentially affected Eligible Consumers and other

entities being released by the States, and, to the extent required, any other notice, to the extent

that such notice is required in the manner and within the time directed by the District Court.

The States shall file with the District Court and as directed by the District Court a Motion

for a Final Approval Order.  At least seven (7) days prior to filing their Motion for a Final

Approval Order, the States shall provide a copy of such motion (including all exhibits and

attachments to such motion) to Defendants.

## VI. QUALIFIED SETTLEMENT FUND

A.    The "State Escrow" (a "Settlement Fund") will be established by order of the

District Court at Huntington Bank with such bank serving as escrow agent ("Escrow Agent")

subject to one or more escrow agreements mutually acceptable to the Parties.  Each Settlement

Fund is established to resolve and satisfy one or more claims described in the preamble to this

Settlement Agreement, and each shall be subject to the District Court's continuing supervision

and control.  In addition, the Attorneys General shall make such elections as necessary or

advisable to carry out the provisions of this Section VI.  Such elections shall be made in

compliance with the procedures and requirements contained in any applicable regulations.

B.    The Parties intend that the Settlement Fund shall be a "qualified settlement fund"

within the meaning of Treasury Regulation § 1.468B-1, shall act in a manner consistent with the

treatment of the Settlement Fund as such a qualified settlement fund, and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. The administrators for the State Escrow shall be California, New York and Ohio (each, in such capacity, an "Administrator"). The Administrator shall cause the timely and proper filing of all informational and other tax returns necessary or advisable with respect to the applicable Settlement Fund (including without limitation the returns described in Treasury Regulation §§ 1.468B-2(k)(1) and (l)(2)). The Administrator shall make a "relation-back election" (as defined in Treasury Regulation § 1.468B-1(j)), if available, to permit the Settlement Fund to be treated as a qualified settlement fund from the earliest permitted date. It shall be the responsibility of the Administrator to cause the timely and proper preparation and delivery of the necessary documentation with respect to the Settlement Fund for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

       C.     The Escrow Agent shall cause the Settlement Fund to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively, by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates. The Released Parties shall bear no risk related to the Settlement Fund. The Settlement Fund shall be deemed and considered to be in custodia legis of the District Court and shall remain subject to

the jurisdiction of the District Court, until such time as the funds therein shall be distributed pursuant to this Settlement Agreement or further order(s) of the District Court.

D.      All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned on a Settlement Fund, including any taxes or tax detriments that may be imposed upon any Released Party with respect to income earned on a Settlement Fund for any period during which such Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of a Settlement Fund (including expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) tax returns with respect to the Settlement Fund ("Tax Expenses")), shall be paid out of such Settlement Fund.

E.      No Released Party nor their respective counsel shall have any liability or responsibility with respect to a Settlement Fund for the Taxes or the Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other taxing authority.  The Escrow Agent and Attorneys General respectively shall indemnify and hold the Released Parties harmless for Taxes and Tax Expenses (including taxes payable by reason of such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Administrator out of the Settlement Fund without prior order from the District Court and the Administrator shall be obliged (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the District Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)).  No

Released Party shall be responsible or have any liability therefore or for any reporting requirements that may relate thereto. The Parties agree to cooperate with each other and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph VI.E.

## VII.  NO ADMISSION

Neither the settlement, the Settlement Payment, nor the Settlement Agreement shall be used or construed by any person as an admission of liability by Defendants to any party or person or be deemed evidence of any violation of any statute or law or admission of any liability or wrongdoing by the Released Parties, or of the truth of any of the claims or allegations asserted against Defendants in any of the Related Cases.

## VIII. BENEFIT AND BINDING EFFECT

The terms of this Settlement Agreement shall be binding on and shall inure to the benefit of the Parties and their successors. The Parties do not intend this Settlement Agreement, or any part hereof, or any aspect of the settlement or the releases, to extend to, to release, or otherwise to affect in any way any rights that the Attorneys General have or may have against any other person, party or entity whatsoever, other than the Released Parties.

## IX. MISCELLANEOUS

Defendants may file the Settlement Agreement and/or the Final Approval Order in any action that may be brought against them to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment, bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

Connecticut, New York, and North Dakota (the "Representative States") are expressly authorized by the States to take all appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms in consultation with the States.

Each counsel or other person executing the Settlement Agreement on behalf of any Party warrants that such person has full authority to do so.

This Settlement Agreement contains the entire agreement and understanding of the Parties.  There are no additional promises or terms of the Settlement Agreement other than those contained herein.  This Settlement Agreement shall not be modified except in writing signed by the States and Defendants or by their authorized representatives.

All dates and time periods in this Settlement Agreement shall be calculated pursuant to the Federal Rules of Civil Procedure.  All such dates and time periods may be modified if mutually agreed upon, in writing, signed by counsel for Liaison States and Defendants or by their authorized representatives.

Each of the Parties hereto participated materially in the drafting of this Settlement Agreement.  None of the Parties hereto shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

The captions contained in this Settlement Agreement are inserted only as a matter of convenience and in no way define, limit, extend, or describe the scope of this Settlement Agreement or the intent of any provision hereof.

The terms of the Settlement Agreement shall control in the event there are any conflicting terms in any related document.

The Settlement Agreement and any related documents shall be subject to, governed by and construed, interpreted, and enforced pursuant to the internal laws of the Commonwealth of Pennsylvania, without regard to any choice of law principles.

The District Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement, and all States, Heritage, and Emcure hereby submit to the exclusive jurisdiction of the District Court for purposes of implementing and enforcing the Settlement Agreement.

Any and all notices, requests, consents, directives, or communications by any Party intended for any other Party shall be in writing and shall, unless expressly provided otherwise be provided by United States mail and electronic mail to:

For the States:

Robert L. Hubbard
Assistant Attorney General
28 Liberty Street, 20th floor
New York, NY 10005
212 416-8267
Robert.Hubbard@ag.ny.gov

*Counsel for New York*

Elin S. Alm
Assistant Attorney General
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
(701) 328-5570
ealm@nd.gov

*Counsel for North Dakota*

W. Joseph Nielsen
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5396
860-808-5040
joseph.nielsen@ct.gov

*Liaison Counsel for the States*

For Defendants:

Edward B. Schwartz
Reed Smith LLP
1301 K Street NW

Gregory Vose
Amy M. Kerlin
Reed Smith LLP

Washington DC 20005                    225 Fifth Avenue
eschwartz@reedsmith.com                Pittsburgh, PA 15222
                                       gvose@reedsmith.com
*Counsel for the Defendants*           akerlin@reedsmith.com

                                       *Counsel for the Defendants*

Any one of the Parties may, from time to time, change the address to which such notices, requests, consents, directives, or communications are to be delivered, by giving the other Parties prior written notice of the changed address, in the manner herein above provided, ten (10) calendar days before the change is effective.

**Choice of Venue**.  Heritage and Emcure irrevocably consent to the venue of the United States District Court in which the Action is pending, currently the District of Connecticut, in any action or proceeding to enforce the obligations contained in this Settlement Agreement.  Service of any summons and/or complaint, and any other process which may be served on Heritage or Emcure may be made by mailing via registered mail or delivering a copy of such process to the address last provided by Heritage and Emcure to the States or by mailing or delivering a copy of such process to Defendants' counsel in the Action.

**Costs and Expenses**. In conjunction with final approval of the Settlement Agreement, the States reserve the right to seek costs and expenses.  The Defendants shall not be liable for any costs, attorneys' fees, other fees, or expenses of any of the attorneys, experts, advisors, agents, or representatives for the States, but any such costs, fees, and expenses as approved by the District Court shall be paid out of the Settlement Fund.  Defendants agree to take no position on any requests by the States for costs and expenses.

**Legal Compliance and Prospective Injunctive Relief**. Heritage covenants that it has not, since January 1, 2016, engaged in any per se price-fixing, market allocation, or bid rigging

as to any generic pharmaceutical product, including any product named in the States' complaints. Heritage further covenants, that it, along with its current directors, officers, and employees shall not, directly or indirectly, maintain, solicit, suggest, advocate, discuss or carry out any unlawful agreement with any actual or potential competitor in the generic pharmaceutical industry to: (a) fix prices for generic pharmaceuticals; (b) submit courtesy, cover, or otherwise non-competitive, bids or proposals for the supply, distribution or sale of generic pharmaceuticals; (c) refrain from bidding on, or submitting proposals for, the supply, distribution, or sale of generic pharmaceuticals; or (d) allocate customers for the sale of generic pharmaceuticals for the Enforcement Period. These covenants are a material term of this Settlement Agreement.

The Parties agree that the covenants in the (i) Legal Compliance and Prospective Injunctive Relief section and (ii) Business Reform section shall be enforceable upon entry of the Settlement Agreement. The covenants shall further be implemented as part of the District Court's approval of the Settlement Agreement and shall be fully enforceable thereafter as part of the District Court's approval orders for the remaining duration of these covenants. The Parties also specifically agree that the States may file a new action based on violation of these covenants.

**Business Reforms**. Heritage represents to the States that it has implemented, and shall continue to maintain during the Enforcement Period, a written "Antitrust Compliance Manual," on which all current Heritage employees have been trained, including its employees engaged in activities relating to the pricing or sale of generic pharmaceuticals. Each Heritage employee is required to sign an acknowledgment form stating that they have read, and will abide by, the Antitrust Compliance Manual. Heritage also implemented, and will continue to conduct during the Enforcement Period, periodic antitrust training sessions for its employees at least once per

year.  Such antitrust training has been delivered by an attorney with relevant experience in the field of antitrust law, and Heritage keeps attendance at each training session to ensure that all employees receive the training.  Heritage has developed effective lines of communication for its employees engaged in activities relating to the pricing or sale of generic pharmaceuticals, and Heritage's training sessions, and the Antitrust Compliance Manual, include clear instructions to those attending that, if they identify any problematic conduct undertaken by any Heritage employee might violate the antitrust laws, that they are required to contact Heritage's General Counsel and/or the Chief Compliance Officer.  Heritage's training sessions, and the Antitrust Compliance Manual, also make clear the consequences of any antitrust violations.

Heritage has appointed, and will maintain during the Enforcement Period, a Chief Compliance Officer, who serves to enforce Heritage's Antitrust Compliance Manual and monitor Heritage's employees to ensure that there are no further violations of the antitrust laws during the Enforcement Period.  The Chief Compliance Officer shall advise and report to Heritage's Board of Directors, and shall be responsible for ensuring Heritage's performance of the following:

- Furnishing a copy of the Settlement Agreement, within thirty (30) days of the entry of the Final Approval Order, to each member of Heritage's Board of Directors, to its Chief Executive Officer, to each of its Senior Vice-Presidents, and to each of Heritage's employees engaged, in whole or in part, in activities relating to the pricing or sale of generic pharmaceuticals;

- Furnishing a copy of the Settlement Agreement in a timely manner to each officer, director, or employee who succeeds to any position identified above; and

- Maintain its Antitrust Compliance policy and continue to conduct comprehensive and effective antitrust training for Heritage employees engaged in activities relating to the pricing or sale of generic pharmaceuticals on an annual basis.

Upon discovery or receipt by Heritage's General Counsel or Chief Compliance Officer of a credible notification of a potential violation of the covenants in this Section or the Legal Compliance and Prospective Injunctive Relief Section of this Agreement, Heritage shall take appropriate action to: (a) immediately terminate or modify Heritage's conduct to assure continued compliance with this Settlement Agreement (if necessary); and (b) within ten (10) business days of such discovery or receipt, provide to the designated Representative States in writing, a description of the actual or potential violation of this Settlement Agreement and the corrective actions taken (if any).

**Counterparts**. This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  Signatures provided by facsimile transmission, or in Adobe Portable Document Format (PDF) sent by electronic mail, shall be deemed to be original signatures and this Term Sheet may be delivered by email of PDF files.

Edward B. Schwartz
REED SMITH LLP
1301 K Street NW, Suite 1100
Washington, DC 20005
Phone: (202) 414-9200
Fax: (202) 414-9299
eschwartz@reedsmith.com

*Counsel for Defendants Heritage
Pharmaceuticals Inc., Emcure
Pharmaceuticals Ltd., and Satish Mehta*

Dated: _September 19, 2024_

-20-

W. Joseph Nielsen
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5396
joseph.nielsen@ct.gov

Liaison Counsel for the States

Dated: 11/15/23

*/s/ Jeff Pickett*

Jeff Pickett
Senior Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Tel: (907) 269-5100
Fax: (907) 276-3697
jeff.pickett@alaska.gov

*Counsel for Alaska*

Dated:   May 28, 2024

FOR PLAINTIFF STATE OF ARIZONA

KRISTIN K. MAYES
ATTORNEY GENERAL


Robert A. Bernheim
Unit Chief Counsel
Vinny Venkat
Assistant Attorney General
Antitrust & Privacy Unit
Consumer Protect & Advocacy Section
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
Tel: (602) 542-5025
robert.bernheim@azag.gov
vinny.venkat@azag.gov
consumer@azag.gov

*Counsel for Arizona*

Dated: July 19, 2024

PLAINTIFF STATE OF CALIFORNIA
ROB BONTA
ATTORNEY GENERAL

Dated: May 28, 2024

By: _____
Emilio Varanini
Supervising Deputy Attorney General
Healthcare Rights and Access Section
California Office of the Attorney General
455 Golden Gate Avenue, Ste. 11000
San Francisco, Ca. 94102
Phone #: 415-510-3541
E-mail: Emilio.Varanini@doj.ca.gov

*Attorneys for Plaintiff State of California*

_/s/ Ian L. Papendick_
Ian L. Papendick
Assistant Attorney General
Colorado Department of Law, Antitrust Unit
1300 Broadway, Seventh Floor
Denver, Colorado 80203
Telephone: 720.508.6193
Email: ian.papendick@coag.gov
_Counsel for State of Colorado_
_Philip J. Weiser Attorney General_

Dated:  March 14, 2024

Adam Gitlin
Chief, Antitrust and Nonprofit
Enforcement Section
400 6th St. NW, 10th Fl.
Washington, DC 20001
Tel: (202) 442-9864
Adam.Gitlin@dc.gov

*Counsel for District of Columbia*

Dated: MARCH 18, 2024

FOR PLAINTIFF STATE OF DELAWARE

KATHLEEN JENNINGS
ATTORNEY GENERAL

Michael A. Undorf
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
(302) 683-8816
michael.undorf@delaware.gov

Attorney for Plaintiff State of Delaware

Dated:  May 22, 2024

FOR PLAINTIFF STATE OF FLORIDA
ASHLEY MOODY
ATTORNEY GENERAL


By: _____
    John Guard
    Chief Deputy Attorney General
    Nicholas J. Weilhammer
    Associate Deputy Attorney General for Enforcement
    Lizabeth A. Brady
    Director, Antitrust Division
    Liz.Brady@myfloridalegal.com
    Timothy Fraser
    Senior Assistant Attorney General
    Timothy.Fraser@myfloridalegal.com
    Office of the Attorney General
    State of Florida
    PL-01, The Capitol
    Tallahassee, FL 32399-1050
    Tel:    (850) 414-3300
    Fax:    (850) 488-9134

STATE OF GEORGIA

/s/ Logan Winkles
Christopher Carr, Attorney General
Logan Winkles, Deputy Attorney General
Ron Stay, Sr. Asst. Attorney General
Charles Thimmesch, Sr. Asst. Attorney General
Office of the Georgia Attorney General
40 Capitol Sq. SW
Atlanta, GA 30334
(404) 458-3626
cthimmesch@law.ga.gov

*Attorneys for the State of Georgia*

Dated 5/29/2024

John K. Olson
Deputy Attorney General
Consumer Protection Division
954 West Jefferson Street, Second Floor
Boise, ID  83720-0010
Tel: (208) 332-3549
John.Olson@ag.idaho.gov

*Counsel for Idaho*

Dated:  *December 5, 2023*

<u>*s/ Brian M. Yost*</u>
Brian M. Yost, Assistant Attorney General
David Buysse, Deputy Division Chief
Daniel Betancourt, Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St., Floor 23
Chicago, Illinois 60603
Tel: (872) 276-3598
Brian.Yost@ilag.gov

*Counsel for the Plaintiff State of Illinois*

Dated: November 21, 2023

By: _/s/ Tamara Weaver_
Deputy Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 234-7122
Email:  Tamara.Weaver@atg.in.gov

_Counsel for Indiana_

Noah Goerlitz
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Tel: (515) 725-1018
noah.goerlitz@ag.iowa.gov

*Counsel for Iowa*

Dated: <u>May 20, 2024</u>

FOR PLAINTIFF STATE OF KANSAS

KRIS W. KOBACH
ATTORNEY GENERAL


 _/s/Lynette R. Bakker_____
Lynette R. Bakker
First Assistant Attorney General
Christopher Teters
Assistant Attorney General
Antitrust & Business Organizations
Public Protection Division
Office of the Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Tel: (785) 296-3751
lynette.bakker@ag.ks.gov
chris.teters@ag.ks.gov

*Counsel for Kansas*

Jonathan E. Farmer
Deputy Executive Director of Consumer Protection
Office of the Attorney General of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Tel: 502-696-5448
Fax: 502-573-8317
Jonathan.Farmer@ky.gov

*Counsel for the Commonwealth of Kentucky*

Dated: February 21, 2024

PLAINTIFF STATE OF LOUISIANA

LIZ MURRILL
LOUISIANA ATTORNEY GENERAL

BY:

John J. Kelley, Section Chief
William H. Rogers, Jr., Assistant Attorney General
Public Protection Division
Office of the Louisiana Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Tel. (225) 326-6400
Fax (225) 326-6499
KelleyJ@ag.louisiana.gov
rogersw@ag.louisiana.gov

Dated:_____

FOR PLAINTIFF STATE OF MAINE:

AARON M. FREY
ATTORNEY GENERAL

*/s/ Christina M. Moylan*
Christina M. Moylan
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, Maine 04333-0006
Phone: 207.626.8800
christina.moylan@maine.gov

Attorney for Plaintiff State of Maine

Dated: May 22, 2024

Schonette J. Walker
Assistant Attorney General
Chief, Antitrust Division
200 Saint Paul Place
19th Floor
Baltimore, Maryland 21202
410.576.6473
swalker@oag.state.md.us

*Counsel for Plaintiff State Maryland*

Dated: July 9, 2024

Michael MacKenzie
Deputy Chief, Antitrust Division
One Ashburton Place
Boston, MA 02108
Tel: (617) 727-2200
Michael.Mackenzie@mass.gov

*Counsel for Massachusetts*

Dated: 11/15/2023

Jonathan Comish
Assistant Attorney General
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7632
ComishJ@michigan.gov

*Counsel for State of Michigan*

Dated:  June 24, 2024

FOR PLAINTIFF STATE OF MINNESOTA:

KEITH ELLISON
ATTORNEY GENERAL

*/s/ Jon M. Woodruff*
Jon M. Woodurff
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
Tel: (651) 300-7425
jon.woodruff@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

Dated: July 12, 2024

FOR PLAINTIFF STATE OF MISSISSIPPI
LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By: /s/ Tricia L. Beale
Tricia L. Beale (MSB #99113)
Consumer Protection Division
Mississippi Attorney General's Office
1141 Bayview Ave., Suite 402
Biloxi, Mississippi 39530
Telephone:  228-386-4404
tricia.beale@ago.ms.gov

FOR THE STATE OF MISSOURI

ANDREW BAILEY
ATTORNEY GENERAL

By: _____
Michael Schwalbert
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago,mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

Dated: August 12, 2024

*/s/ Brent Mead*
Brent Mead
*Deputy Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Telephone: (406)444-0584
Email: brent.mead2@mt.gov

*Counsel for the State of Montana*

Dated:  May 28, 2024

/s/ *Colin P. Snider*
Colin P. Snider
Assistant Attorney General
2115 State Capitol
P.O. Box 98920
Lincoln, NE 68509
T: (402) 471-7759
E: colin.snider@nebraska.gov

*Attorney for the State of Nebraska*

FOR PLAINTIFF STATE OF NEVADA

AARON D. FORD
Nevada Attorney General

Lucas J. Tucker
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
8945 West Russell Road., Suite 204
Las Vegas, Nevada 89148
Nevada Bar No. 10252
LTucker@ag.nv.gov

STATE OF NEW HAMPSHIRE
JOHN M. FORMELLA
Attorney General

By: _____
Alexandra C. Sosnowski
Assistant Attorney General
Consumer Protection and Antitrust Bureau
One Granite Place South
Concord, NH 03301
Tel: (603) 271-2678
Alexandra.C.Sosnowski@doj.nh.gov

*Counsel for New Hampshire*

Dated: 5/21/2024

**FOR PLAINTIFF STATE OF NEW JERSEY**

MATTHEW J. PLATKIN
ATTORNEY GENERAL


 _/s/ Yale A. Leber_
Yale A. Leber
Deputy Attorney General
New Jersey Office of Attorney General
124 Halsey Street
5th Floor Newark, NJ 07101
(973) 648-3070

*Counsel for the State of New Jersey*

Dated:  November 22, 2023

/s/Jeff Dan Herrera
Jeff Dan Herrera
Assistant Attorney General
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87501
Tel: (505) 490-4878
jherrera@nmdoj.gov

*Counsel for New Mexico*

Dated: 30 October 2024

**New York's signature of the Heritage settlement**

LETITIA JAMES
Attorney General of the State of New York

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General
Economic Justice Division

ELINOR R. HOFFMANN
Chief, Antitrust Bureau

ROBERT L. HUBBARD
SAAMI ZAIN
BENJAMIN COLE
Assistant Attorneys General
28 Liberty Street, 20th floor
New York, NY 10005
212 416-8267
Robert.Hubbard@ag.ny.gov

ATTORNEYS FOR THE STATE OF NEW YORK

PLAINTIFF STATE OF NORTH CAROLINA
JOSHUA H. STEIN
ATTORNEY GENERAL

By: */s/ Jessica V. Sutton*
Jessica V. Sutton
Special Deputy Attorney General
North Carolina Department of Justice
Consumer Protection Division
114 West Edenton Street
Raleigh, NC 27603
Telephone: (919) 716-6000
Fax: (919) 716-6050
jsutton2@ncdoj.gov

Counsel for Plaintiff State of North Carolina

Dated: June 12, 2024

STATE OF NORTH DAKOTA
Drew H. Wrigley
Attorney General

Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of Attorney General
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
Tel: (701) 328-5570
ealm@nd.gov

*Counsel for North Dakota*

Dated:  December 6, 2023

Edward E. Manibusan
Attorney General
Commonwealth of the Northern Mariana Island
Caller Box 10007
Saipan, MP 96950
Tel: (670) 237-7500
attorney_general@cnmioag.org

*Counsel for The Commonwealth of the Northern Mariana Island*

Dated: 2/27/2024

FOR PLAINTIFF STATE OF OHIO:

DAVE YOST
ATTORNEY GENERAL


_/s/ Edward J. Olszewski_
Edward J. Olszewski
Assistant Section Chief, Antitrust
Office of Ohio Attorney General
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
Phone: 614.466.4328
Edward.Olszewski@OhioAGO.gov

Attorney for Plaintiff State of Ohio

Dated: May 21, 2024

**FOR PLAINTIFF STATE OF OKLAHOMA**

GENTNER DRUMMOND
ATTORNEY GENERAL

*/s/ Caleb J. Smith*

Caleb J. Smith, OBA No. 33613
Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street
Suite 1000
Tulsa, OK 74119
Tel. (918) 581-2230
Fax (918) 938-6348
Email: caleb.smith@oag.ok.gov

*Counsel for the State of Oklahoma*

*/s/ Cheryl F. Hiemstra*
_____
Cheryl F. Hiemstra  #133857
Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Tel:  (503) 934-4400
Cheryl.Hiemstra@doj.Oregon.gov

*Counsel for the State of Oregon*

Dated May 21, 2024

*/s/ Tracy W. Wertz*
Tracy W. Wertz
Chief Deputy Attorney General
Antitrust Section
Joseph S. Betsko
Assistant Chief Deputy Attorney General
Jessica Kuehn
Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Phone: (717) 787-4530
Fax: (717) 787-1190
twertz@attorneygeneral.gov

*Counsel for the Commonwealth of Pennsylvania*

Dated: May 23, 2024

**FOR PLAINTIFF CONMMONWEALTH OF PUERTO RICO**

DOMINGO EMANUELLI-HERNÁNDEZ
ATTORNEY GENERAL

*/s/ Guarionex Díaz-Martínez*
Guarionex Díaz-Martínez
Assistant Attorney General, Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, Exts. 1201, 1204
gdiaz@justicia.pr.gov

*Counsel for Commonwealth of Puerto Rico*

Dated:  July 9, 2024

FOR PLAINTIFF STATE OF RHODE ISLAND:

PETER F. NERONHA
ATTORNEY GENERAL


_/s/ Stephen N. Provazza_

Stephen N. Provazza (Bar No. 10435)
Assistant Attorney General
Chief, Consumer and Economic Justice Unit
Office of the Attorney General - State of Rhode Island
150 South Main Street
Providence, RI 02903
sprovazza@riag.ri.gov

Attorney for Plaintiff State of Rhode Island


Dated: August 13, 2024

THE STATE OF SOUTH CAROLINA
ALAN WILSON
Attorney General

CLARK KIRKLAND, JR.
Assistant Attorney General
1000 Assembly Street
Rembert C. Dennis Building
Post Office Box 11549
Columbia, South Carolina 29211-1549
Phone: 803-734-0057
Fax: 803-734-0097
Email: ckirklandjr@scag.gov

*s/  Jonathan K. Van Patten*
Jonathan K. Van Patten
Assistant Attorney General
1302 East Highway 14  Suite 1
Pierre, SD  57501-8501
Tel.:  (605) 773-3215
Jonathan.VanPatten@state.sd.us

*Counsel for South Dakota*

Dated:  6/25/2024

**State of Tennessee**
**Jonathan Skrmetti**
**Attorney General**

Austin C. Ostiguy
Assistant Attorney General
Daniel Lynch
Assistant Attorney General
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 532-7271
Austin.Ostiguy@ag.tn.gov
Counsel for Tennessee
Dated: _8/15/2024_

Executed May 21, 2024

Respectfully submitted,

FOR PLAINTIFF STATE OF UTAH
SEAN D. REYES
UTAH ATTORNEY GENERAL


Marie W.L. Martin
Deputy Division Director,
Office of the Attorney General of Utah
including as counsel for the Utah Division
of Consumer Protection
160 East 300 South, 5th Floor
P.O. Box 140874
Salt Lake City, UT 84114-0874
Tel: 801-366-0375
Fax: 801-366-0378
mwmartin@agutah.gov
dsonnenreich@agutah.gov

*Attorneys for the State of Utah*

Respectfully Submitted,

GORDON C. RHEA, ESQ.
ATTORNEY GENERAL

Dated: October 2⁄2, 2024          By: _____

Christopher M. Timmons
Acting Chief, Civil Division
V.I. Bar No. R2147
213 Estate La Reine
Kingshill, V.I.  00850
(340) 773-0295
christopher.timmons@doj.vi.gov
*Counsel for Government of the Virgin Islands*

**FOR PLAINTIFF STATE OF VERMONT**

CHARITY R. CLARK
ATTORNEY GENERAL


 */s/ Jill S. Abrams*
Jill S. Abrams
Director, Consumer Protection and Antitrust
109 State Street
Montpelier, Vermont 05609
(802) 828-1106
Jill.abrams@vermont.gov

*Counsel for Vermont*

**FOR PLAINTIFF COMMONWEALTH OF VIRGINIA**

JASON S. MIYARES
ATTORNEY GENERAL


_/s/ Tyler T. Henry_
Tyler T. Henry
Senior Assistant Attorney General
Antitrust Unit
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Tel: (804) 692-0485
THenry@oag.state.va.us

_Counsel for Virginia_

<u>*s/* Paula Pera C.</u>
Paula Pera C.
Holly A. Williams
Assistant Attorneys General, Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Tel: (206) 389-2848
paula.pera@atg.wa.gov
holly.williams@atg.wa.gov

*Counsel for Washington*

Dated: 2/21/2024

/s/ Douglas L. Davis
Douglas L. Davis
Senior Assistant Attorney General
Office of the West Virginia Attorney General
P.O. Box 1789
Charleston, WV 25326
Tel: (304) 558-8986
douglas.l.davis@wvago.gov

*Counsel for the State of West Virginia*

Dated: May 21, 2024

**FOR PLAINTIFF STATE OF WISCONSIN:**

JOSHUA L. KAUL
ATTORNEY GENERAL OF WISCONSIN

/s/ *Laura E. McFarlane*
Laura E. McFarlane
Assistant Attorney General

Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-8911
mcfarlanele@doj.state.wi.us

*Attorneys for the Plaintiff State of Wisconsin*

Michael T. Kahler
Senior Assistant Attorney General
Consumer Protection and Antitrust Unit
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7196
mike.kahler@wyo.gov

*Counsel for Wyoming*

Date: 2-15-2024