# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE STATE OF CONNECTICUT, *et al.*, <br><br> *Plaintiffs*, <br><br><br> v. <br><br><br> SANDOZ, INC., *et al.*, <br><br> *Defendants*. | Case No. 3:20-cv-00802-MPS <br><br><br> November 22, 2024 |

### DEFENDANTS'[1] LOCAL RULE 56(a)1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON EQUITABLE CLAIMS, CIVIL PENALTIES AND FINES, EXTRATERRITORIAL ENFORCEMENT OF STATE LAW, <u>GENERAL ECONOMY DAMAGES, AND STATE ANTITRUST CLAIMS</u>

---

[1] "Defendants" are Sandoz, Inc. and Fougera Pharmaceuticals Inc. (together, "Sandoz"); Actavis Holdco US, Inc., Actavis Elizabeth LLC, and Actavis Pharma, Inc. (collectively, "Actavis"); Amneal Pharmaceuticals, Inc. and Amneal Pharmaceuticals, LLC (together, "Amneal"); Ara Aprahamian; Aurobindo Pharma U.S.A., Inc. ("Aurobindo"); Bausch Health Americas, Inc. and Bausch Health US, LLC (together, "Bausch"); Mitchell Blashinsky; Douglas Boothe; Glenmark Pharmaceuticals Inc., USA ("Glenmark"); James Grauso; Greenstone LLC ("Greenstone"); G&W Laboratories, Inc. ("G&W"); Walter Kaczmarek; Armando Kellum; Lannett Company, Inc. ("Lannett"); Lupin Pharmaceuticals, Inc. ("Lupin"); Mallinckrodt Inc., Mallinckrodt LLC, and Mallinckrodt plc (collectively, "Mallinckrodt"); Mylan Inc and Mylan Pharmaceuticals Inc. (together, "Mylan"); Kurt Orlofski; Michael Perfetto; Perrigo New York, Inc. ("Perrigo"); Pfizer Inc. ("Pfizer"); Sun Pharmaceutical Industries, Inc. ("Sun"); Taro Pharmaceuticals USA, Inc. ("Taro"); Erika Vogel-Baylor; John Wesolowski; and Wockhardt USA LLC ("Wockhardt").

Defendants submit this Statement of Undisputed Material Facts in support of their motion for summary judgment on (1) State Plaintiffs' equitable claims under state laws, (2) State Plaintiffs' method for calculating potential civil penalties and fines for "each violation," (3) the extraterritorial imposition of civil penalties and fines, (4) the request for damages to the general economies by four State Plaintiffs, and (5) the requests for monetary relief under state laws.

## I.    State Plaintiffs That Allege Unjust Enrichment Have Not Submitted Evidence

1.    The following six State Plaintiffs allege unjust enrichment as a remedy that they seek:[2] Kentucky, Minnesota, New Hampshire, New Mexico, Pennsylvania, and Utah. Compl. ¶¶ 1914, 1948, 1981, 1990, 2062, 2090.

2.    When asked to identify the remedies they will seek at trial, five of the six State Plaintiffs that allege unjust enrichment did not identify unjust enrichment as a claim they will seek at trial: Minnesota (Ex. 1 at 1-2); New Hampshire (Ex. 2 at 2-3); New Mexico (Ex. 3 at 2-3); Pennsylvania (Ex. 4 at 80:11-21); and Utah (Ex. 5 at 1-2).

3.    When asked to identify the remedies it will seek at trial, Kentucky identified unjust enrichment (Ex. 6 at 4), but it has not provided any evidentiary support for its claim. Ex. 7 at ¶ 2.

4.    No State Plaintiff has provided any evidence —including an expert report— to Defendants that includes an amount of unjust enrichment sought by any State Plaintiff. Ex. 7 at ¶ 3.

## II.    State Plaintiffs That Allege Restitution Have Not Submitted Evidence

5.    The following 18 State Plaintiffs allege restitution as a remedy that they seek: Arizona; California; Colorado; District of Columbia; Idaho; Iowa; Kansas; Kentucky; Maryland; Massachusetts; Minnesota; Mississippi; New Hampshire; New Mexico; Pennsylvania; Utah;

---

[2] "Complaint" and "Compl." refer to State Plaintiffs' Amended Complaint, filed on September 9, 2021. (Dkt. No. 196.)

Virginia; and West Virginia. Compl. ¶¶ 1838, 1851, 1857, 1882, 1896, 1901, 1910, 1922, 1927, 1948, 1952, 1981, 1989, 2068, 2090, 2098, 2106, 2123.

6.      In response to written questions posed by Defendants, nine additional State Plaintiffs identified restitution as a remedy they may seek at trial: Florida (Ex. 8 at 2); Illinois (Ex. 9 at 2); Indiana (Ex. 10 at 2); Missouri (Ex. 11 at 2); Nevada (Ex. 12 at 2); New York (Ex. 13 at 1); Oregon (Ex. 14 at 5, 11-12); Puerto Rico (Ex. 15 at 4); and Washington (Ex. 16 at 2).

7.      The following eight of the 27 State Plaintiffs listed in the previous two paragraphs that identified restitution as a remedy did not include restitution when Defendants asked them to identify the remedies they will seek at trial: Arizona (Ex. 17 at 2); Kansas (Ex. 18 at 2); Maryland (Ex. 19 at 2-3); Massachusetts (Ex. 20 at 2); New Hampshire (Ex. 2 at 2-3); Utah (Ex. 5 at 1-2); Virginia (Ex. 21 at 1-2); and West Virginia (Ex. 22 at 1-2).[3]

8.      The following two State Plaintiffs that allege restitution as a remedy informed Defendants that they are not seeking restitution: Florida (Ex. 23 at 93:21-95:21); and Pennsylvania.[4]

9.      The following 12 State Plaintiffs that allege restitution as a remedy informed Defendants that they would provide restitution calculations in an expert report: California (Ex. 24 at 11); Colorado (Ex. 25 at 13); Idaho (Ex. 26 at 137:12-138:7); Illinois (Ex. 27 at 9); Iowa (Ex.

---

[3] *Id.* at ¶¶ 1838, 1910, 1922, 1927, 1981, 2090, 2106.

[4] Pennsylvania identified restoration, a form of statutory restitution available under Section 4.1 of the Unfair Trade Practices and Consumer Protection Law, as a claim. Pennsylvania clarified that "restoration" is synonymous with disgorgement and not a separate claim for relief. Ex. 4 at 89:2-89:19, 104:18-106:3 ("Q. [I]s Pennsylvania seeking restoration in this case? A. Yes. We're seeking restoration under our Unfair Trade Practices and Consumer Protection Law. Q. What is restoration? A. Restoration is a remedy that's available under Section 4.1 of the UTPCPL. It is similar to restitution. Q. How is it different from restitution? A. It's the -- it is just -- you know, simply, it is not -- it is -- it is statu- -- it's -- the best way of describing it is it's statutory restitution as -- as -- as provided under Section 4.1."… Q. [S]o the record is clear, Pennsylvania is not seeking disgorgement separate from rest- -- restoration. Is that correct? A. That disgorgement that we're seeking is under 4.1, and as we already -- in our prior correspondence, we're not seeking duplicative recovery… Q. Restoration and disgorgement are two different names used interchangeably for the same remedy; correct? A. In this instance, yes.").

29 at 12-15); Kentucky (Ex. 30 at 2); Mississippi (Ex. 31 at 9); Missouri (Ex. 32 at 13); Nevada (Ex. 33 at 7); New Mexico (Ex. 34 at 15); New York (Ex. 35 at 6); and Washington (Ex. 36 at 111:9-13).

10.    No State Plaintiff has provided any evidence, including an expert report,  that includes an amount of restitution sought (other than amounts identified as "disgorgement"). Ex. 7 at ¶ 4.

### III.    State Plaintiffs Seeking Civil Penalties or Fines

11.    Forty-three State Plaintiffs seek civil penalties or fines under their state antitrust and/or consumer protection laws: Alaska (Ex. 37 ¶ 142 n.214); Arizona (Compl. ¶ 1834); California (Compl. ¶ 2123); Colorado (Compl. ¶ 1851); Connecticut (Compl. ¶ 1826); Delaware (Compl. ¶ 1854); Florida (Compl. ¶ 1859); Idaho (Compl. ¶ 1882); Illinois (Compl. ¶ 1886); Indiana (Compl. ¶ 1891); Iowa (Compl. ¶ 1894); Kansas (Compl. ¶ 1901); Kentucky (Compl. ¶ 1910); Maine (Compl. ¶ 1919); Maryland (Compl. ¶ 1922(a)); Massachusetts (Compl. ¶ 1927); Michigan (Compl. ¶ 1932); Minnesota (Compl. ¶¶ 1934(e) and 1941(e)); Mississippi (Compl. ¶ 1952); Missouri (Compl. ¶ 1954); Montana (Compl. ¶ 1965); Nebraska (Compl. ¶ 1968); Nevada (Compl. ¶ 1973); New Hampshire (Ex. 37 ¶ 142 n.214); New Jersey (Compl. ¶ 1985); New Mexico (Compl. ¶ 1991); New York (Compl. ¶ 1994); North Carolina (Ex. 37 ¶ 142 n.214); North Dakota (Ex. 37 ¶ 142 n.214); Northern Mariana Islands (Compl. ¶ 2013); Ohio (Compl. ¶ 2016); Oregon (Compl. ¶ 2021); Pennsylvania (Compl. ¶¶ 2038 and 2052); Puerto Rico (Compl. ¶ 2072); Rhode Island (Compl. ¶ 2075(c)); South Carolina (Compl. ¶ 2078); Utah (Compl. ¶ 2091); Vermont (Compl. ¶ 2095); Virginia (Compl. ¶ 2098); Washington (Compl. ¶ 2101); West Virginia (Compl. ¶ 2106); Wisconsin (Ex. 28 at 2); and U.S. Virgin Islands (Compl. ¶ 2113).

12.    Thirty-one State Plaintiffs (out of the 43 that seek civil penalties or fines) "seek to impose civil fines or penalties for violations of relevant state law for each time a Defendant's Drug

at Issue was sold to a customer within their state." Ex. 37 ¶ 142; *see also id.* ¶ 6 ("several States seek civil penalties for violations of their state antitrust and consumer protection laws based on the number of prescriptions of Drugs at Issue filled in each state.").

13.    The State Plaintiffs described in ¶ 12 are: Alaska, Arizona, California, Colorado, Connecticut, Florida, Idaho, Indiana, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Northern Mariana Islands, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Utah, Virginia, and the U.S. Virgin Islands. Ex. 37 ¶ 142 n.214.

14.    According to these 31 State Plaintiffs, the civil penalty or fine should be calculated by multiplying (a) the number of prescriptions of each drug at issue filled and sold in a state by (b) the state statutory civil penalty or fine amount. Ex. 37 ¶¶ 145-146, App'x 5, Tables 1 & 2.

15.    State Plaintiffs' expert calculated "illustrative" civil penalties and fines assuming $1 and $1,000 "fine per transaction" totaling $234 million and $234 billion. Ex. 37 ¶ 146, App'x 5, Tables 1 & 2.

## IV.    State Plaintiffs Seek Disgorgement of the Additional Profits Defendants Collected as a Result of the Purported Conspiracy

16.    State Plaintiffs have provided an expert report on disgorgement. Ex. 38 ¶ 244 ("I have been asked to calculate state-specific estimates of disgorgement for States and Territories which provide for disgorgement as a remedy."); *id.* at App'x C, Table 12.

17.    State Plaintiffs seek disgorgement of "the additional profits Defendants were able to collect as a result of" the purported conspiracy. Ex. 38 ¶ 196.

18.    State Plaintiffs also seek to recover the additional profits Defendants were able to collect as a result of the purported conspiracy in damages on behalf of state agencies, consumers,

and businesses that purchased or paid for generic pharmaceutical products at allegedly inflated prices. *See* Compl. ¶¶ 1822–2123; Ex. 37 App'x 3, Table 1.

**V.     Deadweight Loss Cannot Measure Harm to Connecticut's Economy**

19.     Four State Plaintiffs—California, Connecticut, Puerto Rico, and the Virgin Islands—seek damages for purported harms to their general economies. Ex. 37, at ¶ 4 n.9.

20.     State Plaintiffs' experts have calculated an economic measure called deadweight loss, which State Plaintiffs have labeled "general economy damages." *See* Ex. 37 at ¶ 112; Ex. 39 at 79:18-80:6.

21.     Deadweight loss purports to measure "the purchases that would have been made if the price had been the competitive price . . . that is the number of sales that households, individuals, chose not to make because the price was higher than they were willing or able to pay." Ex. 39 at 79:18-80:6; *id.* at 40:8-11.

22.     State Plaintiffs' expert, Dr. Hal J. Singer, testified that deadweight loss is an attempt to measure transactions that did not occur. Ex. 40 at 424:9-13 ("Q. And -- and so in the context of a deadweight loss, again just to anchor it, we're talking about transactions that did not occur, correct? A. Correct").

23.     Deadweight loss does not measure harm to a state's economy because consumers who forgo purchases of generic pharmaceutical products in response to price increases retain their money to use in other ways that benefit the economy. Ex. 40 at 426:3–428:2; Ex. 39 at 83:10–22 ("Q. Let's say a Connecticut resident intended to purchase a generic pharmaceutical product that cost ten dollars, but before the resident could buy that product the price went up sufficiently that that resident decided not to purchase. Are you with me? A. Sort of. Q. Okay. So based on that -- as I understand what you have just testified, based on that scenario, that Connecticut resident would have ten dollars more to spend than he or she otherwise would have had to spend? A. Correct.").

24.     Connecticut's expert, Dr. Fred V. Carstensen, has admitted that foregone purchases in response to price increases can increase the "funds available to circulate" in Connecticut, since a consumer who forgoes purchasing a drug that is manufactured by firms outside the state could use the savings to purchase goods made in Connecticut, which would benefit the state. Ex. 39 at 85:11-20.

25.     According to Dr. Carstensen, assessing whether Connecticut's economy suffered an injury as a result of its residents' alleged refusal to pay the purportedly increased prices for generic pharmaceutical products requires "a holistic analysis" of "where do the benefits go" and "what are the costs." Ex. 39 at 87:1–19.

26.     State Plaintiffs have not performed a "holistic analysis" of "where do the benefits go" and "what are the costs," and have no evidence of how the purported deadweight loss funds were redirected. Ex. 39 at 82:11–16, 86:1–11, 87:1–88:11.

27.     Dr. Carstensen, testified: "[I]f the money [saved by Connecticut residents by not purchasing allegedly overcharged products] is spent on activities that are specific to and located within Connecticut," Connecticut would be in the same position absent the alleged conduct. Ex. 39 at 86:1-11.

28.     Dr. Carstensen testified that it would "be a benefit for Connecticut's economy compared to that Connecticut resident buying pharmaceuticals that were manufactured outside of the state" "if that Connecticut resident spent that ten dollars that had been saved by not buying products in this case because of the price increase and the[n] used that ten dollars to purchase products made in Connecticut." Ex. 39 at 87:1-19.

29.     Connecticut "ha[s] no information on" what "the Connecticut residents who refused to purchase the allegedly overcharged or improperly overpriced generic pharmaceutical products"

did with the money they saved by not purchasing the products, Ex. 39 at 82:11-16, and therefore State Plaintiffs have no evidence that the claimed misconduct caused "less funds" to circulate in Connecticut or any other state.

## VI.    Connecticut Seeks to Recover Alleged Overcharges Paid By Residents As Damages to the General Economy

30.    Connecticut seeks to recover alleged overcharges paid by residents as further damages to the general economy, which it calls "consumer surplus." Ex. 39 at 37:25-38:18, 39:20- 25.

31.    Connecticut's general economy damages model includes "Consumer Surplus" damages, which are "overcharges that [Connecticut] consumers paid as a result of the purported antitrust violations in this case." Ex. 39 at 39:20-25.

32.    Connecticut seeks to recover the same alleged overcharges on behalf of Connecticut residents as *parens patriae* damages. *See* Ex. 37 at Table 22 (listing damages for Connecticut consumers).

## VII.    The Alleged Injuries to State Plaintiffs And Their Citizens Are Indirect

33.    All of State Plaintiffs' alleged injuries are multiple steps removed from Defendants' alleged conduct. Ex. 37 ¶ 59 ("overcharges due to the Challenged Conduct paid by direct purchasers . . . were passed on downstream to Medicaid, other State agencies, businesses, and individuals" and "[t]hese entities generally do not purchase directly from, or reimburse directly to, drug manufacturers, but rather through intermediaries").

34.    There is no evidence that State Plaintiffs (or any of the people or entities on whose behalf they seek relief) purchased products directly from any Defendant; the evidence shows the opposite. *See, e.g.*, Ex. 41 at 112:18-25 ("I believe, let's say, Walgreens may be a party in this

action, and . . . I don't know who the defendant manufacturers, all of their clientele. But they sold their drugs to their clientele. Their clientele eventually sold their drugs to us.").

35.     The evidence shows that downstream resellers of drugs at issue made independent decisions to increase prices when the resellers' prices did not increase. *See, e.g.*, Ex. 58 at 186:25-187:15 (intermediaries can increase prices by a different magnitude than the manufacturer in response to demand increases); Ex. 42 at 194:4-13 (intermediaries "might have their own independent decisions for" increasing prices).

36.     Some direct purchasers from Defendants had long-term pricing contracts, price-protection provisions, and similar mechanisms that enabled the purchasers to avoid or delay price increases. *See, e.g.*, Ex. 43 (90-day and 30-day price protection for different products); Ex. 44 (█████████████████████████); Ex. 45 (one-year price lock-in); Ex. 46 at 5 (one-year price lock-in and limited ability to increase price over time); Ex. 47 (████████ ████████); Ex. 48 (120-day price lock-in and 60-day price protection); Ex. 49 (limited ability to increase price over time).

37.     New York concluded that pharmacy benefit managers ("PBMs")—an intermediary between Defendants and the ultimate consumer—used a mark-up practice called "spread pricing," which occurs when a PBM charges the payor a higher amount than the PBM reimburses the pharmacy for filling a prescription, "to profit off state Medicaid programs." Ex. 50 at 5 (spread pricing is "[m]ost commonly practiced on generic prescription drugs" and that "PBMs . . . us[e] the spread pricing model to profit off state Medicaid programs"), 42-45 (PBMs increasing spread for generic drugs from 2016-2018).

38.    Ohio determined that PBM spreads on generic drugs accounted for 31.4% of Ohio's Medicaid managed care organizations' ("MCOs") total spending on generic drugs between April 2017 and April 2018. Ex. 51 at 6.

39.    Kentucky found that PBMs retained a spread of $123.5 million in 2018, representing 12.9% of the amount Kentucky's MCOs paid to PBMs for Medicaid beneficiaries. Ex. 52 at 5.

40.    PBM spreads increased during the alleged conspiracy period. *See, e.g.*, Ex. 53 at 1 (The Massachusetts Health Policy Commission finding that PBM spreads "covered 22% of PBM compensation in 2014, but rose to 54% in 2016); Ex. 54 at 1 (finding that the PBM spread grew from 6% of Michigan's MCO costs in 2016 to 29% in 2017).

41.    Spread pricing has been criticized by federal and state governments, including by some of the plaintiffs that bring claims here. *See* Ex. 55; Ex. 56 at ¶ 238(d) (PBMs "utilize spread pricing through their network pharmacies to further harm payors and independent pharmacies"); Ex. 57 at ¶ 2 (Consolidation in the PBM industry has "created a black box that holds a complex administration system that allows the PBMs, including Express Scripts, to enrich themselves in multiple ways. This is all at the expense of consumers and other industry participants.").

42.    PBMs are not required to calculate spread pricing based on manufacturer prices. Ex. 58 at 205:6-23 (PBMs may set spread pricing by different mechanisms other than percentage of their costs).

## VIII.    State Plaintiffs' Claims for Damages Are Highly Speculative

43.    State Plaintiffs' expert Dr. Warren-Boulton estimates alleged overcharges for each drug at issue. Ex. 38, App'x C, Table 12.

44.    Using Dr. Warren-Boulton's estimates of alleged overcharges, State Plaintiffs' expert Dr. Hal Singer calculates putative damages based on the theory that alleged overcharges

were passed through numerous intermediaries and re-sellers, from drug manufacturers to end purchasers. Ex. 37 ¶ 5.

    a.  Dr. Singer testified that drug price is, in part, "based on decisions by any number of intermediaries in the supply chain." Ex. 42 at 117:10-13.

    b.  In estimating State Plaintiffs' putative damages, Dr. Singer's model does not account for the actions of numerous intermediaries, including PBMs, wholesalers, and pharmacies. Ex. 42 at 194:15-20, 196:10-16, 217:18-218:2; *see also id*. 293:4-4-20.

## IX.  State Plaintiffs' Parens Patriae Claims Are Exact Duplicates of Claims Being Asserted by Putative Class Representatives in the MDL

45.    In their motion for leave to file an amended complaint in the Heritage and Teva actions, State Plaintiffs represented to this Court that California's allegations concern "the *exact same* factual allegations" and "the *exact same* claims" as asserted in the EPP Class Action Complaints. *See* Mem. of Law in Supp. of Pl. States' Mot. for Leave to Amend and Supplement Certain Compls. at 14, *Connecticut v. Teva Pharms. USA, Inc.*, No. 3:19-cv-00710-MPS (D. Conn. May 31, 2024), ECF No. 203-1; *see also* Ex. 59 at 31:12-32:7 (conceding that there is "meaningful" and "significant" overlap between Plaintiffs' claims and MDL class claims).

46.    State Plaintiffs have repeatedly conceded that they have no plan for alleviating the administrative burden that their duplicative damages claims would inflict upon this Court and the MDL Court. *See, e.g.*, Ex. 59 at 33:1-4 ("States and the EPPs view it as when we get to a judgment, when we get to a judgment, if we get to a judgment, that's when those type of decisions need to be made."); Ex. 60 at 82:22-83:8 ("Q. . . . Is Maine able to take any steps to ensure that any person receiving funds as a result of a State of Maine recovery would not receive a double recovery from damages as a result of any private Complaints? A. I don't know what steps specifically Maine

would take to ensure that."); Ex. 41 at 119:1-8 ("And in terms of future steps, I don't know that I can say, sitting here, what potential future steps we may take to prevent duplicative recovery. I think the Court is, again, you know -- as arbiter of how this case and how recovery or relief is afforded, it will likely make sure that there is no duplicative recovery."); Ex. 4 at 117:8-16 ("[W]e do not intend duplicative recovery, and through our work with experts, we'll carry out that intention. And to the extent there remains a concern about the possibility of a duplicative recovery, then defendants would be at liberty to raise -- raise that with the Court should, you know, such an order issue.").

47.     Wholesalers often do not pay WAC price; their payments are determined instead by various other factors such as negotiated rebates or discounts and price-protection clauses with different intermediaries, which would need to be factored into any downstream damages calculation. Ex. 61 at 16 ("Wholesale Acquisition Cost (WAC): represents the manufacturers' . . . published catalog or list price for a drug product to wholesalers as reported by the manufacturer. WAC does not represent actual transaction prices and does not include prompt pay or other discounts, rebates or reductions in price."); Ex. 62 at 216:2–24 (testifying to impact of price protection clauses).

48.     State Plaintiffs' expert, Dr. Singer, concedes that it is not possible to trace individual transactions through the complex supply chain. *See* Ex. 58 at 101:22-102:1 ("I think that on a, on a transaction-by-transaction level, it's very difficult to trace the exact channel; that is, you can't, you can't merge up a transaction across the different databases that we have."); *id*. at 130:1-4 ("A … we can't trace -- at least on a transaction basis, we can't trace the pathway of a particular drug.").

X.    **State Plaintiffs' Claims That They Were Injured by Allegedly Paying Increased Premiums to MCOs Are Too Remote**

49.    State Plaintiffs' expert, Dr. Singer, attempts to measure damages from the initial purported overcharge by Defendants that allegedly passed through to State Plaintiffs because of increased MCO premiums paid by Medicaid agencies. *See* Ex. 37 ¶ 92.

50.    Dr. Singer opines that MCOs, which "charge the States a monthly premium to provide enrollees access to healthcare coverage, including prescription drugs," Ex. 37 ¶ 92, absorbed the alleged overcharge for prescription drugs and passed on at least 100% of that cost increase in premium calculations. *Id.* at ¶ 98.

51.    Where a state contracted with an MCO to manage a Medicaid program, neither the state nor the Medicaid agency purchased the at-issue drugs. Ex. 37 ¶¶ 42, 92; Ex. 42 at 338:6-15.

52.    Where a state contracted with an MCO to manage a Medicaid program, the MCO paid for and distributed the drugs, and then charged the state agency a per-member, per-month premium. Ex. 37 ¶¶ 42, 92; Ex. 42 at 341:1-14.

    a.    Where a state contracts with an MCO to administer Medicaid drug programs, that decision removes the states from the payment chain for any pharmaceuticals administered under the program.  Ex. 79.

    b.    A state's per-member premium payments to an MCO are intended to cover all "covered services" to enrollees, including numerous brand and generic drugs not at issue and other MCO costs unrelated to pharmaceuticals. Ex. 116.

53.    Dr Singer opines: "To calculate the premium rates, actuaries rely on prior years' utilization data. The prior years' data are considered 'base data,' as they form the basis for the premium rate calculation. The year for which the rate is set is referred to as the 'rating period.'

Thus, an increase in a drug's price in prior years during the base period will be considered in the premium rate calculation for the rating period." Ex. 37 ¶ 44.

     a.  A state may reject a proposed premium increased by an MCO and contract with an alternative MCO or manage their Medicaid programs without an MCO. Ex. 140 at 6, 8.

## XI.   States Where Defendants Made Sales of Drugs at Issue

**Actavis's Sales**

54.    According to Actavis's sales data, it sold its drugs at issue in the following states that are seeking civil penalties or fines under state law (Ex. 63):

| | | |
|---|---|---|
| Ammonium Lactate Cream/Lotion | April 2013-end of 2018 | CA; FL; IL; NY; OH; PA |
| Betamethasone Dipropionate-Clotrimazole Cream | March 2011-end of 2018 | AZ; CA; FL; IA; ID; IL; KY; MD; ME; MI; MN; MO; NC; NJ; NY; OH; PA; PR; SC; VA; VT; WI |
| Betamethasone Valerate Ointment | January 2013-end of 2018 | AZ; CA; FL; ID; IL; KY; MI; MO; NC; ND; NJ; NY; OH; PA; PR; RI; SC; VT; WI |
| Ciclopirox Shampoo | July 2012-end of 2018 | CA; CT; FL; ID; IL; KY; MI; MN; MO; NC; NJ; NY; OH; PA; SC; VT; WI |
| Desonide Lotion | July 2011-end of 2018 | AZ; CA; FL; ID; IL; KY; ME; MI; MN; MO; NC; ND; NJ; NY; OH; PA; PR; RI; SC; VT; WA; WI |
| Fluocinonide Solution | June 2013-end of 2018 | CA; FL; IL; KY; ME; MI; MN; MO; NC; NJ; NY; OH; PA; PR; VA; WI |
| Methylphenidate Tablet | Feb 2013-end of 2018 | CA; FL; IL; KY; NC; ND; OH; PA; WI |
| Metronidazole Cream | July 2011-end of 2018 | CA; FL; IL; IN; KS; KY; ME; MI; MN; NC; ND; NJ; NY; NV; OH; PA; PR; SC; VT; WA; WI |
| Metronidazole Lotion | July 2011-end of 2018 | AZ; CA; FL; ID; IL; KY; MI; MN; MO; ND; NJ; NY; NV; OH; PA; PR; RI; SC; WA; WI |
| Nystatin Ointment | Feb 2011-end of 2018 | CA; FL; ID; IL; KY; MI; MN; MO; NC; ND; NJ; NY; OH; PA; PR; SC; WA; WI |
| Promethazine Suppository | Aug 2012-end of 2018 | CA; FL; IL; KY; MI; MN; MO; NC; ND; NE; NY; OH; PA; PR; SC; VT; WI |
| Terconazole Vaginal Cream | April 2013-end of 2018 | CA; FL; IL; KY; ME; MI; MN; MO; NC; ND; NJ; NY; OH; PA; PR; SC; VT; WA; WI |

**Amneal's Sales**

55.    Amneal sold phenytoin to purchasers in the following 19 states that are seeking civil fines or penalties under state law: California, Delaware, Florida, Idaho, Illinois, Kentucky, Massachusetts, Michigan, Minnesota, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, Wisconsin, and Puerto Rico. Ex. 64.

**Aurobindo's Sales**

56.    In response to requests for admission, State Plaintiffs admitted that "the only agreement States allege between Aurobindo and Mylan regarding market share, customer allocation, or pricing for Pioglitazone HCL Metformin HCL is the one States allege Anthony Thomassey and James Nesta formed in February 2013 in connection with Aurobindo's February 8, 2013 bid to Cardinal [Health Inc.]." Ex. 65, RFA No. 111. There is no record evidence that Aurobindo sold Pioglitazone HCL Metformin HCL to Cardinal Health, Inc. in 2013 to customers in states that are seeking civil fines or penalties under state law other than: Missouri; North Carolina; New York; Ohio; and West Virginia. Ex. 66.

57.    In response to requests for admission, State Plaintiffs admitted that "there is no evidence that any Aurobindo employee took any action or refrained from taking any action with respect to a customer or potential customer for Cefpodoxime Proxetil as a result of any alleged agreement between Anthony Thomassey and Christopher Bihari, other than to the extent the State Plaintiffs allege that an agreement between Anthony Thomassey and Christopher Bihari resulted in (i) Aurobindo's May 22, 2013 offer to CVS for Cefpodoxime Tabs, (ii) Aurobindo's August 29, 2013 offer to ABC for Cefpodoxime Tabs, and (iii) Aurobindo's September 9, 2013 offer to Walmart for Cefpodoxime Tabs and Oral Suspension." Ex. 65, RFA No. 108. There is no record evidence that Aurobindo sold Cefpodoxime Proxetil to CVS, ABC, or Walmart in 2013 to

customers in states that are seeking civil fines or penalties under state law other than: Arizona; California; Colorado; Florida; Illinois; Indiana; Kentucky; Massachusetts; Michigan; Minnesota; Montana; North Carolina; New Jersey; New York; Ohio; Pennsylvania; Rhode Island; Utah; Virginia; and Washington. Ex. 67.

**Bausch's Sales**

58.     In response to an interrogatory asking State Plaintiffs to "[d]escribe all acts taken by Bausch, if any, in Your state for which You seek a civil penalty or fine for the violation of any state statute identified in Your Complaint," State Plaintiffs stated that Bausch "sent its customers communications about price increases that were reached in collusion with competitors, including in the following states: Arkansas,[5] California, Florida, Idaho, Michigan, Minnesota, Missouri, North Carolina, Ohio, Puerto Rico, New Jersey, New York, North Dakota, Rhode Island, and Washington." Ex. 68 at 14-15. These are the only states identified by State Plaintiffs where Bausch took any acts related to the sale of generic drugs that were allegedly a part of a conspiracy.

**Glenmark's Sales**

59.     From May 1, 2013[6] to December 31, 2018, Glenmark sold Alclometasone Dipropionate Cream to customers in the following states that are seeking civil fines or penalties under state law: Arizona, California, Florida, Illinois, Kentucky, Maine, Michigan, Minnesota, Missouri, North Carolina, New Jersey, New York, Ohio, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, and Wisconsin. Ex. 69 ¶ 8; *id.* at 4-5.

60.     From May 1, 2013[7] to December 31, 2018, Glenmark sold Alclometasone Dipropionate Ointment to customers in the following states that are seeking civil fines or penalties

---

[5] Arkansas dismissed its claims. Notice of Voluntary Dismissal of Claims, *In Re: Generic Pharmaceuticals Pricing Antitrust Litig.*, 2:16-md-02724-CMR (E.D. PA, Aug. 8, 2023) (MDL Dkt. 2527).
[6] Plaintiffs' Expert's First Communication Date, Ex. 38, App'x D, Figure 21.
[7] Plaintiffs' Expert's First Communication Date, Ex. 38, App'x D, Figure 22.

under state law: California, Florida, Illinois, Indiana, Missouri, New Jersey, New York, Ohio, and South Carolina. Ex. 69 ¶ 8; *id.* at 4-5.

61.      From March 19, 2012[8] to December 31, 2018, Glenmark sold Ciclopirox Cream to customers in the following states that are seeking civil fines or penalties under state law: Arizona, California, Colorado, Florida, Illinois, Indiana, Kentucky, Michigan, Minnesota, Missouri, North Carolina, New Jersey, Nevada, New York, Ohio, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Vermont, and Wisconsin. Ex. 69 ¶ 8; *id.* at 4-5.

62.      From September 28, 2012[9] to December 31, 2018, Glenmark sold Desoximetasone Ointment to customers in the following states that are seeking civil fines or penalties under state law: Arizona, California, Florida, Illinois, Kentucky, Maine, Michigan, Missouri, New Jersey, New York, Ohio, Rhode Island, Wisconsin. Ex. 69 ¶ 8; *id.* at 4-5.

63.      From Jan 31, 2014[10] to December 31, 2018 Glenmark sold Fluocinonide Cream 0.1% to customers in the following states that are seeking civil fines or penalties under state law: Arizona, California, Florida, Kentucky, Michigan, Minnesota, Missouri, North Carolina, New Jersey, New York, Ohio, Pennsylvania, South Carolina, and Wisconsin. Ex. 69 ¶ 8; *id.* at 4-5.

64.      From December 3, 2012[11] to December 31, 2018 Glenmark sold Fluticasone Propionate Lotion 0.5% to customers in the following states that are seeking civil fines or penalties under state law: California, Florida, Illinois, Michigan, Missouri, North Carolina, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, and South Carolina. Ex. 69 ¶ 8; *id.* at 4-5.

---

[8] Plaintiffs' Expert's First Communication Date, Ex. 38, App'x D, Figure 42.
[9] Plaintiffs' Expert's First Communication Date, Ex. 38, App'x D, Figure 58.
[10] Plaintiffs' Expert's First Communication Date, Ex. 38, App'x D, Figure 69.
[11] Plaintiffs' Expert's First Communication Date, Ex. 38, App'x D, Figure 73.

65.    From May 16, 2013[12] to December 31, 2018, Glenmark sold the formulations of Mometasone Furoate listed below to customers in the following states that are seeking civil fines or penalties under state law (Ex. 69 ¶ 8; *id.* at 4-5):

| Mometasone Furoate Cream | AZ; CA; FL; IL; IN; KY; ME; MI; MN; MO; NC; NJ; NY; OH; PA; PR; RI; SC; WI |
|---|---|
| Mometasone Furoate Ointment | AZ; CA; FL; IL; IN; KY; MI; MO; NC; NJ; NY; OH; PA; PR; RI; SC; WI |
| Mometasone Furoate Solution | NJ; NY; OH |

**Greenstone's Sales**

66.    In response to an interrogatory asking State Plaintiffs to "[d]escribe, in detail, each separate act taken by Greenstone that You contend entitles or otherwise supports Your claim for civil penalties, fines… In so doing, for each such act identify… the location of each act including the state and city the act was taken," State Plaintiffs stated that Greenstone "sent its customers communications about price increases that were reached in collusion with competitors, including in the following states: Arkansas, California, Connecticut, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, and Wisconsin."[13] Ex. 70 at 30. These are the only states identified by State Plaintiffs where Greenstone took any acts related to the sale of generic drugs that were allegedly a part of a conspiracy.

**G&W's Sales**

67.    State Plaintiffs allege that G&W sent communications about price increases that were reached in collusion with competitors to customers in the following states that are seeking civil fines or penalties under state law: Florida (Compl. ¶¶ 515, 516, 520, 521, 531, 1434, 1437-1438, 1548), Illinois (Compl. ¶¶ 514, 515, 520, 527, 532, 534, 535, 980, 989, 990, 1007-1018,

---

[12] Plaintiffs' Expert's First Communication Date, Ex. 38, App'x D, Figure 98.
[13] Arkansas dismissed its claims. *See supra* n. 5.

1410, 1411, 1424, 1429, 1435, 1466, 1529), Michigan (Compl. ¶ 1561), Minnesota (Compl. ¶ 537), Missouri (Compl. ¶¶ 1497, 1531), New Jersey (Compl. ¶¶ 1453, 1502, 1549, 1561), New York (Compl. ¶¶ 1480, 1508), Ohio (Compl. ¶¶ 470, 525, 528, 1005, 1006, 1473-1474, 1508, 1525), Pennsylvania (Compl. ¶¶ 464, 467, 470, 495, 496, 508, 1410, 1411, 1413, 1424, 1425, 1467-1468, 1553-1554), Rhode Island (Compl. ¶¶ 470, 980), and Wisconsin (Compl. ¶¶ 470, 980).

**Lannett's Sales**

68.     During the time that Plaintiffs allege Lannett and Taro coordinated price increases on acetazolamide (2010–2013), Compl. ¶¶ 801–803, 1712, Lannett sold acetazolamide to customers in the following states that are seeking civil fines or penalties under state law: Arizona, California, Colorado, Connecticut, Florida, Iowa, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Maryland, Maine, Michigan, Minnesota, Missouri, Mississippi, North Carolina, North Dakota, New Hampshire, New Jersey, Nevada, New York, Ohio, Pennsylvania, Puerto Rico, South Carolina, Utah, Virginia, Vermont, Washington, and Wisconsin. Ex. 71 ¶¶ 5-6 and Ex. A.

**Lupin's Sales**

69.     Lupin made direct sales of its drug at issue to customers in the following states that are seeking civil fines or penalties under state law: Arizona, California, Colorado, Florida, Illinois, Kentucky, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Vermont, and Wisconsin. Ex. 72 ¶ 7 and Ex. A.

**Mallinckrodt's Sales**

70.     Based upon a review of Mallinckrodt's sales data, Mallinckrodt only made direct sales to customers located in the following states that are seeking civil fines or penalties under state law: Arizona, California, Florida, Idaho, Illinois, Kentucky, Michigan, Minnesota, Missouri,

North Carolina, New Jersey, New York, Ohio, Oregon, Pennsylvania, Puerto Rico, South Carolina, Vermont, and Wisconsin.

**Mylan's Sales**

71.     Data produced in this litigation shows that Mylan shipped Bromocriptine Mesylate, Phenytoin Sodium, and Metformin Hydrochloride, Pioglitazone Hydrochloride ("Pio Met") to customers in the following states that are seeking civil fines or penalties under state law: Alaska, Arizona, California, Colorado, Connecticut, Florida, Iowa, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Michigan, Minnesota, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, Nevada, New York, Ohio, Oregon, Pennsylvania, Puerto Rico, South Carolina, Utah, Virginia, Vermont, Washington, and Wisconsin. Ex. 141.

72.     That data shows that, in the alleged conduct period, Mylan shipped Bromocriptine Mesylate to customers in the states listed in paragraph 70 except Alaska, Indiana, Maryland, New Hampshire, and Vermont. *Id.*

73.     That data shows that, in the alleged conduct period, Mylan shipped Phenytoin Sodium to customers in the states listed in paragraph 70 except Nevada. *Id.*

74.     In response to requests for admission, State Plaintiffs admitted that "the only agreement States allege between Aurobindo and Mylan regarding market share, customer allocation, or pricing for Pioglitazone HCL Metformin HCL is the one States allege Anthony Thomassey and James Nesta formed in February 2013 in connection with Aurobindo's February 8, 2013 bid to Cardinal [Health]." Ex. 65, RFA No. 11.

75.     That available data shows that, in the alleged conduct period, Mylan shipped Pio Met to customers to Cardinal Health in Ohio. Ex. 141.

**Perrigo's Sales**

76.     In response to an interrogatory asking State Plaintiffs to "[d]escribe all acts taken by Perrigo, if any, in Your state for which You seek a civil penalty or fine for the violation of any state statute identified in this Complaint," State Plaintiffs stated that Perrigo "misled its customers when submitting bids or invoices, including in the following states: Arizona, Arkansas, California, Colorado, Florida, Illinois, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Washington, and Wisconsin."[14] Ex. 73 at 34-36. These are the only states identified by State Plaintiffs that are seeking civil penalties of fine where Perrigo is alleged to have "misled its customers when submitting bid or invoices."

**Pfizer's Sales**

77.     In response to an interrogatory asking State Plaintiffs to "[d]escribe, in detail, all acts or omissions You contend Pfizer took, independent from Greenstone or the alleged conduct of Jill Nailor or Robin Strzeminski, to join and participate in a conspiracy to fix prices and/or allocate market share on any generic pharmaceutical product, including the 6 generic pharmaceutical products identified in paragraph 1280 of the Complaint," the State Plaintiffs did not identify any Pfizer sales of the Drugs at Issue. Ex. 74 at 13-14; Ex. 75 at 9-11. Pfizer did not sell the Drugs at Issue.

**Sandoz/Fougera's Sales**

78.     Based upon a review of Sandoz's sales data, Sandoz only made direct sales to customers located in the following states that are seeking civil fines or penalties under state law: Arizona, California, Connecticut, Florida, Idaho, Illinois, Iowa, Kentucky, Maine, Massachusetts,

---

[14] Arkansas dismissed its claims. *See supra* n. 5. Louisiana also dismissed its claims. Notice of Voluntary Dismissal, *State of Connecticut et al., v. Sandoz, Inc. et al.*, 2:20-cv-00802-MPS (D. Conn. Aug. 29, 2024) (Dkt. 388).

Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Jersey, New York, North Carolina, North Dakota, Ohio, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Utah, Vermont, Virginia, Washington, and Wisconsin. Ex. 136.

**Sun/Taro's Sales**

79.     Sun's transactional data indicates that Sun sold drugs at issue to customers in the following states that are seeking civil fines or penalties under state law: Arizona, California, Colorado, Connecticut, Florida, Iowa, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Maryland, Maine, Michigan, Minnesota, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oregon, Pennsylvania, Puerto Rico, Utah, Virginia, Washington, West Virginia, and Wisconsin. Ex. 137.

80.     Sun did not sell products to customers in the following states: Alaska, Delaware, Idaho, Montana, Nevada, Northern Mariana Islands, Rhode Island, South Carolina, Vermont, and the Virgin Islands. *Id.*

81.     Taro's transactional data indicates that Taro sold drugs at issue to customers in the following states that are seeking civil fines or penalties under state law: Arizona, California, Colorado, Connecticut, Florida, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Vermont, Virginia, Utah, Washington, and Wisconsin. *Id.*

82.     Taro did not sell drugs at issue to customers in the following states: Alaska, Delaware, Idaho, Montana, Northern Mariana Islands, Utah, West Virginia, and the Virgin Islands. *Id.*

**Wockhardt's Sales**

83.     In response to an interrogatory asking State Plaintiffs to "[d]escribe all acts taken by Wockhardt, if any, in Your State, Commonwealth, and/or Territory for which You seek a civil penalty or fine for the violation of any state statute identified in the Complaint," State Plaintiffs stated that Wockhardt sent its customers communications about price increases that were reached in collusion with competitors in the following states: "California, Florida, Kentucky, Louisiana, Michigan, Minnesota, Missouri, North Carolina, Ohio, Pennsylvania, Puerto Rico, New Jersey, New York, Rhode Island, and Washington." Ex. 76 at 24-25.

**XII.     States Where Purported Conspiracies Were Allegedly Entered**

**Actavis Allegedly Entered Purported Conspiracies in Ohio, Florida, Kentucky, New Jersey, New York, Pennsylvania and Wisconsin, if Anywhere**

84.     During the relevant time period, Actavis Holdco US, Inc. had its principal place of business in Parsippany, New Jersey and later, following the acquisition by Teva, in North Wales, Pennsylvania. Defendants Actavis Pharma Inc., and Actavis Elizabeth LLC had their principal places of business in Parsippany, New Jersey and Elizabeth, New Jersey, respectively. (Compl. ¶¶ 32-34).

85.     State Plaintiffs allege that Actavis employees based in Wisconsin, Pennsylvania, New Jersey, New York, and Florida reached agreements with employees of competitors in New York, Ohio, and New Jersey, as depicted in the chart below.

| Actavis Individual | Alleged External Contacts | Drugs at Issue | Actavis Individual's Location | Alleged Contacts' Location |
|---|---|---|---|---|
| Mike Dorsey | Tony Polman (Perrigo) Ara Aprahamian (Taro) Mike Perfetto (Taro) | Ammonium Lactate Lotion (Compl. ¶¶ 735; 744) Ammonium Lactate Cream (*Id.*) Ciclopirox Shampoo (Compl. ¶¶ 627-639) Fluocinonide Solution (Compl. ¶ 779) | Wisconsin (Ex. 77 at 35:9-10; Ex. 78 at 26:3-5) | New York (Exs. 73, 81, 82) |

| | | Nystatin Ointment (Compl. ¶¶ 383-91)<br>Promethazine HCL Suppositories (Compl. ¶¶ 1512-1532) | | |
|---|---|---|---|---|
| Anthony Giannone | Ara Aprahamian (Taro)<br>Chris Bihari (Sandoz) | Ammonium Lactate Cream (Compl. ¶¶ 740; 744)<br>Ammonium Lactate Lotion (*Id.*)<br>Desonide Lotion (Compl. ¶ 623)<br>Terconazole Cream (Compl. ¶¶ 740; 744) | Pennsylvania, New Jersey (Ex. 80 at 41:7-42:6) | New York (Ex. 81), Ohio (Ex. 83) |
| Rick Rogerson | Ara Aprahamian (Taro)<br>Erika Vogel-Baylor (G&W) | Fluocinonide Solution (Compl. ¶¶ 776-787)<br>Promethazine HCL Suppositories (Compl. ¶¶ 1506-1532) | New Jersey (*See* Ex. 84 at 18:16-18; Ex. 85 at 49:4-51:16) | New York (Ex. 81), New Jersey (Comp. at ¶ 69) |
| Thad Demos | Mike Perfetto (Taro)<br>Ara Aprahamian (Taro) | Fluocinonide Solution (Compl. ¶¶ 779; 782) | New Jersey (*See* Ex. 142) | New York (Exs. 81, 82) |
| Steve Cohen | Mike Perfetto (Taro)<br>Ara Aprahamian (Taro) | Fluocinonide Solution (Compl. ¶¶ 779; 782) | Florida (*See* Ex. 86 at 40:25-41:3) | New York (Ex. 81, 82) |
| Mike Perfetto | Mitchell Blashinsky (Taro)<br>James Grauso (G&W)<br>Kurt Orlofski (G&W) | Clotrimazole Betamethasone Dipropionate Cream (Compl. ¶¶ 290-306)<br>Metronidazole Cream (Compl. ¶¶ 404-429)<br>Metronidazole Lotion (Compl. ¶¶ 404-429) | New Jersey (*See* Ex. 87 at 59:4-60:6) | New York (Compl. ¶ 44); Ex. 88, New Jersey (Exs. 89, 90; Compl. at ¶¶ 48, 63) |
| Ara Aprahamian | Chris Bihari (Sandoz)<br>Mike Perfetto (Taro) | Betamethasone valerate ointment (Compl. ¶¶ 640-652)<br>Ciclopirox Shampoo (Compl. ¶¶ 627-639)<br>Clotrimazole Betamethasone Dipropionate Cream (Compl. ¶¶ 303-306)<br>Desonide Lotion (Compl. ¶¶ 610-626)<br>Methylphenidate (Compl. ¶¶ 1261-77)<br>Nystatin Ointment (Compl. ¶¶ 1261-77) | New York (Compl. ¶¶ 1261-77; Exs. 91-92), New Jersey (Compl. ¶¶ 32-34.) | Ohio (Ex. 83), New York (Ex. 82) |
| Andy Boyer | Mike Perfetto (Taro) | Ammonium Lactate Cream (Compl. ¶ 744) | New Jersey (Ex. 94 at 13:1-3; Ex. | New York (Ex. 82) |

| | | Ammonium Lactate Lotion (Compl. ¶ 744) Terconazole Cream (Compl. ¶ 741) | 95 at 139:15-25) | |
| Mike Berryman | Ara Aprahamian (Taro) | Fluocinonide Solution (Compl. ¶¶ 782) | Kentucky (Ex. 138; Ex. 139) | New York (Ex. 81) |

**Amneal Allegedly Entered Purported Conspiracies in Arizona, Kentucky, Michigan, North Carolina, New York, and Pennsylvania, if Anywhere**

86.    Amneal is headquartered in Bridgewater, New Jersey. Compl. ¶ 37.

87.    State Plaintiffs allege that Amneal employees Stephen Rutledge and Shannon Rivero participated in the purported phenytoin conspiracy. Compl. ¶¶ 897–908; 1385–86.

88.    At the time State Plaintiffs allege an agreement on phenytoin was reached, both Rivero and Rutledge worked in Kentucky. Ex. 96 at 33:19 – 22; Ex. 97 (showing Shannon Rivero's email signature location as Kentucky).

89.    State Plaintiffs allege that telephone calls between Amneal employees and James Nesta, an employee of Mylan, are related to the alleged phenytoin conspiracy. Compl. ¶¶ 897-902.

90.    Nesta was located in North Carolina at the time State Plaintiffs allege an agreement on phenytoin was reached. Ex. 98 (email providing mailing address in Huntersville, North Carolina).

91.    State Plaintiffs allege that telephone calls between Amneal employees and Michael Aigner, an employee of Mylan, are related to the alleged phenytoin conspiracy. Compl. ¶¶ 895, 900–905.

92.    Aigner was located in Pennsylvania at the time State Plaintiffs allege an agreement on phenytoin was reached. Ex. 99 (2013 email referencing Aigner's location as Holidaysburg, Pennsylvania); Ex. 100 (2015 email referencing Aigner's home address in Holidaysburg, Pennsylvania).

93.    State Plaintiffs allege that telephone calls between Amneal employees and Ara Aprahamian, an employee of Taro, are related to the alleged phenytoin conspiracy. Compl. ¶¶ 894–908.

94.    Aprahamian was located in New York at the time State Plaintiffs allege an agreement on phenytoin was reached. Ex. 81.

95.    State Plaintiffs appear to believe that telephone calls between Amneal employees and Wayne Fallis, an employee of Taro's predecessor company Sun, are related to the alleged phenytoin conspiracy. Ex. 101 at 109:12–110:21.

96.    Fallis testified in his deposition that he was located in the state of Michigan at the time State Plaintiffs allege an agreement on phenytoin was reached. Ex. 101 at 32:19–33:13.

97.    Plaintiffs also allege that representatives of Mylan, Taro, Sun, and Amneal discussed phenytoin at the NACDS annual meeting in Arizona in April 2014. Compl. ¶ 898.

98.    Other than the communications identified above, State Plaintiffs have not alleged any other communications between Amneal and a purported conspirator related to the alleged phenytoin conspiracy.

**Aurobindo Allegedly Entered Purported Conspiracies in New Jersey, Ohio, and North Carolina, if Anywhere**

99.    Aurobindo is headquartered in New Jersey. Compl. ¶ 40.

100.    State Plaintiffs allege that Aurobindo's employee, Anthony Thomassey, shared competitively sensitive information with Christopher Bihari of Sandoz regarding Cefpodoxime Proxetil. Compl. ¶¶ 1191-92, 1199.

101.    State Plaintiffs also allege that Thomassey shared competitively sensitive information regarding Pioglitazone Metformin with Bihari of Sandoz and James Nesta of Mylan. Compl. ¶¶ 1208-09, 1214, 1219.

102.    During the relevant period, Thomassey worked for Aurobindo from his home in Ohio and from Aurobindo's New Jersey offices. Ex. 102 (Thomassey Offer Letter).

103.    During the relevant period, Bihari worked for Sandoz from Ohio. Ex. 83 (signature block identifying location as Powell, OH).

104.    During the relevant period, Nesta worked for Mylan from North Carolina. Ex. 98 (identifying home address in Huntersville, NC).

105.    State Plaintiffs also allege that another Aurobindo employee, James Grauso, shared competitively sensitive information regarding Pioglitazone Metformin with two employees of Teva Pharmaceuticals USA, Inc. Compl. ¶¶ 1208-09.[15]

106.    During the relevant period, Grauso lived in New Jersey and worked for Aurobindo in its New Jersey offices. Ex. 103 (employment application); Ex. 104 (resume).

**Bausch Allegedly Entered Purported Conspiracies in New Jersey, if Anywhere**

107.    Bausch is headquartered in Bridgewater, New Jersey. Compl. ¶¶ 41-42.

108.    In response to an interrogatory asking State Plaintiffs to "[d]escribe all acts taken by Bausch, if any, in Your state for which You seek a civil penalty or fine for the violation of any state statute identified in Your Complaint," State Plaintiffs explained that "Bausch employees communicated with their competitors in forming and furthering the agreements to artificially fix prices and allocate customers from their home office located in New Jersey, including to other competitors located there." Ex. 68 at 14-15.

---

[15] Teva and its individual employees are not named as defendants in this action.

**Glenmark Allegedly Entered Purported Conspiracies in New Jersey, Massachusetts, New York, and Ohio, if Anywhere**

> *Any Alleged Conspiracy between Glenmark and G&W was entered, if at all, in New Jersey and Massachusetts*

109.    State Plaintiffs contend that Paul Dutra spoke with Erika-Vogel Baylor of G&W about Ciclopirox Cream and Mometasone Furoate. Ex. 105 at 21, 23. However, state plaintiffs have not identified where any alleged agreements relating to these products were made.

110.    From 2012 until his departure in 2014, Dutra worked at Glenmark's main office in Mahwah, New Jersey and lived in Massachusetts. Ex. 106 at GMK-MDL-000040023; Compl. ¶ 47.

111.    In 2012 and 2013, Vogel-Baylor worked for G&W in New Jersey. Compl. ¶ 69.

> *Any Alleged Conspiracy between Glenmark and Sandoz was entered, if at all, in New Jersey and Ohio*

112.    State Plaintiffs contend that Mitchell Blashinsky of Glenmark spoke with Chris Bihari of Sandoz regarding Fluticasone Propionate Lotion, Alclometasone Dipropionate Cream, Alclometasone Dipropionate Ointment, and Desoximetasone Ointment. Ex. 105 at 21, 23-24. However, State Plaintiffs have not identified where any alleged agreements relating to these products were made.

113.    In 2012 and 2013, Blashinsky's principal place of work was Glenmark's office in Mahwah, New Jersey. Ex. 107. Blashinsky also lived in New Jersey. Ex. 108.

114.    In 2012 and 2013, Bihari worked for Sandoz in Ohio and lived in Ohio. Ex. 83.

> *Any Alleged Conspiracy between Glenmark and Taro was entered, if at all, in New Jersey and New York*

115.    State Plaintiffs contend that in 2012 and 2013, Mitchell Blashinsky of Glenmark spoke with Ara Aprahamian and Michael Perfetto of Taro about Alclometasone Dipropionate

Cream, and Desoximetasone Ointment; however, State Plaintiffs have not identified where any alleged agreements relating to these products were made. Ex. 105 at 23-24.

116.     In 2012 and 2013, Blashinsky lived and worked in New Jersey. Exs. 107 and 108.

117.     State Plaintiffs also contend that Jim Grauso of Glenmark spoke with Ara Aprahamian and Michael Perfetto of Taro regarding Fluocinonide .1% Cream in 2014; however they have not identified where any alleged agreement relating to this product was made. Ex. 105 at 25.

118.     In 2014, Grauso worked at Glenmark's office in Mahwah, New Jersey and lived in New Jersey. Exs. 89 and 90.

119.     From 2012 to 2014, Aprahamian worked for Taro in New York and lived in New York. Ex. 81.

120.     From 2012 to 2014, Perfetto worked for Taro in New York and lived in New York. Ex. 82 (identifying Perfetto's phone number area code, which is assigned to New York).

**Greenstone Allegedly Entered Purported Conspiracies in New Jersey, if Anywhere**

121.     During the time period when the purported conspiracies occurred, Greenstone was headquartered in Peapack, New Jersey. Compl. ¶¶ 49, 128.

122.     In response to an interrogatory asking State Plaintiffs to "[d]escribe, in detail, each separate act taken by Greenstone that You contend entitles or otherwise supports Your claim for civil penalties, fines…In so doing, for each such act identify…the location of each act including the state and city the act was taken," State Plaintiffs stated that Greenstone "employees communicated with their competitors in forming and furthering the agreements to artificially fix prices and allocate customers from their home office located in New Jersey, including to other competitors located there." Ex. 70 at 30. New Jersey is the only state identified by State Plaintiffs where Greenstone allegedly entered into a purported conspiracy.

**G&W Allegedly Entered Purported Conspiracies in New Jersey, if Anywhere**

123.    G&W Labs was headquartered in South Plainfield, NJ. Compl. at ¶ 46. Each of the individual defendants who were employed by G&W during the relevant time period worked from G&W's headquarters.

124.    James Grauso was employed by G&W from January 2010 to December 2011 and resided in New Jersey during that time. Compl. at ¶ 48.

125.    Kurt Orlofski was the President of G&W from September 2009 to December 2016 and resided in New Jersey during that time. Compl. at ¶ 63.

126.    Erika Vogel-Baylor worked at G&W "[a]t all relevant times" beginning in July 2011 and resided in New Jersey during that time. Compl. at ¶ 69.

**Lannett Allegedly Entered Purported Conspiracies in Pennsylvania, New York, Maryland, or Nevada, if Anywhere**

127.    Lannett is headquartered in Philadelphia, Pennsylvania. Compl. ¶ 54.

128.    State Plaintiffs allege that Kevin Smith, an employee of Lannett, participated in the purported acetazolamide conspiracy. Compl. ¶ 806.

129.    At the time State Plaintiffs allege an agreement on acetazolamide was reached, Smith worked for Lannett in its Pennsylvania offices. Ex. 71 ¶ 9 and Ex. B.

130.    State Plaintiffs appear to believe that telephone calls between Smith and Mitchell Blashinsky, an employee of Taro, are related to the alleged acetazolamide conspiracy. Compl. ¶ 807.

131.    At the time State Plaintiffs allege an agreement on acetazolamide was reached, Blashinsky worked for Taro in New York. Compl. ¶ 44; Ex. 88.

132.    State Plaintiffs allege that Arthur Bedrosian, an employee of Lannett, participated in the purported acetazolamide conspiracy. Compl. ¶ 810.

133.    From 2012 to 2014, during the alleged conspiracy period, Bedrosian worked for Lannett in its Pennsylvania offices. Ex. 71 ¶ 9 and Ex. B.

134.    State Plaintiffs appear to believe that telephone calls and meals between Bedrosian and Ara Aprahamian, an employee of Taro, are related to the alleged acetazolamide conspiracy. Compl. ¶ 810.

135.    At the time State Plaintiffs allege an agreement on acetazolamide was reached, Ara Aprahamian worked for Taro in its New York offices. Compl. ¶ 67.

136.    State Plaintiffs allege an agreement on acetazolamide was reached at the NACDS Total Store Expo in Las Vegas, Nevada. Compl. ¶ 813.

137.    State Plaintiffs allege an agreement on acetazolamide was reached at the GPhA Fall Technical Conference in Bethesda, Maryland. Compl. ¶ 815.

138.    Other than the telephone calls and conferences identified in the previous paragraphs (¶¶ 127-137), State Plaintiffs have not identified any other communications between Lannett and a purported conspirator related to the alleged acetazolamide conspiracy during the period that the conspiracy alleged occurred.

**Lupin Allegedly Entered Purported Conspiracies in New Jersey, if Anywhere**

139.    State Plaintiffs allege that David Berthold, an employee of Lupin, participated in an alleged ethambutol conspiracy. Compl. ¶1559.

140.    At the time State Plaintiffs allege an agreement on ethambutol was reached, Berthold worked for Lupin in New Jersey. Ex. 109.

141.    At the time State Plaintiffs allege an agreement on ethambutol was reached, Berthold lived in New Jersey. Exs. 110, 111 at 72:12-74:3 (discussing Berthold's landlines with 973 (New Jersey) area codes).

142.    The only communications State Plaintiffs allege occurred related to the purported ethambutol conspiracy that included Lupin are communications between Berthold and Kurt Orlofski and Erika Vogel-Baylor of G&W, and Kevin Green of Teva.[16] *See, e.g.*, Compl. ¶¶ 1555, 1559, 1562.

143.    At the time State Plaintiffs allege an agreement was reached on ethambutol, Kurt Orlofski resided in New Jersey. Compl. ¶ 63.

144.    At the time State Plaintiffs allege an agreement was reached on ethambutol, Erika Vogel-Baylor resided in New Jersey. Compl. ¶ 69.

**Mallinckrodt Allegedly Entered Purported Conspiracies in Arizona and Missouri, if Anywhere**

145.    State Plaintiffs allege Mallinckrodt reached agreements with Sandoz on Methylphenidate HCL Tablets and Methylphenidate HCL ER Tablets. *See* Compl. ¶¶ 1261-77, 1683-69.

146.    At the time of the alleged conspiracies, Mallinckrodt was headquartered in Missouri. *See id.* ¶¶ 56-58.

147.    State Plaintiffs alleged that Mallinckrodt employees Walter Kaczmarek and Kian Kazemi participated in the alleged Methylphenidate HCL Tablets and Methylphenidate conspiracies on behalf of Mallinckrodt. *See id.* ¶¶ 1265, 1270-71, 1275, 1277.

148.    In the alleged relevant timeframe, Walter Kaczmarek's telephone numbers each include a 314 area code, which is assigned to Missouri.

149.    In the alleged relevant timeframe, Kian Kazemi's telephone numbers in the relevant alleged timeframe each include a 480 area code, which is assigned to Arizona.

---

[16] Teva and its individual employees are not named as defendants in this action.

**Mylan Allegedly Entered Purported Conspiracies in Arizona, North Carolina, Ohio, Pennsylvania, West Virginia, Kentucky, New Jersey, and New York, if Anywhere**

150.    At relevant times, Mylan's principal place of business was in West Virginia and Pennsylvania, and it was registered in Pennsylvania and West Virginia. Compl. ¶ 61.

151.    At relevant times alleged in the complaint, Mylan employee Michael Aigner lived and worked remotely in Pennsylvania while employed at Mylan. Ex. 112.

152.    At relevant times alleged in the complaint, Mylan employee Jim Nesta lived and worked remotely in North Carolina while employed at Mylan. Ex. 113.

***The individuals allegedly involved in the purported phenytoin sodium conspiracy lived and worked in Pennsylvania, North Carolina, Kentucky, and New York.***

153.    In connection with allegations of a phenytoin sodium conspiracy, State Plaintiffs allege that in April and June 2014, Ara Aprahamian of Taro communicated with Michael Aigner of Mylan. Compl. ¶ 895.

154.    In connection with allegations of a conspiracy regarding the same drug, State Plaintiffs allege that Jim Nesta of Mylan attended the 2014 NACDS conference with various competitors in Arizona and communicated with Stephen Rutledge of Amneal. *Id.* at ¶¶ 897-98.

155.    In connection with allegations of a conspiracy regarding the same drug, State Plaintiffs allege that in May-July 2014, Rutledge of Amneal communicated with Jim Nesta and Michael Aigner, both of Mylan. *Id.* at ¶¶ 900, 902, 904.

156.    At the time State Plaintiffs allege an agreement on phenytoin was reached, Rutledge worked in Kentucky. Ex. 96 at 33:19 – 22.

157.    In connection with allegations of a conspiracy regarding the same drug, State Plaintiffs allege that in June-July 2014, Ara Aprahamian of Taro communicated with Michael Aigner of Mylan. *Id.* at ¶¶ 902, 904-905.

158.     At the time State Plaintiffs allege an agreement on phenytoin was reached, Aprahamian worked for Taro in New York. Ex. 81.

**_The individuals allegedly involved in the purported pioglitazone-metformin conspiracy lived and worked in North Carolina, Ohio, and New Jersey._**

159.     In connection with allegations of a pioglitazone-metformin conspiracy, State Plaintiffs allege that CW-6 (Anthony Thomassey) of Aurobindo communicated with Jim Nesta of Mylan in February 2013. Compl. ¶ 1209.

160.     At the time State Plaintiffs allege an agreement on Pio Met was reached, Thomassey worked for Aurobindo from his home in Ohio and from Aurobindo's New Jersey offices. Ex. 102.

**_The individuals allegedly involved in the purported bromocriptine conspiracy lived and worked in North Carolina, and Texas, which is not a plaintiff in this action._**

161.     In connection with allegations of a bromocriptine conspiracy, State Plaintiffs allege that in March and May 2013, Della Lubke of Sandoz communicated with Jim Nesta of Mylan. Compl. ¶¶ 1029, 1035, 1038, 1041.

162.     At the time State Plaintiffs allege an agreement on bromocriptine was reached, Della Lubke worked for Sandoz in Texas.[17] Ex. 114 at 540:9-13.

**Perrigo Allegedly Entered Purported Conspiracies in Michigan, New Jersey, New York, and Ohio, if Anywhere**

163.     Perrigo has executive offices in Allegan, Michigan. Compl. ¶ 65.

164.     In response to an interrogatory asking State Plaintiffs to "[d]escribe all acts taken by Perrigo, if any, in Your state for which You seek a civil penalty or fine for the violation of any state statute identified in this Complaint," State Plaintiffs explained that "Perrigo employees communicated with their competitors in forming and furthering the agreements to artificially fix

---

[17] Texas is not a plaintiff in this action.

prices and allocate customers from their North American home office located in Allegan, Michigan to other competitors located in states including New Jersey, New York, and Ohio." Ex. 73 at 34-36.

**Pfizer Allegedly Entered Purported Conspiracies New Jersey or New York, if Anywhere**

165.    Pfizer is headquartered in New York, New York. Compl. ¶ 50.

166.    During the time period when the purported conspiracies occurred, Pfizer and Greenstone "share[d] the same office space at Pfizer's Peapack, New Jersey campus" in Peapack, New Jersey. Compl. ¶¶ 49, 50, 1281.

**Sandoz/Fougera Allegedly Entered Purported Conspiracies in New York, New Jersey, Pennsylvania, Ohio, Tennessee, or Arizona, if Anywhere**

167.    Sandoz's principal place of business is in Princeton, New Jersey. Compl. ¶ 29.

168.    Fougera's principal place of business is in Melville, New York. Compl. ¶ 30.

169.    State Plaintiffs allege that Armando Kellum, a former Sandoz employee, participated in 36 alleged drug conspiracies on behalf of Sandoz. Compl. ¶ 1780.

170.    At the time State Plaintiffs allege Kellum entered into such agreements, Kellum worked for Sandoz at its offices in Princeton, New Jersey and lived in Pennsylvania. Ex. 115.

171.    State Plaintiffs allege that Michael Vezza, a former Sandoz employee, participated in 21 alleged product conspiracies on behalf of Sandoz. Compl. ¶¶ 312, 362-365, 617-624, 634, 636, 669, 689, 704-707, 836, 841-848, 855, 850, 861, 880, 919-923, 944, 950-957, 965-973, 1031-1034, 1039-1041, 1046, 1058-1069, 1072-1073, 1104-1105, 1121-1124, 1158-1166, 1218-1224,1255-1258, 1323, 1368-1375, 1416-1420, 1428-1429.

172.    At the time State Plaintiffs allege Vezza entered into such agreements, Vezza worked for Sandoz at its offices in Princeton, New Jersey and lived in Pennsylvania. Ex. 117.

173.     State Plaintiffs allege that Della Lubke, a former Sandoz employee, participated in eight alleged drug conspiracies on behalf of Sandoz. Compl. ¶¶ 202-209, 240-250, 308-310, 474-476, 478, 496-490, 746, 1029, 1033-1041, 1421-1429.

174.     At the time State Plaintiffs allege Lubke entered into such agreements, Lubke worked remotely from Texas.[18] Ex. 114 at 540:9-13.

175.     State Plaintiffs allege that Christopher Bihari, a former Sandoz employee, participated in 32 alleged product conspiracies on behalf of Sandoz. Compl. ¶¶ 260-265, 277-281, 303-312, 337, 342-365,460, 615-626, 629-639, 642-652, 698-707, 712-723, 731, 732-734, 737-739, 754-755, 766-771, 779-787, 792, 835-847, 867, 871-884, 943-947, 919-923, 950-961, 965-973, 983-987, 999, 1031-1050, 1054-1074, 1077-1099, 1103-1108, 1116-1124, 1130-1151, 1159-1166, 1182-1189,1182-1189, 1191-1204, 1214-1224, 1231-1258, 1264-1277, 1303-1310, 1328-1329, 1332-1346, and 1414-1429.

176.     At the time State Plaintiffs allege Bihari entered into such agreements, Bihari lived and worked in Ohio. Ex. 83 (identifying Bihari's business address as Powell, Ohio); Ex. 118; Ex. 119 at 18:25-19:1.

177.     State Plaintiffs allege that Paul Krauthauser, a former Fougera employee, participated in one alleged drug conspiracy on behalf of Sandoz. Compl. ¶ 210-211.

178.     At the time State Plaintiffs allege Krauthauser entered into such agreements, Krauthauser worked in Princeton, New Jersey and lived in Pennsylvania. Exs. 120, 121, 122.

179.     State Plaintiffs allege that Kian Kazemi, a former Fougera employee, participated in one alleged drug conspiracy on behalf of Fougera. Compl. ¶¶ 332, 875, 1157-1158.

---

[18] Texas is not a plaintiff in this action.

180.     At the time State Plaintiffs allege Kazemi entered into such agreements, Kazemi lived and worked in Arizona. Exs. 123, 124, 125.

181.     State Plaintiffs allege that Walter Kaczmarek, a former Fougera employee, participated in 12 alleged drug conspiracies on behalf of Fougera. Compl. ¶¶ 214-26, 263-264, 267-281, 284-288, 323-333, 344-365, 386-391, 407-413, 445-449, 458, 478-482, 543.

182.     At the time State Plaintiffs allege Kaczmarek entered into such agreements, Kaczmarek lived and worked in Tennessee. Ex. 126; Ex. 127 at 39:9-12, 17-22.

183.     State Plaintiffs allege that Anthony Thomassey, a former Sandoz employee, participated in 15 alleged drug conspiracies on behalf of Sandoz. Compl. ¶¶ 214-216, 261, 268, 284-285, 294, 319-320, 338, 369, 408, 434, 447-449, 458, 479-480, 539.

184.     At the time State Plaintiffs allege Thomassey entered into such agreements, Thomassey lived and worked in Ohio. Ex. 128; Ex. 129 at DRR-CT0133713.

**Sun/Taro Allegedly Entered Purported Conspiracies in New Jersey and New York, if Anywhere**

185.     Sun is headquartered in Cranbury, New Jersey. Compl. ¶ 66.

186.     Taro is headquartered is headquartered in Hawthorne, New York. Compl. ¶ 67.

187.     State Plaintiffs allege that Ara Aprahamian, an employee of Taro, participated in the purported conspiracies. Compl. ¶¶ 568, 571, 572, 606, 654.

188.     At the times State Plaintiffs allege Aprahamian participated in the purported conspiracies on behalf of Taro, Aprahamian lived in Bardonia, New York. Compl. ¶ 39.

189.     At all times State Plaintiffs allege Aprahamian participated in the purported conspiracies on behalf of Taro, Aprahamian worked for Taro in New York. Ex. 81.

190.     State Plaintiffs allege that Michael Perfetto, an employee of Taro, participated in the purported conspiracies. Compl. ¶¶ 576, 590, 605, 607, 608.

191.    At the times the State Plaintiffs allege Perfetto participated in the purported conspiracies on behalf of Taro, Perfetto lived in Conklin, New York. Compl. ¶ 64.

192.    At all times State Plaintiffs allege Perfetto participated in the purported conspiracies on behalf of Taro, Perfetto worked for Taro in New York. Ex. 130.

193.    State Plaintiffs allege that Mitchell Blashinsky, an employee of Taro, participated in the purported conspiracies. Compl. ¶¶ 199, 297, 303, 306, 329.

194.    At the times the State Plaintiffs allege Perfetto participated in the purported conspiracies on behalf of Taro, Blashinsky lived in Monroe Township, New Jersey. Compl. ¶ 44.

195.    At all times State Plaintiffs allege Blashinsky participated in the purported conspiracies on behalf of Taro, Blashinsky worked for Taro in New York. Ex. 88.

196.    State Plaintiffs allege that Howard Marcus, an employee of Taro, participated in the purported conspiracies. Compl. ¶¶ 187, 189, 574, 575, 576.

197.    At all times State Plaintiffs allege Marcus participated in the purported conspiracies on behalf of Taro, Marcus worked for Taro in New York. Ex. 131.

198.    State Plaintiffs allege that Douglas Statler, an employee of Taro. participated in the purported conspiracies. Compl. ¶¶ 196, 198, 577, 578, 580, 582.

199.    At all times State Plaintiffs allege Statler participated in the purported conspiracies on behalf of Taro, Statler worked for Taro in New York. Ex. 132.

200.    State Plaintiffs allege that Jim Josway, an employee of Taro, participated in the purported conspiracies. Compl. ¶ 720.

201.    At all times State Plaintiffs allege Josway participated in the purported conspiracies on behalf of Taro, Josway worked for Taro in New York. Ex. 133.

202.    State Plaintiffs allege that Chris Urbanski, an employee of Taro, participated in the purported conspiracies. Compl. ¶ 1017.

203.    At all times State Plaintiffs allege Urbanski participated in the purported conspiracies on behalf of Taro, Urbanski worked for Taro in New York. Ex. 134.

**Wockhardt Allegedly Entered Purported Conspiracies in Illinois, New Jersey, and Ohio, if Anywhere**

### *The Alleged Erythromycin Base/Ethyl Alcohol Solution (Erythromycin) Conspiracy*

204.    State Plaintiffs allege that Michael Craney and Kevin Knarr of Wockhardt allegedly entered into an agreement relating to the Erythromycin conspiracy during certain alleged phone calls with "CW-6" [Anthony Thomassey] and "CW-3" [Chris Bihari] of Fougera. Compl. ¶¶ 338-339, 342, 344, 352, 363-364.

205.    Michael Craney and Kevin Knarr worked for Wockhardt USA, located in New Jersey, and resided in Illinois and New Jersey, respectively. Compl. ¶ 71; Ex. 135 (identifying Craney and Knarr's phone number area codes, which are assigned to Illinois and New Jersey, respectively).

206.    At the time of the alleged conspiracy, Anthony Thomassey lived and worked in Ohio. Exs. 128-129.

207.    At the time of the alleged conspiracy, Chris Bihari lived and worked in Ohio. Exs. 83, 18, 119.

### *The Alleged Clobetasol Propionate Solution (Clobetasol) Conspiracy*

208.    State Plaintiffs allege that Michael Craney of Wockhardt allegedly entered into an agreement relating to the Clobetasol conspiracy during certain alleged phone calls with Ara Aprahamian of Taro. Compl. ¶¶ 856, 884.

209.    Michael Craney worked for Wockhardt USA, located in New Jersey, and resided in Illinois. Compl. ¶ 71; Ex. 135.

210.    Ara Aprahamian worked for Taro in New York. Compl. ¶ 67; Ex. 81.

Dated:  November 22, 2024

/s/ Robin D. Adelstein
Robin D. Adelstein
Mark A. Robertson
Kimberly Fetsick
Abigail Schwarz
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: (212) 318-3000
Facsimile: (212) 408-5100
robin.adelstein@nortonrosefulbright.com
mark.robertson@nortonrosefulbright.com
kimberly.fetsick@nortonrosefulbright.com
abigail.schwarz@nortonrosefulbright.com

Mark Angland
NORTON ROSE FULBRIGHT US LLP
779 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
mark.angland@nortonrosefulbright.com

Alex Cummings
Dewey Jude Gonsoulin, III
NORTON ROSE FULBRIGHT US LLP
1550 Lamar, Suite 2000
Houston, TX 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
alex.cummings@nortonrosefulbright.com
dewey.gonsoulin@nortonrosefulbright.com

Jeffrey J. Mirman
HINCKLEY, ALLEN, & SNYDER LLP
20 Church Street
Hartford, CT 06103
Telephone: (860) 725-6200
Facsimile: (860) 278-3802
jmirman@hinckleyallen.com

*Counsel for Defendants Bausch Health
Americas, Inc. and Bausch Health US LLC*

Respectfully submitted,

/s/ Benjamin F. Holt
Benjamin F. Holt
Adam K. Levin
Justin W. Bernick
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
benjamin.holt@hoganlovells.com
adam.levin@hoganlovells.com
justin.bernick@hoganlovells.com

Jasmeet K. Ahuja
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

Kim E. Rinehart (ct24427)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
Tel: (203) 498-4400
Fax: (203) 782-2889
krinehart@wiggin.com

Robert M. Langer (ct06305)
WIGGIN AND DANA LLP
20 Church Street
Hartford, CT 06103
Tel: (860) 297-3700
Fax: (860) 525-9380
rlanger@wiggin.com

*Counsel for Defendants Mylan Inc. and Mylan
Pharmaceuticals Inc.*

*/s/ Dimitra Doufekias*
Dimitra Doufekias (phv207871)
Megan E. Gerking (phv207878)
Robert W. Manoso (phv207877)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Tel.: (202) 887-1500
Fax: (202) 887-0763
ddoufekias@mofo.com
mgerking@mofo.com
rmanoso@mofo.com


Drew Alan Hillier (ct30252)
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, CA 92130-2040
Phone: (858) 314-7711
Fax: (858) 720-5125
Email: dhillier@mofo.com


Michael B. Miller (phv207479)
MORRISON & FOERSTER LLP
250 W 55th Street
New York, NY 10019
Tel.: (212) 468-8000
Fax: (212) 468-7900
mbmiller@mofo.com

*Counsel for Defendant Glenmark*
*Pharmaceuticals Inc., USA*


*/s/ George G. Gordon*
George G. Gordon
Julia Chapman
Forrest E. Lovett
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 994-4400
george.gordon@dechert.com
julia.chapman@dechert.com
forrest.lovett@dechert.com


Christie Boyden
DECHERT LLP
1900 K Street NW
Washington, DC.
Telephone: (202) 261-3300
Facsimile: (202) 261-3300
scott.proctor@dechert.com
christie.boyden@dechert.com

*Counsel for Defendant Lannett Company, Inc*

/s/ Sheron Korpus
Sheron Korpus
Seth A. Moskowitz
Seth Davis
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
skorpus@kasowitz.com
smoskowitz@kasowitz.com
sdavis@kasowitz.com

*Counsel for Defendants Actavis Elizabeth,
LLC, Actavis Holdco U.S., Inc., and
Actavis Pharma, Inc.*


/s/ Robin P. Sumner
Robin P. Sumner
Michael J. Hartman
Melissa O'Donnell
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel. (215) 981-4000
Fax. (215) 981-4750
robin.sumner@troutman.com
michael.hartman@troutman.com
melissa.odonnell@troutman.com

/s/ Bennet J. Moskowitz
Bennet J. Moskowitz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
875 Third Avenue
New York, NY 10022
Tel. (212) 704-6087
Fax. (212) 704-8370
bennet.moskowitz@troutman.com

*Counsel for Defendants Amneal
Pharmaceuticals, Inc. and Amneal
Pharmaceuticals LLC*

/s/ Whitney Cloud
Whitney Cloud
Ilana H. Eisenstein
Ben C. Fabens-Lassen
DLA PIPER LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
whitney.cloud@dlapiper.com
ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com

Carlton E. Wessel
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
carlton.wessel@us.dlapiper.com

James O. Craven
James I. Glasser
WIGGIN & DANA
One Century Tower
265 Church Street
New Haven, CT 06510
Telephone: 203-498-4361
jcraven@wiggin.com
jglasser@wiggin.com

*Counsel for Defendants Pfizer Inc. and
Greenstone LLC*

/s/ J. Clayton Everett, Jr.
J. Clayton Everett, Jr. (phv207964)
William S.D. Cravens (phv207968)
Molly R. Maidman (phv207966)
Y. Frank Ren (phv207981)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: +1.202.739.3000
Facsimile: +1.202.739.3001
clay.everett@morganlewis.com
william.cravens@morganlewis.com
molly.maidman@morganlewis.com
frank.ren@morganlewis.com

Michael D. Blanchard
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone: +1.860.240.2700
Facsimile: +1.860.240.2701
michael.blanchard@morganlewis.com

*Counsel for Defendant Perrigo New York, Inc.*

/s/ Clifford Katz
Clifford Katz
Damon W. Suden
Marisa Lorenzo
KELLEY DRYE WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
ckatz@kelleydrye.com
dsuden@kelleydrye.com
mlorenzo@kelleydrye.com

*Counsel for Defendant Wockhardt USA LLC*

/s/ Nathan E. Denning
Nathan E. Denning
Chloe S. Booth
WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
Tel: (212) 551-2600
Fax (212) 551-2888
ndenning@wiggin.com
cbooth@wiggin.com

Benjamin H. Diessel
Ariela C. Anhalt
Emmett Gilles
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
Tel: (203) 498-4400
Fax: (203) 782-2889
bdiessel@wiggin.com
aanhalt@wiggin.com
egilles@wiggin.com

Christopher Bailes
WIGGIN AND DANA LLP
50 S. 16th Street, Suite 2925
Philadelphia, PA 19102
Tel: (215) 998-8318
Fax: (215) 988-8384
cbailes@wiggin.com

*Counsel for Defendant Aurobindo Pharma USA, Inc.*

/s/ Darrell Prescott
Darrell Prescott
DARRELL PRESCOTT
LAW OFFICE P.C.
104 Charlton St., 1-W
New York, NY 10014
Tel: (917) 510-3165
Fax: (866) 233-5869
dp@darrellprescott.com

James D. Bailey
BAILEY DUQUETTE P.C.
104 Charlton St., 1-W
New York, NY 10014
Tel: (212) 658-1946
Fax: (866) 233-5869
james@baileyduquette.com

Stephan Matanovic
BAILEY DUQUETTE P.C.
21 S. 11th Street, 2nd Floor
Philadelphia, PA 19107
Tel: (215) 660-7600
Fax: (866) 233-5869
stephan@baileyduquette.com

*Counsel for Defendant G&W Laboratories, Inc.*

/s/ Jane Willis
Jane E. Willis (PHV25421)
Andrew J. O'Connor (PHV208240)
Phillip Z. Yao (PHV208241)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
jane.willis@ropesgray.com
andrew.oconnor@ropesgray.com
phillip.yao@ropesgray.com

*Counsel for Defendants Mallinckrodt Inc.,*
*Mallinckrodt LLC, and Mallinckrodt plc*

/s/ Colin R. Kass
Colin R. Kass
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, NW
Suite 600 South
Washington, DC 20004
Telephone: (202) 416-6890
Facsimile: (202) 416-6899
ckass@proskauer.com

Bradley I. Ruskin
David A. Munkittrick
Adam Farbiarz
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
bruskin@proskauer.com
dmunkittrick@proskauer.com
afarbiarz@proskauer.com

Meg Slachetka
COMPETITION LAW PARTNERS
1101 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 742-4300
meg@competitionlawpartners.com

*Counsel for Defendant Lupin Pharmaceuticals, Inc.*

/s/ John M. Taladay
John M. Taladay
Christopher P. Wilson
JoAnna B. Adkisson
Michael A. Munoz
BAKER BOTTS LLP
700 K Street NW
Washington, DC 20004
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
john.taladay@bakerbotts.com
christopher.wilson@bakerbotts.com
joanna.adkisson@bakerbotts.com
micahel.munoz@bakerbotts.com

Matthew M. Hilderbrand
BAKER BOTTS LLP
401 South 1st Street, Suite 1300
Austin, TX 78704
Telephone: (512) 322-2500
Facsimile: (512) 322-3613
matthew.hilderbrand@bakerbotts.com

Jennifer L. Morgan – ct21751
Marilyn B. Fagelson – ct17202
MURTHA CULLINA LLP
265 Church Street, 9th Floor
New Haven, CT 06510
Telephone: (203) 772-7700
Facsimile: (203) 772-7723
jmorgan@murthalaw.com
mfagelson@murthalaw.com

*Counsel for Defendants Sun Pharmaceutical Industries, Inc. and Taro Pharmaceuticals U.S.A., Inc.*

*/s/ Christopher Ondeck*
Christopher Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Tel: (202) 416-5865
Fax: (202) 416-6899
condeck@proskauer.com

Grant Esposito
David Fioccola
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
gesposito@proskauer.com
dfioccola@proskauer.com

Thomas D. Goldberg
Jeffrey Mueller
DAY PITNEY LLP
Goodwin Square 225 Asylum Street
Hartford, CT 06103
Telephone: (860) 275-0164
Facsimile: (860) 881-2625

*Counsel for Defendants Sandoz Inc. and*
*Fougera Pharmaceuticals Inc.*

*/s/ Guy Petrillo*
Guy Petrillo
Christina Karam
PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, NY 10017
212-370-0330

*Counsel for Defendant Douglas Boothe*

*/s/ G. Robert Gage, Jr.*
G. Robert Gage, Jr.
GAGE SPENCER & FLEMING LLP
410 Park Avenue
New York, NY 10022
Telephone: (212) 768-4900
grgage@gagespencer.com

Fabien M. Thayamballi
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas
17th Floor
New York, NY 10036
Tel. (212)-257-4891
fthayamballi@shapiroarato.com

*Counsel for Defendant Ara Aprahamian*

*/s/ Michael Weinstein*
Michael Weinstein
Michael C. Klauder
Jeffery M. Sauer
COLE SCHOTZ P.C.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602
201-489-3000
201-489-1536  Facsimile
mweinstein@coleschotz.com
mklauder@coleschotz.com
jsauer@coleschotz.com

*Counsel for Defendant Walter Kaczmarek*

*/s/ Timothy J. Bergère*
Timothy J. Bergère (PA No. 39110)
ARMSTRONG TEASDALE LLP
One Commerce Square
2005 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: (267) 780-2000
Facsimile: (215) 405-9070
Email: tbergere@atllp.com

*Counsel for Defendant Kurt Orlofski*

/s/ Charles S. Leeper
Charles S. Leeper
Kenneth M. Vorrasi
Alison M. Agnew
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, NW, Suite 1100
Washington, DC  20005
Telephone:  202-842-8800
Facsimile: 202-842-8465
charles.leeper@faegredrinker.com
kenneth.vorrasi@faegredrinker.com
alison.agnew@faegredrinker.com

*Counsel for Defendant John Wesolowski*

/s/ Adam S. Lurie
Adam S. Lurie
LINKLATERS LLP
601 Thirteenth Street NW
Suite 400S
Washington, DC 20005
Telephone: (202) 654-9200
Facsimile: (202) 654-9210
adam.lurie@linkaters.com

Michael Pilcher
LINKLATERS LLP
1290 Avenue of the Americas
New York, New York, 10104
Telephone: (212) 903-9000
Facsimile: (212) 903-9100
michael.pilcher@linklaters.com

*Counsel for Defendant Michael Perfetto*

/s/ Erica S. Weisgerber
Erica S. Weisgerber
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Telephone: 212-909-6000
Facsimile: 212-909-6836
eweisgerber@debevoise.com

Edward D. Hassi
Leah S. Martin
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202-383-8000
Facsimile: 202-383-8118
thassi@debevoise.com
lmartin@debevoise.com

*Counsel for Defendant Armando Kellum*

/s/ Alexander R. Bilus
Alexander R. Bilus, Esquire
PA No. 203680
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Telephone:  (215) 972-7177
alexander.bilus@saul.com

Allison L. Burdette, Esquire
PA No. 316695
SAUL EWING LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Telephone:  (412) 209-2500
allison.burdette@saul.com

*Counsel for Defendant Erika Vogel-Baylor*

/s/ Robert E. Connolly
Robert E. Connolly
LAW OFFICE OF ROBERT E. CONNOLLY
1735 Market Street, Suite A, #469
Philadelphia, PA 19103
Telephone: (215) 219-4418
bob@reconnollylaw.com

*Counsel for Defendant James Grauso*

/s/ Michelle N. Lipkowitz
Michelle N. Lipkowitz
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
Telephone: (202) 434-7448
MNLipkowitz@mintz.com

*Counsel for Defendant Mitchell Blashinsky*