**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THE STATE OF CONNECTICUT; THE STATE OF ALASKA; THE STATE OF ARIZONA; THE STATE OF ARKANSAS; THE STATE OF CALIFORNIA; THE STATE OF COLORADO; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF FLORIDA; THE STATE OF GEORGIA; THE TERRITORY OF GUAM; THE STATE OF HAWAII; THE STATE OF IDAHO; THE STATE OF ILLINOIS; THE STATE OF INDIANA; THE STATE OF IOWA; THE STATE OF KANSAS; THE COMMONWEALTH OF KENTUCKY; THE STATE OF LOUISIANA; THE STATE OF MAINE; THE STATE OF MARYLAND; THE COMMONWEALTH OF MASSACHUSETTS; THE STATE OF MICHIGAN; THE STATE OF MINNESOTA; THE STATE OF MISSISSIPPI; THE STATE OF MISSOURI; THE STATE OF MONTANA; THE STATE OF NEBRASKA; THE STATE OF NEVADA; THE STATE OF NEW HAMPSHIRE; THE STATE OF NEW JERSEY; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF NORTH DAKOTA; THE COMMONWEALTH OF THE NORTHERN MARIANA ISLAND; THE STATE OF OHIO; THE STATE OF OKLAHOMA; THE STATE OF OREGON; THE COMMONWEALTH OF PENNSYLVANIA; THE COMMONWEALTH OF PUERTO RICO; THE STATE OF RHODE ISLAND; THE STATE OF SOUTH CAROLINA; THE STATE OF TENNESSEE; THE STATE OF UTAH; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WASHINGTON; THE STATE OF WEST VIRGINIA; THE STATE OF WISCONSIN; and U.S. VIRGIN ISLANDS<br><br>v.<br><br>SANDOZ, INC.; ACTAVIS HOLDCO US, INC.; ACTAVIS ELIZABETH LLC; ACTAVIS PHARMA, | No. 3:20-cv-00802 (MPS) |

1

| |
|---|
| INC.; AMNEAL PHARMACEUTICALS, INC.; AMNEAL PHARMACEUTICALS, LLC; ARA APRAHAMIAN; AUROBINDO PHARMA U.S.A., INC.; BAUSCH HEALTH AMERICAS, INC.; BAUSCH HEALTH US, LLC; MITCHELL BLASHINSKY; DOUGLAS BOOTHE; FOUGERA PHARMACEUTICALS INC.; GLENMARK PHARMACEUTICALS INC., USA; JAMES (JIM) GRAUSO; GREENSTONE LLC; G&W LABORATORIES, INC.; WALTER KACZMAREK; ARMANDO KELLUM; LANNETT COMPANY, INC.; LUPIN PHARMACEUTICALS, INC.; MALLINCKRODT INC.; MALLINCKRODT LLC; MALLINCKRODT plc; MYLAN INC.; MYLAN PHARMACEUTICALS INC.; KURT ORLOFSKI; MICHAEL PERFETTO; PERRIGO NEW YORK, INC.; PFIZER INC.; SUN PHARMACEUTICAL INDUSTRIES, INC.; TARO PHARMACEUTICALS USA, INC.; TELIGENT, INC.; ERIKA VOGEL-BAYLOR; JOHN WESOLOWSKI; and WOCKHARDT USA LLC |

**RULING ON MOTION TO DISMISS TENNESSEE'S STATE-LAW CLAIMS**

The Defendants, thirty-six makers of generic drugs, moved under Fed. R. Civ. P. 12(b)(6) to dismiss state-law claims asserted by the Plaintiffs, the Attorneys General of most of the States and certain U.S. Territories, ECF No. 367, in this sprawling action alleging price-fixing, market allocation, and bid rigging in the sale of generic drugs for skin ailments. For the reasons set forth below, I deny the Defendants' motion to dismiss Tennessee's state-law claims.

I. Introduction

On October 24, 2024, I ordered the parties to submit supplemental briefs regarding an amendment to a relevant Tennessee state law. ECF No. 460. On November 4, 2024, I granted the parties an extension until November 15, 2024, to file these supplemental briefs. ECF No. 470. On November 12, 2024, before the supplemental briefs were due, I issued a ruling granting in part and denying in part the Defendants' motion to dismiss to Plaintiffs' state-law claims. ECF

No. 478. The ruling noted that Tennessee's state-law claims would be addressed in a supplemental ruling. *Id.* at 7. The parties timely filed their supplemental briefs, ECF Nos. 484–85; I now address the Tennessee state-law claims.

The remaining procedural background, allegations, and standard of review under Rule 12(b)(6) are explained in the main ruling on the Defendants' motion to dismiss state-law claims. ECF No. 478. The same apply here, including my caveat that this is an unusual 12(b)(6) motion, in that it asks me to foreclose the States from pursuing particular types of relief—such as "parens patriae" damages and disgorgement—under state law. *Id.* at 5–6. As in the main ruling, I attempt to address the parties' arguments, while keeping in mind that there will be later stages of this case in which I might be in a better position to decide some of the issues related to available relief. More specifically, only where I find the relevant State's law to foreclose particular types of relief in clear terms will I "dismiss" a particular claim for relief. *See, e.g.*, *id.* at 16–18, 29 (denying the motion to dismiss state-law claims brought by Indiana, Kentucky, Maine, and Missouri that were not clearly foreclosed under state law).

## II. Discussion

The Defendants seek to dismiss Tennessee's claims for monetary relief, which includes "damages for purchases of the affected generic drugs" and "equitable relief including disgorgement and injunctive relief," under the State's antitrust statute, the Tennessee Trade Practices Act ("TTPA"), Tenn. Ann. Code § 47-25-101, et seq. ECF No. 196 ¶¶ 2080–88. The Defendants argue that § 47-25-106 of the TTPA does not authorize the Attorney General to seek actions for monetary relief. ECF No. 367 at 33. At the time, that section read, in full:

> Any person who is injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent jurisdiction, from any person operating such trust or

3

> combination, the full consideration or sum paid by the person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust.

Tenn. Ann. Code § 47-25-106 (2013). After the Defendants filed their motion to dismiss, the Tennessee legislature amended portions of the TTPA, including § 47-25-106, which added a provision permitting the Attorney General to:

> bring an action in any court of competent jurisdiction in the name of this state, any of this state's political subdivisions or agencies, or as *parens patriae* on behalf of natural persons residing in this state for appropriate injunctive or other equitable relief, including, but not limited to, disgorgement, and to secure monetary damages for any injuries directly or indirectly sustained by reason of any violation of this part. The court shall award this state a reasonable attorney's fee, costs, and expenses, and, in actions *parens patriae*, to secure monetary damages or treble damages sustained.

Tenn. Ann. Code § 47-25-106(b) (2024). The plain language of the statue as amended specifies that the Attorney General has the authority to bring actions as parens patriae under the TTPA and seek both damages and equitable relief. In their supplemental brief, the Defendants do not argue otherwise, but contend that the statue cannot be retroactively applied to a complaint and motion to dismiss that were filed before the statute went into effect.[1] ECF No. 485. Thus, to decide the motion to dismiss Tennessee's state-law claims, I must first determine if the statute applies retroactively. If I determine that it does not, I must then determine if the Attorney General had the authority to bring these claims under the older version of the statute, as the parties argued in their original briefing. ECF No. 367 to 367-3. For the following reasons, I find that the TTPA, as revised, does not apply retroactively, and that the previous version of the TTPA did not foreclose in clear terms the Attorney General's authority to pursue claims for monetary relief as parens patriae. As such, I deny the motion to dismiss.

---

[1] The effective date of the amendments is April 23, 2024. Tenn. Pub. Acts. Ch 776, S.B. 2391, 113 Gen. Assemb. (2024) ¶ 19. The Plaintiffs filed the operative Amended Complaint on September 9, 2021. *Connecticut et al v. Sandoz, Inc. et al*, No. 20-cv-3539 (E.D. Pa.), ECF No. 62. The Defendants filed the motion to dismiss on November 12, 2021. *Id.*, ECF No. 120.

4

### A. Retroactivity of the 2024 TTPA

Tennessee's constitution prohibits retrospective laws, Tenn. Const. Art. 1, § 20. As such, statutes are presumed to operate prospectively absent clear indication from the legislature that the law is intended to apply retrospectively. *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn.1998). Tennessee courts, however, recognize an exception for remedial and procedural laws. *Shell v. State*, 893 S.W.2d 416, 419–20. (Tenn. 1995). Under this exception:

> [a] procedural or remedial statute is one that does not affect the vested rights or liabilities of the parties. A procedural statute is one that addresses the mode or proceeding by which a legal right is enforced. Remedial statutes are defined as legislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained[.] Statutes that create a new right of recovery or change the amount of damages recoverable are, however, deemed to have altered the parties['] vested right and thus are not considered remedial.

*Nutt*, 980 S.W.2d at 368 (citations and internal quotes omitted). "[E]ven a procedural or remedial statute may not be applied retrospectively if it impairs a vested right or contractual obligation in violation of [Tennessee Constitution] article I, section 20." *Doe v. Sundquist*, 2 S.W.3d 919, 923–24 (Tenn.1999). A "vested right" is one which "is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice." *Id.*

Here, the legislature did not clearly provide that the amendment to the TTPA be retroactive; therefore, the amendment is presumed to operate prospectively. *See* Tenn. Pub. Acts. Ch 776, S.B. 2391, 113 Gen. Assemb. (2024) ¶ 19. Although the parties contest whether the previous version of the TTPA contemplated disgorgement or *parens patriae* suits generally, the revised statue clearly "change[s] the amount of damages recoverable," *Nutt*, 980 S.W.2d at 368, by permitting "monetary damages or treble damages sustained." Tenn. Ann. Code § 47-25-106(b) (2024). Tennessee seeks "all legal and equitable relief available under the Tennessee Trade Practices Act," ECF No. 196 ¶ 2088, and so if the amendments to the TTPA applied

5

retroactively, the Defendants would face the prospect of treble damages that were not available under the statute at the time the complaint was filed. This creates a substantive change. Because the amendment is at least partly substantive, it cannot be applied retroactively. *See Kuykendall v. Wheeler*, 890 S.W.2d 785, 787–88 (Tenn. 1994) (holding that an amended statute should not apply retroactively where it has one "decidedly [substantive] component," despite being "primarily procedural in nature").

### B. Relief Available Under the 2013 TTPA

Having determined that the revised TTPA does not apply retroactively, I must determine if the relief Tennessee seeks is available under the 2013 version of the TTPA, which was in force when the complaint was filed. For the following reasons, I find that the 2013 TTPA does not foreclose the Attorney General's authority to pursue claims as parens patriae for all types of monetary relief.

Defendants argue that the 2013 TTPA "provided only that a 'person who is injured or damaged' may sue for antitrust damages for the 'sum paid by th[at] person,'" and that this language precludes parens patriae actions. ECF No. 485 at 3 (citing Tenn. Ann. Code § 47-25-106 (2013)). They also point out that the only state court to directly address this language was a Tennessee Chancery Court, which over forty years ago dismissed a claim for parens patriae damages. *Id.* (citing *State ex rel. Leech v. Levi Strauss & Co.*, 1980 WL 4696, at *4–5 (Tenn. Ch. Ct. Sept. 25, 1980). *Levi Strauss* was later adopted by a California district court in dismissing a *parens patriae* claim for damages under the TTPA brought by the Attorney General. *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1171 (N.D. Cal. 2007). Tennessee argues that the *Infineon* opinion was in error, in contravention of the Tennessee Supreme Court's view and in contrast to multiple other district court

6

decisions regarding the broad scope of the Attorney General's authority. ECF No. 367-1 at 58–60 & n. 21 (citing, *e.g.*, *Heath v. Cornelius*, 511 S.W.2d 683 (Tenn. 1974); *State v. Heath*, 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 814 (6th Cir. 2004) (noting a District Court's decision rejecting objections to the Attorney General's parens patriae authority to bring a claim under the TTPA); *Connecticut v. Mylan Labs, Inc.*, No. 1:98cv2114, 2001 WL 765466, at *2 (D.D.C. Apr. 27, 2001) (preliminary finding that the Tennessee Attorney General has the parens patriae authority "to represent . . . the claims of natural person consumers" in the state)).

I find that the prior district court cases that analyzed the Attorney General's ability to bring cases as parens patriae under the TTPA are split. *Compare Infineon Techs.*, 531 F. Supp. 2d at 1171, *with In re Cardizem CD Antitrust Litig.*, No. 2:99-cv-73190, ECF No. 36 (E.D. Mich 2003) (referred to in *In re Cardizem*, 391 F.3d at 814). Moreover, the Defendants concede that no Tennessee state court has followed *Levi Strauss*, an unreported, forty-year-old opinion. *See* ECF No. 367-2 at 49. Because Tennessee's ability to bring its claims as parens patriae are not clearly foreclosed under state law, I decline to dismiss them at this stage of the proceedings.

### III. Conclusion

For the foregoing reasons, the motion to dismiss is denied.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J

Hartford, Connecticut
April 25, 2025