# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE STATE OF CONNECTICUT; THE STATE OF ALASKA; THE STATE OF ARIZONA; THE STATE OF ARKANSAS; THE STATE OF CALIFORNIA; THE STATE OF COLORADO; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF FLORIDA; THE STATE OF GEORGIA; THE TERRITORY OF GUAM; THE STATE OF HAWAII; THE STATE OF IDAHO; THE STATE OF ILLINOIS; THE STATE OF INDIANA; THE STATE OF IOWA; THE STATE OF KANSAS; THE COMMONWEALTH OF KENTUCKY; THE STATE OF LOUISIANA; THE STATE OF MAINE; THE STATE OF MARYLAND; THE COMMONWEALTH OF MASSACHUSETTS; THE STATE OF MICHIGAN; THE STATE OF MINNESOTA; THE STATE OF MISSISSIPPI; THE STATE OF MONTANA; THE STATE OF NEBRASKA; THE STATE OF NEVADA; THE STATE OF NEW HAMPSHIRE; THE STATE OF NEW JERSEY; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF NORTH DAKOTA; THE COMMONWEALTH OF THE NORTHERN MARIANA ISLAND; THE STATE OF OHIO; THE STATE OF OKLAHOMA; THE STATE OF OREGON; THE COMMONWEALTH OF PENNSYLVANIA; THE COMMONWEALTH OF PUERTO RICO; THE STATE OF RHODE ISLAND; THE STATE OF SOUTH CAROLINA; THE STATE OF TENNESSEE; THE STATE OF UTAH; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WASHINGTON; THE STATE OF WEST VIRGINIA; THE STATE OF WISCONSIN; and U.S. VIRGIN ISLANDS,<br><br>    *Plaintiffs*,<br><br>v. | No. 3:20-cv-00802-MPS |

| |
|---|
| SANDOZ, INC.; ACTAVIS HOLDCO US, INC.; ACTAVIS ELIZABETH LLC; ACTAVIS PHARMA, INC.; AMNEAL PHARMACEUTICALS, INC.; AMNEAL PHARMACEUTICALS, LLC; ARA APRAHAMIAN; AUROBINDO PHARMA U.S.A., INC.; BAUSCH HEALTH AMERICAS, INC.; BAUSCH HEALTH US, LLC; MITCHELL BLASHINSKY; DOUGLAS BOOTHE; FOUGERA PHARMACEUTICALS INC.; GLENMARK PHARMACEUTICALS INC., USA; JAMES (JIM) GRAUSO; GREENSTONE LLC; G&W LABORATORIES, INC.; WALTER KACZMAREK; ARMANDO KELLUM; LANNETT COMPANY, INC.; LUPIN PHARMACEUTICALS, INC.; MALLINCKRODT INC.; MALLINCKRODT LLC; MALLINCKRODT plc; MYLAN INC.; MYLAN PHARMACEUTICALS INC.; KURT ORLOFSKI; MICHAEL PERFETTO; PERRIGO NEW YORK, INC.; PFIZER INC.; SUN PHARMACEUTICAL INDUSTRIES, INC.; TARO PHARMACEUTICALS USA, INC.; TELIGENT, INC.; ERIKA VOGEL-BAYLOR; JOHN WESOLOWSKI; and WOCKHARDT USA LLC,<br><br>    *Defendants*. |

**RULING DENYING AUROBINDO'S MOTION TO EXCLUDE THE OVERCHARGE OPINION OF DR. FREDERICK WARREN-BOULTON**

In this antitrust action by State Attorneys General against generic drug makers, Defendant Aurobindo Pharma USA, Inc. ("Aurobindo") moves to exclude the expert opinion concerning overcharges of the States' expert, economist Dr. Frederick Warren-Boulton. I deny Aurobindo's motion, ECF No. 912, for the following reasons.[1]

I.    **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence allows qualified experts to testify "in the form of an opinion" if "(a) the expert's scientific, technical, or other specialized knowledge will help

---

[1] I assume familiarity with the parties' briefing and exhibits, including the expert reports.

1

the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Admissibility of expert testimony falls under the district court's gatekeeper function, *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), and it is the proponent's burden to show that the expert's testimony meets the requirements for admissibility, Fed. R. Evid. 702. *See also Nimely v. City of New York*, 414 F.3d 381, 395–96 (2d Cir. 2005).

Addressing reliability, "[t]he Supreme Court has identified a number of factors . . . district courts may consider, such as (1) whether a theory or technique 'can be (and has been) tested,' . . . ; (2) 'whether the theory or technique has been subjected to peer review and publication,' . . . ; (3) a technique's 'known or potential rate of error,' and 'the existence and maintenance of standards controlling the technique's operation,' . . . ; and (4) whether a particular technique or theory has gained 'general acceptance' in the relevant scientific community." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 593–94). But these factors are only instructive, and the inquiry is "flexible." *Daubert*, 509 U.S. at 594; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999).

Congress's 2023 amendment to Rule 702 made clear that: (1) a preponderance of the evidence standard applies to questions of admissibility under Rule 702; and (2) expert testimony "must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Fed. R. Evid. 702, advisory committee's note to 2023 amendment.

## II.    DISCUSSION

Aurobindo moves to exclude Dr. Warren-Boulton's overcharge opinion, meaning his opinion about the difference between the actual prices charged for the Drugs at Issue and the prices that would have been charged absent the alleged conspiracy to fix prices, rig bids, and allocate markets (the "but-for prices"). Aurobindo's Drugs at Issue include Pioglitazone HCL Metformin HCL ("Pio Met") and Cefpodoxime Proxetil ("Cefpo"). Dr. Warren-Boulton formed his opinion through his use of two multivariate regression analyses: a difference-in-differences model and a before-and-after model. In its motion, Aurobindo argues that Dr. Warren-Boulton's resulting opinion is unreliable for multiple reasons, each of which I address below.

Aurobindo first argues that Dr. Warren-Boulton's calculation relies on an inherently unreliable but-for world—in Dr. Warren-Boulton's but-for world, Aurobindo would have "sustain[ed] consistent losses on the only Drugs at Issue it sold." ECF No. 915 at 13. Aurobindo says that, because Dr. Warren-Boulton himself stated that it is important to assume a for-profit company remains profitable for calculation purposes, his overcharge calculation is necessarily unreliable for not maintaining that assumption. *Id.* Thus, his opinion should be excluded as counterfactual, contrary to the evidence, and illogical.

The States respond that Aurobindo's argument relies on compounded misunderstandings. First, they argue that Dr. Warren-Boulton *did* assume that, in the but-for world, Aurobindo would be profitable. I agree, and I find that he did so through his sewn-in assumption that his overcharge calculation must be reasonable. ECF No. 915-2, Ex. 2 ¶ 233 (Dr. Warren-Boulton opining that "[i]n any disgorgement calculation, it is important to ensure that the Defendant would have remained profitable under the calculated but-for prices."). Dr. Warren-Boulton stated, "[w]hile there is mention in the record by certain Defendants that certain individual Drugs at Issue were

unprofitable for them, there is no indication that this profit margin would have forced any Defendant to exit from one of the Drugs at Issue." *Id.* ¶ 234 (footnote removed). This suggests that Dr. Warren-Boulton assumed, for purposes of his calculations, that for-profit firms generally maintained profitability, even if there were relatively short periods in which sales of certain drugs were unprofitable. And while Dr. Warren-Boulton found that prices for Cefpo and Pio Met declined after Aurobindo entered the markets, I explained in my order denying Aurobindo's motion for summary judgment why that does not mean that the pricing was unaffected by anticompetitive conduct. ECF No. 1150 at 26–29.

I also agree with the States that, contrary to Aurobindo's argument, Dr. Warren-Boulton did not, during his deposition, "valid[ate]" the Defendants' expert's—Dr. Anupam Jena—criticisms of his overcharge opinion. Dr. Jena opined that Dr. Warren-Boulton's "disgorgement estimates imply" that, "for Aurobindo, almost all of its sales of the Drugs at Issue would have been at a loss over a five-year period." ECF No. 915-5, Ex. 5 ¶ 165. During his deposition, Dr. Warren-Boulton was asked if he "understood" Dr. Jena's conclusion, and Dr. Warren-Boulton said that he did. ECF No. 915-4, Ex. 4 at 31–32. That exchange went as follows:

> Q. We may have touched on this earlier in the day, but do you recall that Dr. Jena concluded that your but-for prices indicate that Aurobindo would have sold all of its drugs at issue for a loss; do you recall that?
> . . .
>
> A. I think -- I think that's right and I think I say that here somewhere if you -- if you happen to know where and you're looking at it.
>
> Q. Well, why don't you -- why don't you turn to [a paragraph] and let me know if that refreshes your recollection.
>
> A. That's it, yep.
>
> Q. And so having had your recollection refreshed, you understand that Dr. Jena concluded that your but-for prices indicate that Aurobindo would have sold all of its drugs at issue for a loss under your model, right?

>   A. That's what this says, yes.

*Id.* A similar exchange followed later in the deposition:

>   Q. And you understand that Dr. Jena did that analysis and prepared a list and in your reply report you don't quibble with what that list is based on Dr. Jena's calculations, right?
>   . . .
>
>   A. I have no reason to believe that he made an arithmetical error there.
>
>   Q. And you -- and you don't dispute Dr. Jena's conclusion that applying your model to the cost data that Aurobindo produced leads to estimated negative but-for margins for all of Aurobindo's drugs at issue, right?
>   . . .
>
>   A. I think that's correct.

*Id.* at 39–40. These exchanges do not, as Aurobindo argues, demonstrate Dr. Warren-Boulton's "validat[ion]" of Dr. Jena's opinion. Instead, they reflect Dr. Warren-Boulton's agreement with counsel's representations of Dr. Jena's opinions.

And that Dr. Warren-Boulton altered his analyses for some Drugs at Issue based on Dr. Jena's opinions does not mean that his decision not to do so with respect to Aurobindo's Pio Met and Cefpo renders his opinion inadmissible. Aurobindo hypothesizes that, without Dr. Warren-Boulton altering his analysis for Pio Met and Cefpo, Dr. Warren-Boulton "therefore could not determine how much their calculated overcharges would have decreased." ECF No. 915 at 14. I find Aurobindo's argument on this front to be speculative and unconvincing. Aurobindo's argument assumes that Dr. Warren-Boulton's analysis is fundamentally flawed, without making a compelling case as to why. It then assumes that, because of that flaw, Dr. Warren-Boulton should have altered his analysis for Pio Met and Cefpo. But I am not convinced that Dr. Warren-Boulton's overcharge calculation "fails his own standard" and "cannot assist the trier of fact" such that it should be excluded. *Id.* at 13, 15. Aurobindo's criticisms are better suited for cross-examination.

Aurobindo's motion also takes issue with Dr. Warren-Boulton's use of cost data, as discussed in his reply report. Aurobindo argues first that Dr. Warren-Boulton "has no defensible basis to question Aurobindo's cost data." *Id.* at 15. And it also argues that Dr. Warren-Boulton did not reliably "single out Aurobindo's cost data" because Dr. Warren-Boulton did not distinguish between the costs as to Aurobindo versus the other Defendants. *Id.* at 16.

With respect to the first argument, Dr. Warren-Boulton explained at his deposition that he did not wholly disregard or ignore cost data, but he rather sought to exercise caution while using it. ECF No. 915-4 Ex. 4 at 14–15. For example, he said:

> Q: For purposes of calculating but-for net profit margins, your opinion is that one should not take into account the Defendants' cost data because of reliability concerns surrounding that cost data; do I have that right?
>
> A: No. I'm saying that you have to be cautious in looking at both the actual margin and the but-for margin because in some cases the . . . particularly the actual margin can be extraordinarily negative. . . . I just am saying while my understanding is that companies will continue to operate with a negative margin for some time period, it's difficult to see how they would operate with that large of a negative margin for that long a time period. And so I suspect that there's something wrong with the cost data for that firm that we've been provided. That's all I'm saying.

*Id.* Dr. Warren-Boulton's reasoning here appears logical and reasonable, and so I am not persuaded that he baselessly questioned data and thus "cherry-picked" it to suit his analyses. Aurobindo is free to address its critiques of Dr. Warren-Boulton's opinion in this respect on cross-examination.

With respect to Aurobindo's second argument that Dr. Warren-Boulton did not fairly assess factors that may impact variations in costs for different Defendants, I find that this criticism, too, is appropriate for Aurobindo to explore (if it wishes) on cross-examination. It does not, however, persuade me that Dr. Warren-Boulton's overcharge opinion should be excluded.

For those reasons, I deny Aurobindo's motion to exclude the overcharge opinion of Dr. Frederick Warren-Boulton, ECF No. 912.

## III.    MOTION TO SEAL

The motion to seal briefs and exhibits related to this motion, ECF No. 913, is granted, substantially for the reasons given by counsel in support of this motion and in accordance with my order approving the sealing procedures for these motions, ECF No. 901.

## IV.    CONCLUSION

For those reasons, Aurobindo's motion to exclude the overcharge opinion of Dr. Frederick Warren-Boulton, ECF No. 912, is denied.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
January 9, 2026