## THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE OF CONNECTICUT, et al., | |
| *Plaintiffs,* | No. 3:16-cv-02056-MPS |
| v. | |
| AUROBINDO PHARMA USA, INC., et al., | |
| *Defendants.* | |
| STATE OF CONNECTICUT, et al., | |
| *Plaintiffs*, | No. 3:19-cv-00710-MPS |
| v. | |
| TEVA PHARMACEUTICALS USA, INC. et al., | |
| *Defendants*. | |
| STATE OF CONNECTICUT, et al., | |
| *Plaintiffs*, | No. 3:20-cv-00802-MPS |
| v. | |
| SANDOZ, INC., et al., | |
| *Defendants*. | January 26, 2026 |

### STATES' DECLARATION IN SUPPORT OF THE STATES' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH BAUSCH AND LANNETT AND FOR ALLOCATION OF SETTLEMENT FUNDS

I, Elin S. Alm, hereby declare and state as follows:

1. I am an Assistant Attorney General and the Director of the Consumer Protection and Antitrust Division of the North Dakota Office of Attorney General. This Declaration is based upon my personal knowledge and information provided by my State colleagues.

2.     Filed herewith as Exhibit 1 is a true and correct copy of the settlement agreement between the Plaintiff States and Bausch Health US, LLC and Bausch Health Americas, Inc. ("Bausch"). Filed herewith as Exhibit 2 is a true and correct copy of the settlement agreement between the Plaintiff States and Lannett Company, Inc. ("Lannett").  The two settlement agreements are collectively referred to as the "Settlements." Capitalized terms in this Declaration incorporate the defined terms from the Settlements.

3.     I provide this declaration in support of Plaintiff States' Motion for Preliminary Approval of Settlements with Bausch and Lannett and for Allocation of Settlement Funds.

4.     Since 2016, the States have litigated claims alleging that manufacturers of generic drugs conspired to artificially inflate and maintain the prices for generic drugs in violation of federal and state antitrust and consumer protection laws.

5.     The States' allegations against the manufacturers of generic drugs span three different complaints, collectively referred to as the States' Actions: (1) a complaint focused on agreements involving Heritage, filed in December 2016, *Connecticut et al. v. Aurobindo Pharma USA, Inc., et al.*, 3:16-cv-02056 (the "Heritage Action") which after amendments encompasses 15 drugs; (2) a complaint focused on over 100 different drugs centered on agreements involving Teva Pharmaceuticals, filed in 2019, *Connecticut et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 3:19-cv-00710 (the "Teva Action"); and (3) a complaint focused primarily on dermatology products concerning over 80 different drugs, filed in 2020 (the "Dermatology Action"), *Connecticut et al. v. Sandoz, Inc., et al.*, 3:20-cv-00802. In each of the complaints, the States also allege an overarching conspiracy for the drugs and anticompetitive acts in that action.  Collectively, the three actions are referred to as the States' Actions.

6.     In the Dermatology Action, the States alleged Bausch, formerly known as Valeant

Pharmaceuticals North America LLC, conspired with other drug manufacturers to fix prices or allocate markets for two drugs, latanoprost drops and fluocinonide 0.1% cream.

7.      The States have brought claims against Lannett in all three complaints in the States' Actions. In the Teva Action, the States alleged Lannett allocated markets for Baclofen Tablets and Levothyroxine Sodium. In the Heritage Action, the States alleged Lannett conspired to fix and raise prices on Doxycycline Monohydrate. In the Dermatology Action, the States alleged Lannett allocated markets and fixed prices for Acetazolamide Tablets.

8.      While litigating the States' Actions, the States have negotiated with the Settling Defendants, as well as other Defendants, seeking to reach consensual resolution and favorable settlements for consumers and state entities short of trial.  Through such negotiations, the States reached these Settlements with Bausch and Lannett.

9.      The States have finalized and signed the Settlements with Bausch and Lannett attached hereto as Exhibit 1 and 2. This is the third and fourth settlements with corporate defendants in the States' Actions.

10.     The Settlements are entered by attorneys general of forty-eight (48) states, commonwealths, D.C., and territories in the United States whose interests are aligned in enforcing federal and state laws and vigorously pursuing remedies for their states, their consumers, and state agencies.  The attorneys general of Idaho and Washington are also resolving claims on behalf of corporate entities for which they have asserted an exclusive claim[1] in the States' Actions.[2]

---

[1] Under the state law of Idaho and Washington, only the attorney general can bring antitrust claims for relief on behalf of corporate entities who are indirect purchasers, thus, such claims are not included in any class action pending in the MDL pending in Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).

[2] Aside from Idaho and Washington, which assert exclusive claims on behalf of Corporate Entities in the Actions, other States assert non-exclusive claims to recover damages or restitution for corporate entities. For those States asserting non-exclusive claims, their Attorneys General covenant not to sue on behalf of corporate entities and agree to the dismissal of their claims on behalf of such corporate entities. The Attorneys General also covenant not to sue

11.     Through the Settlements, the States are providing recovery for their consumers, state entities, and corporate entities, and are exercising authority to represent their states and settle and release claims in their sovereign, proprietary, and *parens patriae* capacities.

12.     The States have vigorously litigated the States' Actions.  The States have engaged in extensive discovery and motion practice, have zealously prosecuted the States' Actions, and engaged in settlement negotiations to obtain favorable settlements.  The States' investigation and litigation work, including motion practice, discovery, and expert work and expert discovery, has allowed the States to gain an excellent understanding of the three cases in the States' Actions.

13.     The Settlements reflect not only the relative strengths of the claims against Bausch and Lannett, but also the value of the cooperation that both Bausch and Lannett have agreed to provide to aid in the continued prosecution of this case against other defendants.

14.     The settlement negotiations were conducted at arm's length and in good faith. Throughout the settlement process, Bausch and Lannett have been represented by counsel with significant expertise in complex antitrust litigation. The Assistant Attorneys General in the offices of the attorneys general for Connecticut, New York, California, and Kansas who negotiated the Settlements, individually and collectively, have extensive experience with antitrust investigations and litigation.

15.     The settlement negotiations were hard fought and fully informed.  The States recognize the benefits, risks, and consequences of continued litigation in comparison to the Settlements.

16.     The payments the States will receive, pursuant to the terms of the Settlements, will be deposited directly into an escrow account with Huntington Bank serving as the escrow agent,

---

the Defendants in any capacity to recover disgorgement against the Defendants that would involve overcharges to corporate entities in their states.

and will accrue interest. *See Lannett Settlement* ¶ III; *Bausch Settlement* ¶ *II.*

17.     Huntington Bank is well qualified to serve as the escrow agent in this matter, already serving in this role in previous settlements in the States' Actions and having regularly served in that role in many other *parens patriae* or class action settlements.

18.     The States have contracted with Rust Consulting, Inc ("Rust"), a nationally recognized notice and administration company, to act as the Notice and Claims Administrator to implement a Notice Plan.

19.     The States Notice Plan is building on the notice plan set forth in the Plaintiff State's Motion for Approval of the Heritage Settlement, which received final approval by this Court on April 1, 2025, ECF No. 767 (3:16-cv-02056-MPS), No. 635 (3:19-cv-00710-MPS), and No. 602 (3:20-cv-00802-MPS), and the notice plan set forth in the Plaintiff State's Motion for Approval of the Apotex Settlement, which received final approval by this Court on August 12, 2025, ECF No. 875 (3:16-cv-02056-MPS), No. 760 (3:19-cv-00710-MPS), and No. 835 (3:20-cv-00802-MPS). The details of the States' proposed continued Notice Plan are set forth in the declaration of Tiffaney Janowicz filed herewith.

20.     The Settlements provide that 70% (after subtracting the separate amounts allocated to Corporate Entities) of the $4,000,000 Bausch State Settlement Payment (equaling $2,800,000) and 70% of the $13,500,000 Lannett State Settlement Amount (equaling $9,540,000 (or $11,375,419.47 after interest has accrued over 6 years)), is allocated to restitution to Consumers and State Entities (including Medicaid agencies and other non-Medicaid state agencies) that are State Releasors (referred to as the "Restitution Accounts"), to compensate them for any alleged harm resulting from the alleged Conduct. See *Bausch Settlement* ¶ II.A*; Lannett Settlement* ¶ III.B.

21.     The States propose the following split of the Restitution Accounts between

Consumers and State Entities: (1) For the Bausch Settlement, a split that will result in an allocation of $1,803,007.56 to eligible Consumers and $996,992.44 to State Entities that are State Releasors, and (2) for the Lannett Settlement, a split that will result in an allocation of $6,085,800 (or $7,343,525.35 inclusive of interests) to Consumers and $3,364,200 (or $4,031,894.12 inclusive of interests) to State Entities, including Medicaid state agencies, and non-Medicaid state agencies. The States believe this split and allocation is fair and reasonable.  The States also seek to distribute the funds allocated to State Entities to the States, upon final approval of the Settlements, so that the States can further allocate the funds among themselves, according to an independent agreement reached between the States, to be used for any lawful purpose.

22.    The States are developing a plan for further allocating consumer restitution funds among eligible Consumers and a plan for an initial distribution which soon will be submitted to the Court for approval.

23.    Final allocation and distribution plan for consumer restitution, including approval of a claim form and the establishment of a claim deadline, should be deferred to a future date when the States' allocation and distribution plan has been finalized and submitted to the Court for approval.

24.    The Settlements designate $350,000 as restitution for Corporate Entities ("Corporate Entities Restitution") for which the attorneys general of Idaho and Washington have asserted an exclusive claim in the States Actions. *Bausch Settlement* ¶ I.V; *Lannett Settlement* ¶ III.  Because the monetary amount is relatively small, and subsequent recovery is anticipated from future settlements or judgments, the States plan to defer the allocation and distribution of Corporate Entities Restitution until a later appropriate date when this distribution can be part of a plan relating to additional settlements as well.  The States anticipate that the allocation and distribution of

6

Corporate Entities Restitution may not be appropriate and cost-efficient until the end of the litigation in the States' Actions.

25.     The Idaho Attorney General is settling and releasing claims on behalf of Corporate Entities on whose behalf the Idaho Attorney General has exclusive claims. The States plan to give notice to Corporate Entities in Idaho of the Settlements, and their right to exclude themselves from the Settlements, through a press release issued by the Idaho Attorney General.

26.     The Washington Attorney General also is settling and releasing claims on behalf of Corporate Entities on whose behalf the Washington Attorney General has exclusive claims. However, Washington law does not provide a right to exclusion from a settlement for Corporate Entities. The Washington Attorney General will, however, issue a press release informing Corporate Entities in Washington of the Settlements.

27.     The Settlements provide substantial and guaranteed benefits to Consumers, State Entities, and Corporate Entities, on whose behalf the States assert claims, which recovery is fair, reasonable, and adequate given the expense and risk of protracted litigation. The States maintain that the proposed Settlements with Bausch and Lannett are fair, reasonable, and adequate and in the best interests of the Plaintiff States and their residents.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on January 26, 2026, in Bismarck, North Dakota.

/s/ Elin S. Alm
Elin S. Alm

**Settlement Agreement**

This Settlement Agreement ("Agreement") is made and entered into by and among Bausch Health US, LLC and Bausch Health Americas, Inc. (together, "Bausch"), on the one hand, and the Attorneys General (as defined below), on the other hand (Bausch and the Attorneys General together, the "Parties"; Bausch is a "Party" and the Attorneys General are a "Party"), to settle the case that was brought by the Attorneys General on behalf of states and territories against Bausch, styled as *The State of Connecticut, et al. v. Sandoz Inc., et al*., Case No. 3:20-cv-00802-MPS, in the United States District Court for the District of Connecticut, which was previously consolidated for pretrial purposes into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.) (the "MDL").[1]

WHEREAS, the Attorneys General are pursuing claims in the Actions, as hereafter defined;

WHEREAS, the Attorneys General have asserted claims on behalf of themselves and for or on behalf of their individual States and State Entities, as hereafter defined;

WHEREAS, the Attorneys General have also asserted claims for Consumers, as hereafter defined;

WHEREAS, the Attorneys General for two states, Idaho and Washington have also asserted exclusive claims for Corporate Entities, as hereafter defined;

WHEREAS, the Attorneys General have concluded that resolving their claims against Bausch through settlement is in the public interest, including in the interest of those for whom or on whose behalf they assert claims;

WHEREAS, despite Bausch's belief that it has good defenses, Bausch has agreed to enter into this Agreement to avoid the further expense and other burdens of litigation, to obtain the dismissals, covenants, and releases contained in this Agreement, and to put to rest with finality the case that has been brought by the Attorneys General against Bausch;

WHEREAS, the following states and territories filed suit against Bausch: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin;

WHEREAS, the claims against Bausch asserted by the following States have been

---

[1] This Agreement is intended to settle all cases and claims brought or that could have been brought in the Actions as further explained below by the Attorneys General against Bausch.

dismissed with prejudice: Alabama (CT ECF No. 409), Arkansas (MDL ECF No. 2527), Guam (MDL ECF No. 2373), Hawaii (MDL ECF No. 2513), Louisiana (CT ECF No. 388), and Missouri (CT ECF No. 679);

NOW, THEREFORE, in consideration of the mutual promises and other good and valuable consideration provided in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## I.    Definitions

A.    "Actions" means the following cases: *State of Connecticut et al. v. Aurobindo Pharma USA, Inc. et al.*, No. 2:17-cv-3768 (E.D. Pa.); *State of Connecticut v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-2056 (D. Conn.); *State of Connecticut v. Teva Pharmaceuticals USA, Inc.*, No. 2:19-cv-02407 (E.D. Pa.); *State of Connecticut v. Teva Pharmaceuticals USA, Inc.*, No. 3:19-cv-710 (D. Conn.); *State of Connecticut, et al. v. Sandoz Inc. et al.*, No. 2:20-cv-03539 (E.D. Pa.); *State of Connecticut v. Sandoz, Inc.*, No. 3:20-cv-00802 (D. Conn), and any other action or proceeding asserting claims based on the Conduct, as hereafter defined, filed or otherwise pursued by or on behalf of any of the Attorneys General or any of the State Entities listed on Appendix A.

B.    "Affiliate" means a person or entity that directly or indirectly controls, is controlled by, or is under common control with another person or entity.

C.    "Bausch Parent" means Bausch Health Companies Inc.

D.    "Bausch Releasees" means Bausch; Bausch Parent; Bausch's and Bausch Parent's direct and indirect, past and present parents, subsidiaries, divisions, general or limited partners, and Affiliates; their respective predecessors, successors, heirs, executors, administrators, and assigns; and any and all current and former officers, directors, employees, attorneys, stockholders, principals, managers, partners, members, agents, representatives, trustees, insurers, and owners thereof.

E.    "Attorneys General," or each "Attorney General," means the Attorneys General of each state, commonwealth, district, and territory that have pending claims in the Actions and those that are otherwise signatories to this Agreement.

F.    "Code" means the Internal Revenue Code of 1986, as amended.

G.    "Conduct" means any act or omission of the Bausch Releasees or of persons or entities alleged to be co-conspirators of the Bausch Releasees concerning price fixing, market allocation, bid-rigging, and/or any other anticompetitive and/or unfair conduct alleged or that could have been alleged in the Actions in connection with the manufacture, sale, and/or distribution of Drugs at Issue or any other Generic Pharmaceutical Product for which claims are or could have been asserted based on any facts alleged or that could have been alleged in the Actions, including all formulations and strengths of those drugs and/or any overarching conspiracy alleged or that could have been alleged in the Actions related to the manufacture, sale, and/or distribution of Drugs at Issue or any other Generic Pharmaceutical Products.

H.     "Consumers" are defined as natural persons for whom an Attorney General can seek damages, restitution, or disgorgement in a law enforcement capacity, acting in a *parens patriae,* representative, or other capacity.  For purposes of clarity, the term "Consumers" does not include any State Entity, any county, city, town, or other local entity, or any Corporate Entity.

I.     "Corporate Entities" are defined as corporate (and other business) entities for which the Attorneys General of Idaho and/or Washington, have asserted an exclusive claim in the Actions, whether pursuant to the Attorneys General's *parens patriae* authority or otherwise.

J.     "Defendant" means any party named as a defendant in any of the Actions at any time up to and including the date of the court's Final Approval Order, as defined in Paragraph M of this Section.

K.     "Drugs at Issue" means the following drugs: Atropine Sulfate Ophthalmic Solution 1%; Enalapril Maleate Tablets 2.5, 5, 10, 20 mg; Fluocinonide Cream 0.1%; Griseofulvin Tablets (microsize) 250, 500 mg; Latanoprost Ophthalmic Solution 0.005%; Metronidazole Vaginal 0.75%; Neomycin Polymyxin Hydrocortisone Otic Solution 3.5 mg-10 MU 1%; Omeprazole-sodium Bicarbonate Capsules 20 mg/1100 mg, 40 mg/1100 mg; Pentoxifylline ER Tablets 400 mg; Timolol Malate Ophthalmic Gel Forming Solution 0.25%, 0.5%; and Tobramycin/Dexamethasone Ophthalmic liquid/suspension 0.1-0.3%.

L.     "Effective Date" shall be the date on which the final signatory of this Agreement executes this Agreement.  The Attorneys General will have 60 calendar days from the date of Bausch's signature to execute this Agreement, absent written agreement from Bausch for a reasonable period of additional time.  If all Attorneys General have not executed this Agreement within 60 calendar days of the date of Bausch's signature, Bausch shall have the unilateral right to terminate this Agreement upon written notice.

M.     "Final Approval Order" means the order to be entered by the United States District Court for the District of Connecticut which gives final approval of this Settlement Agreement and releases all Released Claims.  The Parties intend for the Final Approval Order to include provisions: (1) finding this Settlement Agreement (i) as having been entered into in good faith and (ii) as being fair, reasonable, and adequate, and directing its consummation pursuant to its terms, as to the State Releasors; (2) finding that the notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process; (3) incorporating the releases set forth in Section V, and forever barring the State Releasors from asserting any Released Claims (as defined in Paragraph R); (4) retaining exclusive jurisdiction over the Settlement, the provisions of the Order, and this Agreement, including the administration and consummation of this Settlement; (6) directing that all claims by and on behalf of the State Releasors be dismissed with prejudice as to Bausch Releasees only and, except as provided for herein, with prejudice and without costs or attorneys' fees; and (7) determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the Final Approval Order as to the Bausch Releasees shall be final and immediately appealable.

N.     "Final Court Approval" means the United States District Court for the District of Connecticut has entered the Final Approval Order, and the time to appeal or to seek

permission to appeal from the court's approval of this Agreement and entry of the order and final judgment as to Bausch has expired in the Actions and no motion or other pleading has been filed seeking to set aside, enjoin, or in any way alter the Final Approval Order or the entry of judgment in the Actions or to toll the time for appeal of the Final Approval Order or the judgment in the Actions, or, if appealed, approval of this Agreement and the final judgment in the Actions as to Bausch has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

O.      "Generic Pharmaceutical Products" shall mean the generic version of any brand name drug, including all dosages, forms, and strengths of such drug, regardless of whether they are included in any complaint filed by the State Attorneys General or filed in any related federal or state court proceeding, including any action consolidated for pretrial purposes in the MDL.

P.      "Notice Period" means the time period allotted for Consumers, Corporate Entities and anyone else for whom notice is required to (i) object to this Settlement or (ii) file a timely and valid request for exclusion.

Q.      "Preliminary Approval Order" means an order to be entered by the United States District Court for the District of Connecticut, which the Parties intend will include preliminary approval of this settlement (i) as having been entered into in good faith and (ii) as being fair, reasonable, adequate and in the best interests of State Entities, if required by law, Consumers, Corporate Entities, and for any other purposes for which court approval may be necessary.

R.      "Released Claims" means any and all manner of claims, counter-claims, demands, actions, rights, liability, costs, debts, expenses, attorneys' fees, judgments, and civil and administrative causes of action of any type, including both monetary and injunctive, that were asserted or that could have been asserted, whether known or unknown, whether accrued or unaccrued, against the Bausch Releasees arising out of or relating to the Conduct.  "Released Claims" include claims arising out of the Conduct under (1) federal or state antitrust laws; (2) unfair competition or consumer protection laws; (3) any civil or administrative monetary cause of action (including for civil damages and/or civil fines or penalties); (4) any remedies for any claims submitted or caused to be submitted to the State's Medicaid program, including under the False Claims Act (codified at 31 U.S.C. §§ 3729-3733) or any State's counterpart to the federal False Claims Act; and (5) any other statute or common or equitable law.  In addition, the Attorneys General and the State Entities listed on Appendix A shall not seek to impose fines or penalties on the Bausch Releasees or to exclude or debar them from any market for the manufacture, sale, or distribution of Generic Pharmaceutical Products in connection with the Conduct, except as set out in 2(b) below.

1.      Released Claims include all claims based on any and all rights (including by assignment) to bring claims based on damages incurred by another person or entity.[2]

---

[2] This includes claims assigned to the State of Florida, *see, e.g.*, *State of Connecticut, et al. v. Sandoz Inc. et al.*, Amended Complaint, No. 2:20-cv-03539, ECF No. 62, ¶ 1860 (certain claims of Minnesota Multistate Contracting

2.      Released Claims do not include: (a) claims under state revenue codes; (b) claims for mandatory exclusion from a state's Medicaid program as prescribed by federal or state law; or (c) any criminal liability.

3.      Released Claims also do not include claims that do not arise out of the Conduct, including claims, other than those arising out of the Conduct: (a) for breach of contract, express or implied warranty, or defective or deficient products and services provided by Bausch; (b) for unfair or deceptive marketing or advertising of Drugs at Issue or for off-label marketing claims; (c) for violations of the securities laws; (d) for reverse payment, "pay for delay," sham litigation, sham citizen petition, "Walker Process" fraud or other means of reducing or impairing competition other than the Conduct; (e) arising from or relating to the unfair and/or deceptive marketing, promotion, or sale of opioids (including public nuisance claims), or the control or diversion of opioids (including suspicious order monitoring and state-law Controlled Substances Acts); (f) asserted by an Attorney General or a State in any currently pending litigation that is not (and never has been) part of the Actions or the MDL; (g) for any civil or administrative liability related to a State's Medicaid program under any statute, regulation, or rule, including the False Claims Act or any State's counterpart to the federal False Claims Act, anti-kickback or off-label marketing violations; (h) based on obligations created by this Agreement.

S.      "States," or each "State," means all states, commonwealths, districts, and territories that assert claims in the Actions, including Alaska, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming in their sovereign, proprietary, or any other capacities.

T.      "State Entity" means any agency, bureau, board, commission, committee, department, division, or other organizational unit of any state government, except for those of any county, city, town, or other local entity or political subdivision.

U.      "State Releasors" means the (a) Attorneys General, States, and State Entities listed on Appendix A (which include, among other State Entities, each State's Medicaid agency); (b) State Entities that accept a distribution of settlement proceeds from the Attorneys General's settlements in the Actions; (c) the Consumers for which the Attorneys General on behalf of the States seek damages, restitution, or disgorgement in a law enforcement capacity to the extent permitted by law, to the extent those Consumers do not submit a timely and valid

---

Alliance for Pharmacy ("MMCAP") and/or Cardinal Health, Inc. have been assigned to the State of Florida), claims assigned to the State of California, *see id.* ¶ 2117 (certain "vendors and intermediaries" assigned claims to the State of California), and claims assigned to the State of New York, *see, e.g., State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc.*, Amended Complaint, No. 2:19-cv-02407, ECF No. 106, ¶ 1586 (certain claims of MMCAP and/or Cardinal Health, Inc. have been assigned to the State of New York).

request for exclusion from the settlement under this Agreement; (d) those Consumers that accept a distribution of settlement proceeds from the Attorneys General on behalf of the States' settlements in the Actions to the extent permitted by law, whether through any claim filed by any Attorneys General in their law enforcement capacity for disgorgement, restitution, or damages or otherwise; and (e) Corporate Entities as defined above that do not, in Idaho,[3] submit a timely and valid request for exclusion from the settlement under this Agreement.[4]

V.    "State Settlement Amount" is the aggregate sum of four million dollars ($4,000,000 USD), plus eighty thousand dollars ($80,000 USD) for Corporate Entities, for a total of $4,080,000; $2,880,000 of this $4,080,000 shall constitute restitution within the meaning of Section 162(f)(2) of the Code and 26 C.F.R. § 1.162-21(e)(4)(i).

1.    No part of the State Settlement Amount that constitutes restitution is paid in respect of any claim for the trebling of damages (as opposed to actual damages), or for or in lieu of any fine, penalty, forfeiture, or punitive damages, and no part of the amount specified as restitution in the preceding sentence is paid to reimburse any Attorney General, any State Entity, or any other government or governmental entity for investigation or litigation costs. The party or parties required to report all or any portion of the State Settlement Amount under Section 6050X of the Code shall report no less than $2,880,000 USD as restitution. Except as set forth in this Paragraph, the Attorneys General take no position on tax treatment of the payments under the Settlement.

2.    The State Settlement Amount shall be allocated among the State Entities that are State Releasors as determined by the Attorneys General, and among Consumers as determined by the Attorneys General and approved by the court, with the exception that the $80,000 referenced above for Corporate Entities shall be used only for Corporate Entities, and Bausch shall have no obligation in connection with any of these allocations. The amounts allocated to the State Entities that are State Releasors shall be received by the respective State Attorney General's Offices to be allocated for any use permitted under state law at the sole discretion of the State's Attorney General.

3.    The States will hold a portion of the State Settlement Amount equaling one million two hundred thousand dollars ($1,200,000) in escrow and for use in paying for the expenses identified in Section IX and, upon final approval of this Agreement, for costs of litigating the States' claims both collectively or individually, subject to approval of the court. To the extent that monies in the cost account are not used to offset costs of States litigating in the Actions, any remaining funds may be used for any of the following: (1) deposit into a state antitrust or consumer protection account (e.g.,

---

[3] Although Washington also asserts an exclusive claim on behalf of Corporate Entities in the Actions, Washington law does not provide a right to exclusion from a settlement for Corporate Entities.

[4] Aside from Idaho and Washington, which assert exclusive claims on behalf of Corporate Entities in the Actions, other States assert non-exclusive claims to recover damages or restitution for corporate entities. As further described in Section V. *infra*, for those States asserting non-exclusive claims, their Attorneys General covenant not to sue on behalf of corporate entities and agree to the dismissal of their claims on behalf of such corporate entities. The Attorneys General also covenant not to sue the Defendants in any capacity to recover disgorgement against the Defendants that would involve overcharges to corporate entities in their states.

revolving account, trust account) for use in accordance with the laws governing the account; (2) deposit into a fund exclusively dedicated to assisting any state to defray the costs of experts, economists and consultants in multistate antitrust investigations and litigations, including healthcare related investigations and litigation; (3) antitrust or consumer protection enforcement, including healthcare-related enforcement, by an individual State or multiple States; or (4) for any other use permitted by state law at the sole discretion of that State's Attorney General.

## II.    Payment of the State Settlement Amount

A.    Bausch will pay or cause to be paid the State Settlement Amount (the "Settlement Payment") pursuant to the written payment instructions provided by the Attorneys General within the later of: (1) sixty (60) calendar days after the date of the Preliminary Approval Order or (2) thirty (30) calendar days after receiving written payment instructions from the Attorneys General. The Attorneys General's written payment instructions shall direct at least $2,880,000 of the Settlement Payment to be paid directly into an escrow account (the "State Escrow"), pending Final Court Approval of this Agreement and the distribution of settlement funds from the State Escrow pursuant to the States' allocation plan, including to State Entities that are State Releasors and Consumers, to compensate them for any alleged harm resulting from the alleged Conduct. The remaining $1,200,000 of the Settlement Payment shall be held in escrow, and used pursuant to Section I.V.3, above.

B.    The Bausch Releasees shall have no obligation to make any other payment of any kind in connection with this Agreement. The Bausch Releasees also shall have no obligation with respect to the allocation or distribution of the Settlement Funds. The State Releasors shall have no other recovery of any kind from the Bausch Releasees based on the Conduct, other than from the State Settlement Amount, including for attorneys' fees, costs, service awards, damages, penalties, or injunctive or other relief of any kind.

## III.    Preliminary and Final Court Approval

A.    The Attorneys General shall promptly (and in no event more than thirty (30) calendar days after the Effective Date) file a motion for a Preliminary Approval Order, including their proposed notice and notice plan to inform Consumers, Corporate Entities in Idaho, and anyone else for whom notice is required, of their right (i) to object to this Agreement or (ii) to file a timely and valid request for exclusion.

B.    In the event that the court fails to give preliminary approval to this Agreement, then the Parties shall in good faith seek to agree on revisions to this Agreement that would remedy any issues preventing preliminary approval while retaining the spirit of the Agreement. If they are unable to agree on such revisions despite their good faith efforts, they shall each have the option to rescind this Agreement. In the event the Agreement is rescinded or the court fails to give Final Court Approval as hereafter set forth in Paragraph VIII.F and Section XI, Bausch shall be entitled to the return of any amounts paid as set forth in Section II.

C.    Within sixty (60) calendar days of the Preliminary Approval Order and the court's approval of the allocation plans, notice, and notice plan submitted by the Attorneys

7

General to the court, or such other time as directed by the court, the Attorneys General shall implement their notice plan, providing those Consumers, Corporate Entities in Idaho, and anyone else for whom notice is required, notice of their rights (i) to object to this Agreement or (ii) to file a timely and valid request for exclusion.

D.      Those Consumers, as well as Corporate Entities for Idaho, shall be given notice as required by due process.  Costs for the notice will be paid from the State Escrow but shall be limited to $250,000.

E.      Within thirty (30) calendar days following the conclusion of the Notice Period or as otherwise agreed by the Parties or directed by the court, the Attorneys General shall file with the court a Motion for a Final Approval Order.  At least seven (7) calendar days prior to filing their Motion for a Final Approval Order, Plaintiffs shall provide a copy of such motion (including all exhibits and attachments to such motion) to Bausch for review.

## IV.    Exclusions

A.      Subject to court approval, any Corporate Entity in Idaho or any Consumer may seek to be excluded from the settlement by submitting a valid and timely request for exclusion. The Attorneys General, States, State Entities identified on Appendix A, and other State Entities that accept a distribution of settlement proceeds from the Attorneys General's settlement of the Actions are bound by this Agreement upon execution and have no right to seek exclusion.  Any Corporate Entity in Idaho or Consumer that submits a valid and timely request for exclusion will not be eligible to receive a distribution of any portion of the State Settlement Amount and will have no rights with respect to this Agreement or the settlement.  Bausch reserves all legal rights and defenses as to all such persons or entities that submit a valid and timely request for exclusion, and nothing in this Agreement shall be used against Bausch in any proceeding involving such persons or entities.

B.      Subject to court approval, in any written request for exclusion from the settlement, the Corporate Entity in Idaho or Consumer seeking exclusion must state his, her, or its full name, address, telephone number and e-mail address and include a statement that he, she, or it wishes to be excluded from the settlement.

C.      Subject to court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable notice will be invalid, and the Corporate Entity in Idaho or Consumer serving such an invalid request shall be bound by this Agreement, upon Final Court Approval.

D.      The Attorneys General shall, within ten (10) calendar days of the deadline for submitting a request for exclusion (the "Opt-Out Deadline"), provide Bausch with a list of, and copies of, all requests for exclusion.  The Attorneys General shall file with their Motion for Final Approval a list of all persons and entities that timely and validly requested exclusion.

E.      Any of the Parties may dispute an exclusion request, in which case they shall, if possible, seek to resolve the disputed exclusion request by agreement within thirty (30) calendar days of the Opt-Out Deadline.  If necessary, the Parties will seek court approval of

any such resolutions.  If the Parties are unable to resolve any such disputes, the Parties will submit such unresolved disputes to the court for decision.

## V.    Release and Covenant Not To Sue

A.    In consideration of Bausch's obligations under this Agreement, the State Releasors hereby release, acquit, and forever  discharge all of the Bausch Releasees from all Released Claims.

B.    The State Releasors may discover facts other than or different from those which they know or believe to be true with respect to the Released Claims, but the State Releasors expressly waive and fully, finally, and forever settle and resolve, any known or unknown, suspected or unsuspected, contingent or non-contingent claims arising out of the Conduct that they have released or for which they have covenanted not to sue, without regard to the subsequent discovery or existence of such different or additional facts.

C.    With respect to the Released Claims, the State Releasors expressly waive and release, any and all provisions, rights, and benefits under any law of any state or territory in the United States, or principle of common law that provides that a general release does not extend to claims that the creditor or releasing party does not know of or suspect to exist in his or her favor at the time of executing the release.

D.    That includes California Civil Code § 1542.  With respect to the Released Claims, the State Releasors expressly waive and release all provisions, rights, and benefits under California Civil Code § 1542. That provision states as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

E.    The State Releasors absolutely, unconditionally, and irrevocably covenant not to bring, file, or otherwise assert any Released Claim, or to cause or assist to be brought, filed, or otherwise asserted any Released Claim, or to otherwise seek to establish liability for any Released Claim against any Bausch Releasee in any forum whatsoever, whether on their own behalf or on behalf of any other natural person or entity, including any State, State Entity, political subdivision (including any county, city, township, or municipality), Consumer, or corporate entity, including any Corporate Entities in Idaho and Washington, to the fullest extent permitted by law.

F.    The Parties acknowledge that the Settlement Payment paid by Bausch under this Settlement Agreement constitutes adequate restitution for alleged injury to Medicaid agencies and other non-Medicaid state agencies under the States' claims, and constitutes adequate restitution for alleged injury to Consumers in light of (i) the allegations brought and settled by the States, (ii)

the work performed by the States in the present litigation on behalf of Consumers, and (iii) of the States' planned allocation of the Settlement Payment.

G.    As part of the proposed court orders to be submitted to the court with the motion for final approval under Section III of this Agreement, the Attorneys General shall dismiss with prejudice all claims against Bausch in *The State of Connecticut, et al. v. Sandoz Inc., et al*., Case No. 3:20-cv-00802-MPS, in the United States District Court for the District of Connecticut. All Released Claims shall be finally, fully, and forever resolved, settled, compromised, and released, with prejudice, and the Bausch Releasees shall not be named a defendant in any future new or amended complaint arising out of or related to the Released Claims.

H.    This Agreement resolves claims only against the Bausch Releasees, and except as specifically provided herein, is not intended to affect in any way the rights that the Attorneys General may have against any other party, person, or entity that is not included within the definition of Bausch Releasees.

## VI.    Compliance

A.    Bausch covenants to the Attorneys General that it shall not, for four years from the execution of this Agreement, engage in any unlawful price-fixing, bid-rigging, or market allocation as to any Generic Pharmaceutical Product in violation of Section 1 of the Sherman Act. That covenant shall be implemented as part of the proposed court orders to be submitted to the court with the Motion for Final Approval Order under Paragraph III.E. of this Agreement.

B.    Bausch represents to the States that it will implement, and shall continue to maintain for a period of four years from the execution of this Agreement, a written "Antitrust Compliance Policy," on which all current Bausch employees responsible for the pricing, sale, bidding or marketing of generic pharmaceuticals in the United States, including those in a management or employee capacity, will be trained. Each Bausch employee responsible, in a managerial or employee capacity, for the pricing, sale, bidding, or marketing of generic pharmaceuticals in the United States will be required to sign an acknowledgment form stating that they have read, and will abide by, the Antitrust Compliance Policy. Bausch also will conduct for a period of four years from the execution of this Agreement, annual antitrust training for all of its employees responsible, in a managerial or employee capacity, for the pricing, sale, bidding or marketing of generic pharmaceuticals in the United States, with said training to be conducted by an attorney with experience in antitrust law and with a record kept at each annual training session, including participation, to ensure that all such employees receive such training. Bausch will appoint its General Counsel and/or Chief Compliance Officer (or equivalent thereof) to oversee such training and serve as an additional contact, in coordination with Bausch's established corporate policies, for employees to report any conduct that may violate the antitrust laws. Bausch may make reasonable, non-material changes to its Antitrust Compliance Policy from time to time, and prior to making material changes to its Antitrust Compliance Policy will notify by email the Attorneys General representatives identified in Section XII.B (the "AG Reps"). That notification shall specify the proposed material changes to Bausch's Antitrust Compliance Policy. Bausch shall notify the AG Reps within one year following final court approval of this Agreement that Bausch has complied with the provisions of this Paragraph VI.B.

Within one year following the first notification, Bausch shall notify the AG Reps of any changes to Bausch's Antitrust Compliance Policy and confirm that Bausch has complied with the provisions of this Paragraph VI.B. In the event that Bausch breaches Paragraph VI.B, Bausch shall have 21 days to cure such breach. If Bausch fails to cure within 21 days, the sole and exclusive remedy for such breach shall be that Bausch's obligations in Paragraph VI.B shall be extended by one additional year.  This Paragraph shall be implemented as part of the proposed court orders to be submitted to the court with the motion for Final Court Approval.

C.    The Parties submit to the exclusive jurisdiction of the United States District Court for the District of Connecticut for purposes of implementing and enforcing the Agreement, including the provisions of the Final Approval Order.

## VII.    Discovery, Authentication and Cooperation

A.    As of the Effective Date, continuing unless this Agreement is terminated as provided herein, the Attorneys General shall not serve any discovery requests on the Bausch Releasees, take depositions of the Bausch Releasees, file any motions against the Bausch Releasees, or take any other adverse action against the Bausch Releasees in the Actions or any related litigation except to enforce the terms of the Agreement. Likewise, as of the Effective Date, continuing unless the Agreement is terminated as provided herein, Bausch shall not serve any discovery requests on the Attorneys General, take depositions of the Attorneys General, file any motions against the Attorneys General, or take any other adverse action against the Attorneys General in *The State of Connecticut, et al. v. Sandoz Inc., et al*., Case No. 3:20-cv-00802-MPS, in the United States District Court for the District of Connecticut, or any related litigation, except to enforce the terms of this Agreement.  For the avoidance of doubt, the Attorneys General may continue to attend depositions of current and former Bausch employees and may question those employees as it relates to the prosecution of claims against the non-Bausch Defendants.  Counsel for Bausch may likewise continue to attend depositions of current and former employees of the Attorneys General and of any other individuals represented by the Attorneys General and may question those individuals as it relates to Bausch's defense of claims brought by any plaintiff, other than the Attorneys General.

B.    The Attorneys General shall continue to have the same rights that they currently have to receive discovery provided by Bausch to other parties in the MDL or the Actions pursuant to the protective order governing the use of documents and other information produced in the MDL.

C.    Similarly, Bausch shall continue to have the same rights that it currently has to receive discovery provided by the Attorneys General to other parties in the Actions pursuant to the protective order governing the use of documents and other information produced in the Actions.

D.    In addition to the above, Bausch agrees to provide: (a) reasonable efforts to assist the States to understand data produced by Bausch, including consulting with technical personnel to address questions posed by the States' respective data consultants, and to provide any additional information or data reasonably necessary to understand or clarify the data produced by Bausch or otherwise render it admissible, and to provide additional data as may

be reasonably necessary; and (b) reasonable efforts to provide information necessary to authenticate and admit up to 75 documents produced by Bausch, by affidavit if permitted by the court or, if required by the court, by witness testimony.

E.    Bausch will in good faith consider reasonable requests from the Attorneys General for additional assistance that does not impose an undue burden on Bausch. The Attorneys General will likewise in good faith consider reasonable requests from Bausch for additional assistance that does not impose an undue burden on the Attorneys General.

F.    Bausch shall not be required to produce any documents or otherwise disclose information protected by the work product doctrine, attorney-client privilege, common-interest privilege, joint-defense privilege, or any other applicable doctrine or privilege; or disclosure of which is prohibited by any relevant law (including foreign laws), government entities, or court order.

## VIII.    Qualified Settlement Fund

A.    The State Escrow (the "Settlement Fund") will be established by order of the court at Huntington Bank with such bank serving as escrow agent ("Escrow Agent") subject to one or more escrow agreements mutually acceptable to the Parties. The Settlement Fund is established to resolve and satisfy one or more claims described in this Agreement, and the Settlement Fund shall be subject to the court's continuing supervision and control.  In addition, the Attorneys General shall make such elections as necessary or advisable to carry out the provisions of this Section VIII.  Such elections shall be made in compliance with the procedures and requirements contained in any applicable regulations.

B.    The Parties intend that the Settlement Fund shall be a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, shall act in a manner consistent with the treatment of each Settlement Fund as such qualified settlement fund, and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  All provisions of this Agreement shall be interpreted in a manner that is consistent with each Settlement Fund being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.  The administrator for the State Escrow shall be Attorneys General of New York, Oregon, and Florida (each, in such capacity, an "Administrator").  Each Administrator shall cause the timely and proper filing of all informational and other tax returns necessary or advisable with respect to the applicable Settlement Fund (including without limitation the returns described in Treasury Regulation §§ 1.468B-2(k)(1) and (l)(2)).  Each Administrator shall make a "relation-back election" (as defined in Treasury Regulation § 1.468B-1(j)), if available, to permit the applicable Settlement Fund to be treated as a qualified settlement fund from the earliest permitted date.  It shall be the responsibility of each Administrator to cause the timely and proper preparation and delivery of the necessary documentation with respect to the applicable Settlement Fund for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

C.    The Escrow Agents shall cause the Settlement Fund to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA,

respectively, by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates. Bausch shall bear no risk related to the Settlement Fund. The Settlement Fund shall be deemed and considered to be in *custodia legis* of the court and shall remain subject to the jurisdiction of the court until such time as the funds therein shall be distributed pursuant to this Agreement or further order(s) of the court.

      D.     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned on a Settlement Fund, including any taxes or tax detriments that may be imposed upon Bausch or any other Bausch Releasees with respect to income earned on a Settlement Fund for any period during which such Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of a Settlement Fund (including expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) tax returns with respect to the Settlement Fund ("Tax Expenses")), shall be paid out of such Settlement Fund.

      E.     Neither Bausch nor any other Bausch Releasee nor their respective counsel shall have any liability or responsibility with respect to the Settlement Fund for the Taxes or the Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other taxing authority. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Administrators out of such Settlement Fund without prior order from the court and each Administrator shall be obliged (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). Neither Bausch nor any Bausch Releasee shall be responsible or have any liability for any reporting requirements that may relate thereto. The Parties agree to cooperate with each other and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph VIII.E.

      F.     If this Agreement does not receive the Final Approval Order, then the Settlement Fund (net of costs incurred and expended in accordance with Paragraphs VIII.D and IX.A and including interest accrued) shall be returned to Bausch within thirty (30) calendar days of the court's final determination in accordance with that determination.

## IX.     Payment of Expenses

      A.     Bausch agrees to permit use of a maximum of USD $250,000 of the Settlement Fund toward (i) the cost of providing notice to those on whose behalf the Attorneys General assert claims, and (ii) the costs of administration of the Settlement Fund prior to Final Court Approval after the State Settlement Amount is paid into the Escrow Account. To the extent such expenses have been actually incurred or paid for notice and administration costs, those notice and administration expenses (up to the maximum of USD $250,000 from the Settlement Fund) are not recoupable if this settlement does not become final or is terminated. The Escrow Agent shall return all remaining portions of the Settlement Fund (net of costs incurred and

13

expended in accordance with Paragraph VIII.D and including interest accrued) to Bausch should this Agreement not receive Final Court Approval. Bausch shall not be liable for any of the costs or expenses of the litigation incurred by Attorneys General in the Actions or otherwise, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the court or Special Master, appeals, trials, or the negotiation of other settlements, or for the claims administration process under this Agreement and costs, except to the extent that any such costs or expenses are awarded from the Settlement Fund by court order.

## X.    The Settlement Fund

A.    The State Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Bausch Releasees of all Released Claims and shall have no other recovery against Bausch or any of the Bausch Releasees for any Released Claims.

B.    After this Agreement receives Final Court Approval, and at a time to be determined by the Attorneys General, the Settlement Fund shall be distributed in accordance with the plans to be submitted, subject to approval by the court. In no event shall Bausch or any Bausch Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, or the administration of the Settlement Fund, including the costs and expenses of such investment, distribution and administration.

## XI.    Rescission If Agreement Is Not Approved or Final Judgment Is Not Entered

A.    In the event that the court fails to grant Final Court Approval to this Agreement, then the Parties shall in good faith seek to agree on revisions to this Agreement that would remedy any issues preventing Final Court Approval while retaining the spirit of the Agreement. If they are unable to come to agreement on such revisions, despite their good faith efforts, they shall each have the option to rescind this Agreement.

B.    Written notice of the exercise of any right to rescind provided for under this Section XI shall be made according to the terms herein.

C.    In the event that this Agreement does not receive Final Court Approval, or this Agreement otherwise is terminated or rescinded by any party under any provision herein, then: (i) this Agreement shall be of no force or effect, except as expressly provided in Paragraph XI.A and XI.B or other portions of this Agreement; (ii) the Settlement Fund (with any interest accrued thereon) shall be returned forthwith to Bausch less only disbursements made in accordance with Section VIII and Section IX of this Agreement (and as otherwise consistent with Paragraph VIII.F); and (iii) Bausch shall be entitled to any tax refunds owing to the Settlement Fund. At the request of Bausch, and at Bausch's expense the Attorneys General shall cause to be filed claims for any tax refunds owed to the Settlement Fund and pay the proceeds, after deduction of any fees and expenses incurred with filing such claims for tax refunds, to Bausch. All expressly reserve all of their rights, claims and defenses if this Agreement does not receive Final Court Approval or is otherwise terminated or rescinded.

D.    Further, and in any event, Bausch and the Attorneys General agree that this

Agreement, whether or not it receives Final Court Approval or is otherwise terminated or rescinded by any Party under any provision herein, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by Bausch or any other Bausch Releasee, or (ii) the truth of any of the claims or allegations contained in the Actions or any other pleading filed in a case ever pending in any related federal or state court proceeding, including any action consolidated for pretrial purposes in the MDL. Evidence derived from this Agreement, and any and all negotiations, documents, and discussions associated with it shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Bausch or other Bausch Releasee (except to enforce this Agreement).

## XII.   Notice

A.     Notice to Bausch pursuant to this Settlement Agreement shall be sent by registered United States mail, return receipt requested, and electronic mail to:

> Robin D. Adelstein
> Mark A. Robertson
> Norton Rose Fulbright US LLP
> 1301 Avenue of the Americas
> New York, NY 10019
> robin.adelstein@nortonrosefulbright.com
> mark.robertson@nortonrosefulbright.com
>
> Bausch Health US, LLC
> Attn: General Counsel
> 400 Somerset Corporate Blvd.
> Bridgewater, NJ 08807

B.     Notice to Attorneys General pursuant to this Settlement Agreement shall be sent by registered United States mail return receipt requested and electronic mail to:

> Nicole Demers
> Deputy Associate Attorney General/Chief of the Antitrust Section
> Office of the Attorney General of Connecticut
> 165 Capitol Avenue
> Hartford, CT 06106
> 860-808-5202
> 860-808-5030
> nicole.demers@ct.gov
>
> *Liaison Counsel for the States*
>
> Christopher Teters
> Assistant Attorney General, Public Protection Division
> Office of the Attorney General of Kansas

15

120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Office: 785-296-3751
Fax: 785-291-3699
chris.teters@ag.ks.gov

*Counsel for Kansas*

## XIII.  Miscellaneous

A.      This Agreement shall not be deemed or construed to be an admission of liability or of any violation of any statute or law or of any wrongdoing by the Bausch Releasees.  Nor shall this Agreement be deemed as an admission by the Bausch Releasees of any of the allegations or claims by the Attorneys General.  Nor shall the Agreement be used as an admission as to the strength or weakness of any party's claims or defenses.  This Agreement may not be used by the Attorneys General or anyone else in any pending or future civil, criminal, or administrative action or proceeding against the Bausch Releasees, except in a proceeding or action to enforce this Agreement.

B.      This Agreement may be executed in counterparts, each of which will be deemed an original, but which together will constitute one and the same instrument, and a facsimile signature or PDF signature transmitted by email shall be deemed an original signature for purposes of executing this Agreement.  In addition, the state Medicaid agencies listed on Appendix A will sign on a separate form, unless otherwise agreed-to in writing by Bausch.

C.      This Agreement comprises the entire agreement between the Parties related to settlement and representations made herein, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, whether oral or written, between the Parties related to settlement or any of the terms in this Agreement. In entering into this Agreement, the Parties have not relied upon any representation or promise made by any other Party that is not contained in this Agreement. In entering into this Agreement, each Party has relied on the representation that the other Party has not relied upon any representation or promise outside of the representations and promises contained in this Agreement.

D.      This Agreement may not be modified, changed, cancelled, rescinded, amended, or varied (except under the specific termination provisions set forth herein), nor may any or all of its terms be waived, except by a writing signed by all of the parties.

E.      None of the parties to this Agreement shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

F.      The terms of the Agreement shall control in the event there are any conflicting

terms in any related document.

G.      All dates and time periods in this Agreement shall be calculated pursuant to the Federal Rules of Civil Procedure. All such dates and time periods may be modified if mutually agreed upon, in writing, signed by counsel for California and Bausch or by their authorized representatives.

H.      The captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, extend, or describe the scope of this Agreement or the intent of any provision hereof.

I.      Where this Agreement requires either Party to provide notice or any other communication or document to the other, such notice shall be in writing, and shall be provided as set forth in Section XII.

J.      This Agreement shall be governed by, construed by, and enforced in accordance with the laws of the State of Connecticut, including Conn. Gen. Stat. Ann. § 52-572h, barring contribution against a settling defendant, without regard to Connecticut's conflicts of laws provisions. In addition, the law of each state (including, e.g., Cal. Civ. Pro. Code § 877 and N.Y. Gen. Oblig. Law § 15-108) continues to apply with respect to all settlements entered into and judgments entered in connection with claims related to the Conduct and based on that State's law. Consistent with such law, this Agreement is conditioned upon the court's finding that it was entered into in good faith. The parties agree that any and all matters or disputes arising out of this Agreement and asserted by or against the Attorneys General shall lie in the United States District Court for the District of Connecticut.

K.      Each party affirms that this Agreement has been executed by its authorized representative, who is acting within his or her capacity and authority and that by his or her signature this representative is binding the Party on behalf of whom the Agreement is executed to the terms and conditions of this Agreement.

IT IS HEREBY AGREED by the undersigned as of:

**NORTON ROSE FULBRIGHT US LLP**

By: _____            Date:    September 30, 2025

Robin D. Adelstein
Mark A. Robertson
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019
robin.adelstein@nortonrosefulbright.com
mark.robertson@nortonrosefulbright.com
Counsel for Bausch Health Americas, Inc. and Bausch Health US, LLC

17

# Exhibit 2

Case Nos.

3:16-cv-02056-MPS

3:19-cv-00710-MPS

3:20-cv-00802-MPS

Execution Copy
Covered by FRE 408

## SETTLEMENT AGREEMENT BETWEEN THE IDENTIFIED STATES AND DEFENDANT LANNETT COMPANY, INC.

This Settlement Agreement and Stipulated Order ("Settlement Agreement") is made and entered into this __ day of ___ 2025 ("Execution Date"), by and among Lannett Company, Inc. ("Lannett") and the States (as defined below), by and through their respective Attorneys General from the jurisdictions of:

> Connecticut, Alaska, Arizona, California, Colorado, District of Columbia, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming (collectively, the "States" and individually, a "State").

Lannett and the States shall collectively be referred to as the "Parties."

WHEREAS, the States are prosecuting claims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724;

WHEREAS, the States allege in the Action that Lannett violated various antitrust and consumer protection laws by price-fixing and allocating markets for specified drugs;

WHEREAS, Lannett denies that it engaged in any wrongful or unlawful conduct and asserts that it has, at all times, operated within the law and within industry standard practices; and

WHEREAS, nothing in this Settlement Agreement will be construed as a finding or admission of any violation of law on the part of Lannett, but rather that from Lannett's perspective,

Execution Copy
Covered by FRE 408

Lannett is entering into this Settlement Agreement to avoid the inconvenience and expense of litigation.

WHEREAS, arm's-length settlement negotiations have taken place between the States and Lannett, and the result is this Settlement Agreement, which embodies all the terms and conditions of the settlement between the States and Lannett;

WHEREAS, the States have concluded that it is in the best interest of the States to enter into this Settlement Agreement;

WHEREAS, Lannett has concluded that it is in the best interest of Lannett to enter into this Settlement Agreement;

NOW, THEREFORE, in exchange for the mutual obligations described below, the States and Lannett hereby enter into this Settlement Agreement on the following terms and conditions:

## I.    DEFINITIONS

As used in this Settlement Agreement:

A.    "Complaints" mean the operative complaints filed in the Action.

B.    "Costs Account" means an account within the Escrow Account (defined below) that, as funds are received pursuant to Paragraph III(A) will hold up to $4,050,000 (30% of $13,500,000) plus accruing Interest (defined below), which the Escrow Agent (defined below) will hold in escrow and use to pay for Settlement Administration Costs and, upon final approval of the Settlement Agreement, for fees and costs of litigating the States' claims, subject to approval of the District Court. To the extent that monies in the Cost Account are not used to offset costs of States litigating in the Action, any remaining funds may be used for any of the following: (1) Deposit into a State antitrust or consumer protection account (e.g., revolving account, trust account) for use in accordance with the laws governing the account; (2) Deposit into a fund exclusively

Execution Copy
Covered by FRE 408

dedicated to assisting any State to defray the costs of experts, economists and consultants in multistate antitrust investigations and litigations, including healthcare related investigations and litigation; (3) Antitrust or consumer protection enforcement, including healthcare-related enforcement, by an individual State or multiple States; or (4) for any other use permitted by state law at the sole discretion of that State's Attorney General.

C.      "Default" means (i) Lannett's failure to make a payment in accordance with III.A, which failure remains uncured ten (10) business days after receipt of written notice of such failure from the States to Lannett, or (ii) Lannett's filing for bankruptcy protection or otherwise admitting in writing its inability to pay its debts as they become due.

D.      "Effective Date" means the date on which a Final Approval Order is entered by the District Court.

E.      "Eligible Consumers" mean natural persons who purchased, directly or indirectly, any of the drugs specified in the Action, whether through a cash payment in the absence of insurance, or through insurance, paid a co-pay, deductible, or co-insurance payment, and for whom an Attorney General can seek damages, restitution, or disgorgement in a law enforcement capacity, whether it be *parens patriae,* representative, or other capacity, in this Action.

F.      "Eligible Corporate Entities" means corporate (and other business) entities for which the Attorneys General in Idaho and Washington have asserted an exclusive claim in the Action whether pursuant to the Attorneys General's *parens patriae* action or otherwise.

G.      "Enforcement Period" means a 10-year period from the execution of this Settlement Agreement, for purposes of Section X.

Execution Copy
Covered by FRE 408

H.     "Escrow Account" means the designated escrow account established and maintained by Huntington Bank (the "Escrow Agent") for the purpose of depositing and disbursing Annual Payments.

I.     "Final Approval Order" means the order to be entered by the United States District Court for Connecticut or any other presiding federal District Court (the 'District Court') that grants final approval of this Settlement Agreement and dismisses the Action with prejudice. The Parties intend that the Final Approval Order will include: (1) an affirmance by the District Court that the Notice Plan (as defined below) has been completed; (2) a determination by the District Court that the Settlement Agreement is approved finally as fair, reasonable, and adequate for Eligible Consumers and any other entities on whose behalf the States are settling and releasing their claims for which such approval is needed; and (3) dismissal of the Action against Lannett with prejudice; (3) an order from the District Court that the monies in the Restitution Account (as defined below) be held in escrow for later distribution pursuant to a District Court-approved distribution plan for Eligible Consumers, as well as Medicaid agencies and non-Medicaid state agencies, whose claims are being released; and (4) an order from the District Court that monies in the Costs Account are to be disbursed to the States.

J.     "Interest Payment" means the amount of interest calculated at an annual rate of eight percent (8%) on the outstanding principal balance each year in accordance with the terms set forth herein.

K.     "Lannett" means Lannett Company, Inc., any joint venture, subsidiary, division, group, or affiliate controlled currently or in the future by Lannett Company, Inc., their successors and assigns, and the respective directors, officers, employees, agents, and representatives acting on behalf of each.

Execution Copy
Covered by FRE 408

L.    "Lannett Board of Directors" means Lannett's board of directors or equivalent governing body.

M.    "Local Entity(ies)" means any county, city, town, or other local governmental entity.

N.    "Notice Plan" means the plan specifying the manner and content of notifying Eligible Consumers of this Settlement Agreement and informing Eligible Consumers and Eligible Corporate Entities (except for Eligible Consumers and Corporate Entities in Washington) of their rights to comment on or to exclude themselves from the Action and this Settlement Agreement. The Parties contemplate that the Notice Plan will take ninety (90) days or such other time period set by the District Court. The Notice Plan will specify the way in which Eligible Consumers and Eligible Corporate Entities are to be notified of the Action and this Settlement Agreement.

O.    "Preliminary Approval Order" means an order to be entered by the District Court that preliminarily approves this Settlement Agreement. The Parties intend that the Preliminary Approval Order will include the following provisions: (1) preliminary approval of this Settlement Agreement as fair, reasonable, and adequate and in the best interests of Eligible Consumers and Eligible Corporate Entities and any other entities on whose behalf the States are settling and releasing their claims and for which such approval is needed; and (2) approval of the Notice Plan.

P.    "Related Cases" means any case in or coordinated with MDL 2724 (E.D. Pa.).

Q.    "Released Parties" means Lannett and all its current and former employees, personnel, agents, directors, contractors, equity holders, creditors, and representatives, individually and collectively.

R.    "Restitution Account" means an account within the Escrow Account that as funds are received pursuant to Paragraph III(A) will hold up to $9,720,000 (70% of $13,500,000 plus

Execution Copy
Covered by FRE 408

100% of the $270,000 for Eligible Corporate Entities) plus accruing Interest , which the Escrow Agent will hold in escrow for later distribution to victims of the anticompetitive acts alleged by the States, including Eligible Consumers, Eligible Corporate Entities, Medicaid state agencies, and other state agencies whose claims are being released by the States. These amounts are intended to compensate these persons and entities for excess payments they made as the result of the alleged anticompetitive acts described in the Complaints.

S.       "Settlement Administration Costs" means costs to be paid for all actual, customary, and reasonable costs and fees incurred in the administration of this Settlement Agreement, which includes costs and fees incurred for the purpose of (1) compiling necessary Eligible Consumer information and providing notice directly to Eligible Consumers and including notice by publication or paid media as may be needed to effectuate adequate notice, (2) completing administrative tasks, and (3) processing information gathered about Eligible Consumers. Such Settlement Administration Costs expressly include those fees or costs payable to the settlement administrator appointed by the States.

## II.       STIPULATIONS

A.       The States stipulate that they will not commence or otherwise pursue litigation or any other proceedings against the Released Parties asserting, or seeking remedies based on, Released and Resolved Claims (defined below). The States retain the right to reinstate the Released and Resolved Claims in bankruptcy if Lannett does not make the Settlement Payment as required under this Settlement Agreement and Lannett files for bankruptcy.

B.       Upon entry of the Final Approval Order by the Court, the Complaints shall be deemed dismissed with prejudice against Lannett although the Court will retain jurisdiction for

Execution Copy
Covered by FRE 408

purposes of resolving any disputes regarding the Settlement Agreement and enforcement of the

Settlement and Final Approval Order.

### III.    SETTLEMENT PAYMENT

Lannett shall pay to the States $13,500,000, plus $270,000 for Eligible Corporate Entities,

for a total of $13,770,000 (the "Settlement Payment") and no other monetary consideration. The

payment shall be made in accordance with the following terms:

A.    **Payment Schedule.** The Settlement Payment shall be paid in equal annual

installments over a period of six (6) years (each, an "Annual Payment"). The first Annual Payment

shall be due thirty (30) days after entry of the Preliminary Approval Order and each subsequent

Annual Payment shall be due on the later of (i) the anniversary of the first payment date or (ii) the

anniversary of the date of the Final Approval Order.

B.    **Deposit Account**: The Annual Payments and the Interest Payments shall be

deposited into the Escrow Account. For the avoidance of doubt, 70% of the $13,500,000 and 100%

of the $270,000 for Eligible Corporate Entities shall be deposited into a Restitution Account (with

the States having the discretion to split those monies into accounts for Eligible Consumers, Eligible

Corporate Entities, Medicaid state agencies, and non-Medicaid state agencies) and the remainder

shall be deposited into the Costs Account for attorneys' fees and costs.

C.    **Interest Payment**: In addition to the principal amount, Lannett shall pay interest

on the outstanding balance at an annual rate of 8%. "Interest" shall be the amount calculated by

multiplying .08 by the remaining unpaid balance at the time of each year's Annual Payment. The

Interest so calculated shall be added to the Annual Payment each year.

D.    **Use of Settlement Payment**. Any distribution from the Restitution Account shall

only be distributed at a future date according to a distribution plan submitted to and approved by

Execution Copy
Covered by FRE 408

the District Court that may include any subsequent settlements. Promptly after the Final Approval

Order is entered, the funds in the Costs Account may be distributed to the States to pay Settlement

Administration Costs, the past and future costs of litigating the States' claims, both collectively or

individually, as well as attorneys' fees, and to the extent that monies in the Costs Account are not

used to offset costs of States litigating in the Action, any remaining funds may be used for any of

the following: (1) Deposit into a State antitrust or consumer protection account (e.g., revolving

account, trust account) for use in accordance with the laws governing the account; (2) Deposit into

a fund exclusively dedicated to assisting any state to defray the costs of experts, economists and

consultants in multistate antitrust investigations and litigations, including healthcare related

investigations and litigation; (3) Antitrust or consumer protection enforcement, including

healthcare-related enforcement, by an individual State or multiple States; or (4) For any other use

permitted by state law at the sole discretion of that State's Attorney General.

      E.    **Acceleration Clause.** Lannett warrants that, as of the date of this Settlement

Agreement, it is not insolvent, nor will its Settlement Payment render it insolvent within the

meaning of or for the purposes of the United States Bankruptcy Code. In the event of a Default by

Lannett, all remaining payments due under this Agreement shall become immediately due and

payable. Lannett agrees that the States shall have the right to pursue all available legal remedies to

collect the accelerated amount (consistent with applicable Bankruptcy law in the case of a

bankruptcy filing), including but not limited to, filing a confession of judgment or stipulation for

entry of judgment as set forth below. Notwithstanding anything to the contrary in this Settlement

Agreement, Lannett may at any time, and in its sole discretion, pay a portion or the full amount of

any remaining balance due on the Settlement Payment early, without incurring a pre-payment

Execution Copy
Covered by FRE 408

penalty, after providing at least ten (10) calendar days prior written notice to the States, and after

adjusting the interest calculation according to the amount and date of payment.

  F.  **Identification of Assets and Liens.** Lannett shall, within sixty (60) days after the

date the Final Approval Order is entered, provide the States with a confidential comprehensive

written statement that consists of identification of material assets and material liens ("Asset

Information") and shall respond to reasonable questions about the Asset Information. In the event

that there is a material change in the Asset Information, Lannett shall, within thirty (30) days after

such material change, provide the States with an updated statement of Asset Information. Lannett

shall also make commercially reasonable efforts to notify the States 90 days prior to any filing for

bankruptcy and such notice may be used by the States to trigger the acceleration of all remaining

payments due under this Settlement Agreement, the confession of judgment or the entry of a

stipulated entry of judgment, and the entry of liens. In the event that there is a Default by Lannett,

thereby triggering the acceleration of all remaining payments due under this Agreement, Lannett

shall, within thirty (30) days after such Default, provide the States with a final comprehensive and

detailed written statement identifying then-current Asset Information. Lannett agrees not to argue

that any liens properly imposed by the States pursuant to the acceleration of remaining payments

and the confession of judgment constitute an avoidable preference.

  G.  **Confession of Judgment or Stipulated Entry of Judgment.** In the event of a

Default, Lannett hereby irrevocably authorizes any attorney to appear in any court of competent

jurisdiction and confess judgment against Lannett in favor of the States, or enter the stipulated

entry of judgment, for the full remaining amount due under this Settlement Agreement, including

any accelerated amounts, plus interest, costs, and reasonable attorney's fees less all amounts paid

by Lannett to date. Lannett waives all rights to notice, hearing, and appeal, and consents to the

Execution Copy
Covered by FRE 408

immediate entry of judgment upon Default. This confession of judgment or stipulated entry of judgment is intended to be a final and binding resolution of any disputes arising under this Settlement Agreement as to the payments of monies required under this Settlement Agreement and is attached as Exhibit A (confession of judgment) and Exhibit B (stipulated entry of judgment).

H.    **Final Approval Order.** The Parties agree that any distribution plan is to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness, and adequacy of the resolution set forth in this Settlement Agreement, and any order or proceedings relating to any distribution plan shall not operate to terminate or cancel the Settlement Agreement or affect the finality of the Final Approval Order, or any other orders entered pursuant to this Settlement Agreement. If the District Court denies final approval of this Settlement Agreement, this Settlement Agreement shall be null and void and any portion of the Settlement Payment made by Lannett, less any amounts expended for Settlement Administration Costs, including up to 30% of the first payment of any amounts expended for notice costs, shall upon request from Lannett be refunded to Lannett within five (5) business days.

## IV.    RELEASED AND RESOLVED CLAIMS

A.    **Release.** As permitted by law, the States release the Released Parties from any and all claims that the States brought or could have brought against the Released Parties (except on behalf of Local Entities) or any other defendant in the Action brought by States relating to the drugs specified in the Action based on the conduct alleged in the Action, including but not limited to antitrust, consumer protection, fraud or false claims act, "overarching conspiracy," unjust enrichment and disgorgement claims through and including the date of this Release.[1] The claims released are collectively referred to as "Released Claims."

---

[1]    For clarity, the exclusive claims asserted by Idaho and Washington on behalf of Eligible Corporate Entities are subject to this Release and within the definition of Released Claims. The non-exclusive claims asserted by other

Execution Copy
Covered by FRE 408

B.     **Covenant Not to Sue.** Each State hereby covenants and agrees that it shall not sue or otherwise seek to establish or impose liability, in any capacity and on behalf of itself or any other person or entity, including Local Entities, or class thereof against any Released Party based, in whole or in part, on any of the Released Claims.[2] The Released Claims and the claims covered by this Covenant Not to Sue are collectively referred to as the "Released and Resolved Claims."

C.     **Exclusions.** Notwithstanding any term in this Settlement Agreement, Released and Resolved Claims specifically do not include claims unrelated to competition, including

1.     Any civil or administrative tax or other liability under state revenue codes;

2.     Exclusion from a State's Medicaid program as prescribed by federal or state law;

3.     Any civil or administrative liability related to a State's Medicaid program under any statute, regulation, or rule for any conduct other than the conduct alleged in the Complaints, including, but not limited to, state or federal false claims act, anti-kickback or off-label marketing violations for the specified drugs;

4.     Any criminal liability;

5.     Any breach of contract or any liability for expressed or implied warranty claims or other liability for defective or deficient products and services provided by Lannett;

---

States to recover damages or restitution for corporate entities are subject to the Covenant Not To Sue in IV.B of this Settlement Agreement. For those States, their Attorneys General covenant not to sue on behalf of those entities, agree to the dismissal of their claims against such entities, and agree that their corporate entities may recover damages or overcharges incurred only in connection with any claim filed on their behalf in another court. The Attorneys General also covenant not to sue the Defendants in any capacity to recover disgorgement against the Defendants that would involve overcharges to corporate entities in their states.

[2]     For clarity, as noted in the prior footnote, non-exclusive claims for damages or restitution filed by the States other than Idaho and Washington on behalf of corporate entities are subject to this covenant not to sue. Those States other than Idaho and Washington covenant not to sue Lannett on behalf of such corporate entities seeking damages, restitution, disgorgement, or any remedy based on the Released Claims, and agree to the dismissal of their claims on behalf of such corporate entities.

Execution Copy
Covered by FRE 408

      6.     Any liability for unfair or deceptive representations made in the marketing or advertising or for off-label marketing claims for the specified drugs (other than such liability or claims related to any of the conduct alleged in the Action); and

      7.     Any securities-related liability.

    D.    **Preservation of Claims against Other Defendants**. Lannett's sales of drugs specified in the Action shall, to the extent permitted or authorized by law, remain in the Action against other defendants in the Action as a potential basis for restitution and other monetary claims and shall be asserted as a part of any joint and several liability claims against other defendants in the Action or against other persons other than the Released Parties.

    E.    **Additional Release.** In addition, the Parties expressly waive, release, and forever discharge any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

and also expressly waive, release, and forever discharge any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Parties may discover facts other than or different from what the Party believes to be true with respect to price-fixing, market allocation, or bid-rigging within the time periods mentioned in the Complaints concerning the Released and Resolved Claims, but each Party expressly waives and fully, finally and forever settles, releases, resolves, and discharges, upon this Settlement Agreement becoming final, any suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released and Resolved Claims,

Execution Copy
Covered by FRE 408

whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. This provision shall not in any way expand the scope of the Released and Resolved Claims and shall not convert what is a limited release into a general release.

      F.    **Res Judicata**. This Settlement Agreement shall be deemed to have rendered any Released Claim as res judicata as to the States only.

      G.    **Motions Practice**. As of the Execution Date, the Parties shall all suspend all discovery and motion practice in the Action and therefore, neither Lannett nor the States shall file motions against the other after the Execution Date and before the date of the Final Approval Order. For the avoidance of doubt, the States may continue to attend depositions of current and former Lannett employees and may question those employees as it relates to the prosecution of claims against other defendants in the Action. Counsel for Lannett may likewise continue to attend depositions of current and former employees of the States and of any other individuals represented by the States, and may question those individuals as it relates to Lannett's defense of claims brought by MDL plaintiffs.

## V.     REQUESTS FOR APPROVAL AND NOTICE

      The States intend to seek approval from the District Court for the actions that the Parties contemplate for use of the Settlement Payment, including the contemplated later distribution of settlement proceeds to Eligible Consumers, Eligible Corporate Entities, and other entities being released by the States to the extent that such approval is required. The States will file a motion for preliminary approval of the Settlement Agreement within thirty (30) days after the Execution Date. The States will provide a copy of such motion (including all exhibits and attachments to such motion) to Lannett in advance of filing.

Execution Copy
Covered by FRE 408

The States shall disseminate notice of the potential approval of this Settlement Agreement according to the Notice Plan to potentially affected Eligible Consumers, Eligible Corporate Entities, and to the extent required, other entities being released by the States in the manner and within the time directed by the District Court.

The States shall file with the District Court and as directed by the District Court a Motion for a Final Approval Order. At least seven (7) days prior to filing their Motion for a Final Approval Order, the States shall provide a copy of such motion (including all exhibits and attachments to such motion) to Lannett.

## VI.    QUALIFIED SETTLEMENT FUND

A.    The Escrow Account (a "Settlement Fund") will be established by order of the District Court at Huntington Bank with such bank serving as escrow agent ("Escrow Agent") subject to one or more escrow agreements mutually acceptable to the Parties. The Settlement Fund is established to resolve and satisfy one or more claims described in this Settlement Agreement, and each shall be subject to the District Court's continuing supervision and control. In addition, the Attorneys General shall make such elections as necessary or advisable to carry out the provisions of this Section. Such elections shall be made in compliance with the procedures and requirements contained in any applicable regulations.

B.    The Parties intend that the Settlement Fund shall be a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, shall act in a manner consistent with the treatment of the Settlement Fund as such a qualified settlement fund, and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.

Execution Copy
Covered by FRE 408

The administrators for the State Escrow shall be California, New York and Ohio (each, in such capacity, an "Administrator"). The Administrator shall cause the timely and proper filing of all informational and other tax returns necessary or advisable with respect to the applicable Settlement Fund (including without limitation the returns described in Treasury Regulation §§ 1.468B-2(k)(1) and (l)(2)). The Administrator shall make a "relation-back election" (as defined in Treasury Regulation § 1.468B-1(j)), if available, to permit the Settlement Fund to be treated as a qualified settlement fund from the earliest permitted date. It shall be the responsibility of the Administrator to cause the timely and proper preparation and delivery of the necessary documentation with respect to the Settlement Fund for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

C.    The Escrow Agent shall cause the Settlement Fund to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively, by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates. Lannett shall bear no risk related to the Settlement Fund. The Settlement Fund shall be deemed and considered to be in custodia legis of the District Court and shall remain subject to the jurisdiction of the District Court, until such time as the funds therein shall be distributed pursuant to this Settlement Agreement or further order(s) of the District Court.

D.    All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned on a Settlement Fund, including any taxes or tax detriments that may be imposed upon Lannett with respect to income earned on a Settlement Fund for any period during

15

Execution Copy
Covered by FRE 408

which such Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of a Settlement Fund (including expenses of tax attorneys and accountants and mailing and distribution costs and expenses relating to filing (or failing to file) tax returns with respect to the Settlement Fund ("Tax Expenses")), shall be paid out of such Settlement Fund.

      E.      The Released Parties shall not have any liability or responsibility with respect to a Settlement Fund for the Taxes or the Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other taxing authority. The Escrow Agent and Attorneys General respectively shall indemnify and hold the Released Parties harmless for Taxes and Tax Expenses (including taxes payable by reason of such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Administrator out of the Settlement Fund without prior order from the District Court and the Administrator shall be obliged (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the District Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). Lannett shall not be responsible or have any liability therefore or for any reporting requirements that may relate thereto. The Parties agree to cooperate with each other and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph VI.E.

Execution Copy
Covered by FRE 408

# VII.     REASONABLE COOPERATION

Lannett agrees to provide reasonable cooperation to the States in connection with the prosecution of the Action against other defendants as set forth herein. The cooperation to be provided under this Agreement shall otherwise be reasonable and shall not impose undue burden and expense on Lannett. Subject to these limitations, Lannett shall provide reasonable cooperation to the States, and their respective counsel, as a condition of this Settlement Agreement, which include the following:

A.     Reasonable efforts to assist the States to understand data produced by Lannett, including consulting with technical personnel to address questions posed by the States' respective data consultants, and to provide any additional information or data reasonably necessary to understand or clarify the data or otherwise render it admissible, and to provide additional data as may be reasonably necessary.

B.     Reasonable efforts to authenticate and lay the foundation to admit as business records or other hearsay exceptions or nonhearsay any documents identified by the States for use in the Action.

C.     Identification of persons who are or were working for Lannett who are likely to have relevant information about the alleged conduct in the Action, including whether such persons remain under Lannett's control.

D.     Attorney proffers on Lannett's, and current and former employees' knowledge and roles in the conduct alleged in the Action, to the extent not already provided.

E.     Reasonable efforts to provide access to persons identified in (C) and (G) for interviews, to the extent not already provided.

Execution Copy
Covered by FRE 408

F.     Production of witnesses identified in (C) and (G) for testimony at trial to the extent that such witnesses are under Lannett's control, and reasonable efforts to produce for testimony at trial witnesses not under Lannett's control. Lannett will notify the States as reasonably in advance as feasible if any individual who the States have identified to Lannett as a potential witness has a change in status with regards to being under Lannett's control.

G.     Identification of persons at Lannett who are likely to have relevant information concerning Lannett's pricing information contained in other defendants' documents, and the accuracy of this information, for drugs named in the Complaints.

H.     Identification of price increases implemented by Lannett during the relevant time period for each drug named in the Complaints as to which States allege Lannett entered into a product-specific conspiracy, including identification of supportive documents and data by Bates number.

## VIII.    NO ADMISSION

Neither the settlement, the Settlement Payment, nor the Settlement Agreement shall be used or construed by any person as an admission of liability by Lannett to any party or person or be deemed evidence of any violation of any statute or law or admission of any liability or wrongdoing by the Released Parties, or of the truth of any of the claims or allegations asserted against Lannett in any other case.

## IX.    BENEFIT AND BINDING EFFECT

The terms of this Settlement Agreement shall be binding on and shall inure to the benefit of the Parties and their successors. The Parties do not intend this Settlement Agreement, or any part hereof, or any aspect of the settlement or the releases, to extend to, to release, or otherwise to

Execution Copy
Covered by FRE 408

affect in any way any rights that the Attorneys General have or may have against any other person, party or entity whatsoever, other than the Released Parties.

## X.    INJUNCTIVE RELIEF.

A.    **Legal Compliance and Prospective Injunctive Relief**  Lannett covenants that it, along with its current directors, officers, and employees shall not, directly or indirectly, maintain, solicit, suggest, advocate, discuss or carry out any unlawful agreement with any actual or potential competitor in the generic pharmaceutical industry to: (a) fix prices for generic pharmaceuticals; (b) submit courtesy, cover, or otherwise non-competitive, bids or proposals for the supply, distribution or sale of generic pharmaceuticals; (c) refrain from bidding on, or submitting proposals for, the supply, distribution, or sale of generic pharmaceuticals; or (d) allocate customers for the sale of generic pharmaceuticals for the Enforcement Period. These covenants are a material term of this Settlement Agreement.

B.    The Parties agree that the covenants in the (i) Legal Compliance and Prospective Injunctive Relief Section and (ii) Business Reforms Section shall be enforceable upon execution of the Settlement Agreement. The covenants shall further be implemented as part of the District Court's approval of the Settlement Agreement and shall be fully enforceable thereafter as part of the District Court's approval orders for the remaining duration of these covenants. The Parties also specifically agree that the States may file a new action based on violation of these covenants.

C.    **Business Reforms**. Lannett represents to the States that it has implemented, and shall continue to maintain during the Enforcement Period, a written "Antitrust Compliance Manual," on which all current Lannett employees have been trained, including its employees engaged in activities relating to the pricing or sale of generic pharmaceuticals. Each Lannett employee is required to sign an acknowledgment form stating that they have read, and will abide

Execution Copy
Covered by FRE 408

by, the Antitrust Compliance Manual. Lannett also implemented, and will continue to conduct during the Enforcement Period, periodic antitrust training sessions for its employees at least once per year. Such antitrust training has been delivered by an attorney with relevant experience in the field of antitrust law, and Lannett keeps attendance at each training session to ensure that all employees receive the training. Lannett has developed effective lines of communication for its employees engaged in activities relating to the pricing or sale of generic pharmaceuticals, and Lannett's training sessions, and the Antitrust Compliance Manual, include clear instructions to those attending that, if they identify any problematic conduct undertaken by any Lannett employee that might violate the antitrust laws, they are required to contact Lannett's General Counsel and the Chief Compliance Officer. Lannett's training sessions, and the Antitrust Compliance Manual, also make clear the consequences of antitrust violations.

D.    **Chief Compliance Officer.** During the enforcement period, Lannett shall appoint and maintain a Chief Compliance Officer, who serves to enforce Lannett's Antitrust Compliance Manual and monitor Lannett's employees to ensure that there are no further violations of the antitrust laws during the Enforcement Period. The Chief Compliance Officer shall advise and report to Lannett's Board of Directors, and shall be responsible for ensuring Lannett's performance of the following:

1.    Furnishing a copy of this Settlement Agreement, within thirty (30) days after the entry of the Final Approval Order, to each member of Lannett's Board of Directors, to its Chief Executive Officer, to each of its Senior Vice-Presidents, and to each of Lannett's employees engaged, in whole or in part, in activities relating to the pricing or sale of generic pharmaceuticals;

Execution Copy
Covered by FRE 408

2.      Furnishing a copy of this Settlement Agreement in a timely manner to each officer, director, or employee who succeeds to any position identified above; and

3.      Maintain its Antitrust Compliance policy and continue to conduct comprehensive and effective antitrust training for Lannett employees engaged in activities relating to the pricing or sale of generic pharmaceuticals on an annual basis.

Upon discovery or receipt by Lannett's General Counsel or Chief Compliance Officer of a credible notification of a potential violation of the covenants in this Section or the Legal Compliance and Prospective Injunctive Relief Section of this Agreement, and following reasonable investigation of such notification, Lannett shall take appropriate action to: (a) immediately terminate or modify Lannett's conduct to assure continued compliance with this Settlement Agreement (if necessary); and (b) within thirty (30) business days of such discovery or receipt of credible information suggesting an actual or potential violation of this Settlement Agreement, provide to the designated Representative States in writing, a description of the actual or potential violation and the corrective actions taken (if any).

E.      **Reporting.** Lannett will provide an annual report to the States as to its compliance program, by email to up to four designated contacts identified in advance by the States. That report shall:

1.      Specify any changes to Lannett's Antitrust Compliance Manual since the last report, provide detail as to whether the requirements of the program were carried out over the course of the past year, and confirm that all sales officers and employees, and any other officers and employees involved in

Execution Copy
Covered by FRE 408

pricing, have attended Lannett's compliance training within the past 12 months.

2.    Confirm that Lannett is in substantial compliance with Lannett's Antitrust Compliance Manual and the requirements of this Section, and

3.    Confirm that no potential antitrust violations have been identified or provide a brief description of any potential antitrust violations discovered and all actions take to address such antitrust violations.

F.    **Confidentiality.** All reports that Lannett provides to the States under Section X.E. shall be kept confidential and shall not be disclosed to anyone other than the States or used for any purpose other than to enforce this Agreement.[3]

## XI.    MISCELLANEOUS

A.    **Representative States.** Connecticut and Kansas (the "Representative States") are expressly authorized by the States to take all appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms in consultation with the States.

B.    **Authority.** Each counsel or other person executing this Settlement Agreement on behalf of any Party warrants that such person has full authority to do so.

C.    **Entire Agreement.** This Settlement Agreement contains the entire agreement and understanding of the Parties. There are no additional promises or terms of this Settlement Agreement other than those contained herein. This Settlement Agreement shall not be modified except in writing signed by the Parties' authorized representatives. Each of the Parties hereto participated materially in the drafting of this Settlement Agreement. None of the Parties hereto

---

[3]    The States agree to seek a protective order in any court to which any State Action has been or may be remanded, providing for "Highly Confidential" treatment of such information, at least equivalent to the protection provided under the protective order in the MDL.

Execution Copy
Covered by FRE 408

shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose

of any statute, case law, or rule of interpretation or construction that would or might cause any

provision to be construed against the drafter thereof. The terms of this Settlement Agreement shall

control in the event there are any conflicting terms in any related document.

D.     **Dates and Times.** All dates and time periods in this Settlement Agreement shall be

calculated pursuant to the Federal Rules of Civil Procedure. All such dates and time periods may

be modified if mutually agreed upon, in writing, signed by Liaison Counsel for the States and

Lannett or by their authorized representatives.

E.     **Case Captions.** The captions contained in this Settlement Agreement are inserted

only as a matter of convenience and in no way define, limit, extend, or describe the scope of this

Settlement Agreement or the intent of any provision hereof.

F.     **Choice of Law**.  The Settlement Agreement and any related documents shall be

subject to, governed and construed, interpreted, and enforced, pursuant to the laws of the State of

Connecticut, without regard to choice of law principles.

G.     **Choice of Venue**. Lannett irrevocably consents to the venue of the United States

District Court in which the Action is pending, currently the District of Connecticut, in any action

or proceeding to enforce the obligations contained in this Settlement Agreement. The District

Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of

the Settlement Agreement, and all States and Lannett hereby submit to the exclusive jurisdiction

of the District Court for purposes of implementing and enforcing this Settlement Agreement.

H.     **Service**. Service of any summons or complaint, and any other process which may

be served on Lannett may be made by mailing via registered mail or delivering a copy of such

process to Lannett's counsel in the Action. Any and all notices, requests, consents, directives, or

Execution Copy
Covered by FRE 408

communications by any Party intended for any other Party shall be in writing and shall, unless

expressly provided otherwise be provided by United States mail and electronic mail to:

For the States:

> Nicole Demers
> Deputy Associate Attorney
> General/Chief of the Antitrust
> Section
> Office of the Attorney General of
> Connecticut
> 165 Capitol Avenue
> Hartford, CT 06106
> 860-808-5202
> 860-808-5030
> nicole.demers@ct.gov
>
> *Liaison Counsel for the States*
>
> Christopher Teters
> Assistant Attorney General, Public
> Protection Division
> Office of the Attorney General of
> Kansas
> 120 SW 10th Avenue, 2nd Floor
> Topeka, Kansas 66612-1597
> Office: 785-296-3751
> Fax: 785-291-3699
> chris.teters@ag.ks.gov
>
> *Counsel for Kansas*

For Lannett:

> George G. Gordon
> Dechert LLP
> Cira Centre
> 2929 Arch Street
> Philadelphia, PA 19104
> Phone: 215-994-4000
> Email: george.gordon@dechert.com

Execution Copy
Covered by FRE 408

Any one of the Parties may, from time to time, change the address to which such notices, requests, consents, directives, or communications are to be delivered, by giving the other Parties prior written notice of the changed address, in the manner herein above provided, ten (10) calendar days before the change is effective.

I.     **Counterparts**. This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Signatures provided by facsimile transmission, or in Adobe Portable Document Format (PDF) sent by electronic mail, shall be deemed to be original signatures and this Settlement Agreement may be delivered by email of PDF files.

Signed:

_____
George G. Gordon
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Phone: 215-994-4000
Email: george.gordon@dechert.com

*Counsel for Lannett Company, Inc.*

Dated: 1/29/26

_____
Nicole Demers
Deputy Associate Attorney General/Chief of the Antitrust Section
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
860-808-5202
860-808-5030

25

Execution Copy
Covered by FRE 408


nicole.demers@ct.gov


*Liaison Counsel for the States*

Date: _____

STEPHEN J. COX
Attorney General

*/s/ Jeff Pickett*_____
Jeff Pickett
Senior Assistant Attorney General
State of Alaska Department of Law
1031 W. 4th Ave., Suite 200
Anchorage, AK 99501
Phone: (907) 269-5275

*Counsel for the State of Alaska*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR ALASKA**
**RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of ALASKA (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: **11/5/2025**          Signature: _____

                              Name:    Heather M. Nobrega
                                       _____

                              Position/Title:  Director
                                       _____

                                       Alaska Medicaid Fraud Control Unit
                                       _____

_____

Robert A. Bernheim
Unit Chief Counsel
Antitrust & Privacy Unit
Office of the Arizona Attorney General
400 W. Congress, Ste. S-315
Tucson, AZ 85701
(520) 628-6507
Robert.Bernheim@azag.gov

*Counsel for the State of Arizona*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR ARIZONA
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Arizona (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in** *Connecticut et al v. Aurobindo Pharma USA, Inc., et al,* **Case No. 3:16-cv-02056 (D. Conn.);** *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al,* **3:19-cv-00710-MPS (D. Conn.); and** *Connecticut et al v. Sandoz, Inc. et al,* **3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania,** *In re Generic Pharmaceuticals Pricing Antitrust Litigation,* **Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: **1-17-25**      Signature: _____

Name: _____
Steve Duplissis

Position/Title: _____
Arizona Medicaid Fraud Control Unit Director

_____

*In re Generic Pharmaceuticals Pricing Antitrust Litigation,* MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

/s/ Emilio Varanini
Emilio Varanini
Supervising Deputy Attorney
General
Office of the Attorney General California
455 Golden Gate, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3541
E-mail:  Emilio.Varanini@doj.ca.gov

*Attorney for the State of California*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
CALIFORNIA
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of California (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: November 18, 2025

Randal L. Glaser
Supervising Deputy Attorney General
California Department of Justice
Division of Medi-Cal Fraud and Elder Abuse

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

<u>/s/ Stephen T. Anson</u>
Stephen T. Anson
Assistant Attorney General
Office of the Attorney General
Commonwealth of the Northern Mariana Islands
2nd Floor Hon. Juan A. Sablan Memorial Building
Caller Box 10007, Capitol Hill
Saipan, MP 96950
Tel: 670-237-7500
Stephen_anson@cnmioag.org

*Counsel for the Commonwealth of the Northern Mariana Islands*

PHILIP J. WEISER
Attorney General

*/s/ Robin E. Alexander*
Robin E. Alexander, 48345*
Elizabeth W. Hereford, 58252*
Assistant Attorneys General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000

*Counsel for the State of Colorado*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
COLORADO
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Colorado (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated:
_11/10/2025___

Signature: _____

Name:    Rebecca S. Weber

Position/Title:   First Assistant Attorney General

Medicaid Fraud, Abuse & Neglect Unit

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

STATE OF CONNECTICUT
WILLIAM TONG
ATTORNEY GENERAL

<u>/s/ Nicole Demers</u>
Nicole Demers
Federal Bar No. ct27223
Deputy Associate Attorney General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
Tel: (860) 808-5030
Fax: (860) 808-5391
nicole.demers@ct.gov

*Counsel for the State of Connecticut*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
CONNECTICUT
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Connecticut (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated:
_____11/20/2025_____

Signature: _____

Name: _____
Marjorie Sozanski

Position/Title: Supervisory Assistant State's Attorney
Director of the Connecticut Medicaid Control Unit

_____

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

/s/Adam Gitlin
Adam Gitlin
Chief, Antitrust and Nonprofit Enforcement Section
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, D.C. 20001
Tel.: 202-442-9864
adam.gitlin@dc.gov

*Counsel for the District of Columbia*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR DISTRICT OF COLUMBIA
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the District of Columbia (the "District") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz,* Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the District has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the District and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated: 11/20/2025          Signature: *Lavan Griffith*

Name: LaVan Griffith

Position/Title: Director, MFCU

Michael A. Undorf
~~Deputy~~ Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
(302) 683-8816
michael.undorf@delaware.gov

*Counsel for the State of Delaware*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR DELAWARE**
**RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Delaware (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: __11/14/25___    Signature: _____*/s/Stephen McDonald*_____

Name: _____Stephen McDonald_____

Position/Title: __Deputy Attorney General/MFCU Director__

_____

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

JAMES UTHMEIER
Attorney General
State of Florida

By: /s/ Lizabeth A. Brady
Lizabeth A. Brady
Director, Antitrust Division
Timothy Fraser
Special Counsel
PL-01, The Capitol
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-9134

*Counsel for State of Florida*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR FLORIDA
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Florida (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated: <u>1/13/2026</u>        Signature: _____

Name: _____
David Dewhirst

Position/Title: _____
Chief Deputy Attorney General

_____
State of Florida

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

STATE OF GEORGIA

/s/ Logan Winkles
Christopher Carr, Attorney General
Logan Winkles, Deputy Attorney General
Ron Stay, Sr. Asst. Attorney General
Charles Thimmesch, Sr. Asst. Attorney General
Office of the Georgia Attorney General
40 Capitol Sq. SW
Atlanta, GA 30334
(404) 458-3626
cthimmesch@law.ga.gov

*Attorneys for the State of Georgia*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR GEORGIA
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Georgia (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/7/25      Signature: _____

Name: Jim Mooney

Position/Title: Deputy Attorney General

Director, Georgia MFPPD

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

/s/ Noah Goerlitz
Noah Goerlitz
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
(515) 725-1018
noah.goerlitz@ag.iowa.gov

*Counsel for the State of Iowa*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR IOWA
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Iowa (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/12/2025          Signature: _Tricia Dieleman_

Name: Tricia Dieleman

Position/Title: Assistant Attorney General for the Iowa MFCU

Iowa Attorney General's Office & Medicaid Fraud Control Unit

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

PLAINTIFF STATE OF IDAHO
RAÚL R. LABRADOR
ATTORNEY GENERAL

By: /s/ John K. Olson
    John K. Olson
    Deputy Attorney General
    Idaho Office of the Attorney General
    Consumer Protection Division
    954 West Jefferson Street, 2nd Floor
    Boise, Idaho 83702
    (208) 332-3549
    john.olson@ag.idaho.gov

    *Counsel for the State of Idaho*



# STATE OF IDAHO

### OFFICE OF THE ATTORNEY GENERAL

### RAÚL R. LABRADOR

November 7, 2025

VIA EMAIL: Hamad.Qazi@doj.ca.gov, and Anushka.Silva@doj.ca.gov

**Re:  Settlement Agreement with Lannett Company-1301 (NAMFCU #1301)**

Dear Hamad and Anushka:

Enclosed is the dated and signed MFCU Signature Page for the State of Idaho.

If you have any questions, please contact me at (208) 334-4100 or via email at Ashley.Klenski@ag.idaho.gov.

Respectfully,

Ashley Klenski, Director
Medicaid Fraud Control Unit

AK:kcb
Enclosure

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR IDHAO
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Idaho (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

>   **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz,* Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated: 11/07/2025          Signature: _____

                      Name:  Ashley Klenski

              Position/Title:  Director, Medicaid Fraud Control Unit

                      Office of Idaho Attorney General

<u>/s/ *Brian M. Yost*</u>
Brian M. Yost
Assistant Attorney General, Antitrust Bureau
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(872) 276-3598
Brian.Yost@ilag.gov

Counsel for the State of Illinois

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR ILLINOIS
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of ILLINOIS (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated: <u>11/4/25</u>       Signature: *Heather D'Orazio*

Name:    Heather Tullio D'Orazio

Position/Title:    Director, IL Medicaid Fraud Control Unit

/s/ Tamara Weaver
Tamara Weaver
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 234-7122
Email:  Tamara.Weaver@atg.in.gov

*Counsel for the State of Indiana*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR INDIANA
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Indiana (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated: <u>11/20/2025</u>      Signature: _____

Name: <u>E. Mitchell Roob Jr.</u>

Position/Title: <u>Secretary, Indiana Family and Social Services</u>

<u>Administration</u>

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

/s/Christopher Teters
Christopher Teters, KS No. 27248
Assistant Attorney General
Office of the Kansas Attorney General, Kris. W. Kobach
120 SW 10th. Ave., Fl. 2,
Topeka, KS 66612
(785) 368-8429
chris.teters@ag.ks.gov

*Counsel for the State of Kansas*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR KANSAS

### RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Kansas (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

**[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 20 Nov 2025        Signature: _____

Name: Gregory T. Benefiel

Position/Title: Director, Kansas Medicaid Fraud and Abuse Division
First Assistant Attorney General

Office of the Kansas Attorney General
120 SW 10th Avenue

Topeka, KS  66612

Commonwealth of Kentucky

*S/Jonathan E. Farmer*
Jonathan E. Farmer
Deputy Executive Director of Consumer Protection
Office of the Attorney General of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Tel: 502-696-5448
Fax: 502-573-8317
Jonathan.Farmer@ky.gov

*Attorney for the Commonwealth of Kentucky*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
KENTUCKY
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of KENTUCKY (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz,* Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated: 11/26/2025        Signature: *Matt Kleinert*

Name:        Matthew Kleinert

Position/Title:        Executive Director

KY MFCU

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

ANDREA JOY CAMPBELL,
ATTORNEY GENERAL

/s/ Anthony Mariano
Anthony Mariano, MA No. 688559
Chief, Antitrust Division
Jennifer E. Greaney, MA No. 643337
Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
Tel: (617) 963-2981
jennifer.greaney@mass.gov

*Counsel for the Commonwealth of Massachusetts*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR MASSACHUSETTS
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the Commonwealth of Massachusetts (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaids claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/29/25          Signature: _____

                         Name:      Kevin Lownds

                         Position/Title: Chief, Medicaid Fraud Division

                                     Office of the Attorney General

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

_/s/ Schonette J. Walker_
Schonette J. Walker
Assistant Attorney General
Chief, Antitrust Division
200 Saint Paul Place
19th Floor
Baltimore, Maryland 21202
410.576.6473
swalker@oag.maryland.gov

_Counsel for Plaintiff State Maryland_

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
MARYLAND
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Maryland (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 4 Nov 2025   Signature: _____

Name: W. Zak Shirley

Position/Title: Director

Maryland MFWU

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

FOR PLAINTIFF STATE OF MAINE:

AARON M. FREY
ATTORNEY GENERAL

*/s/ Christina M. Moylan*
Christina M. Moylan
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, Maine 04333-0006
Phone: 207.626.8800
christina.moylan@maine.gov

Attorney for Plaintiff State of Maine

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR MAINE
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Maine (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/17/2025   Signature: _____

William R. Savage
Assistant Attorney General, Director, Healthcare Crimes Unit
OFFICE OF THE ATTORNEY GENERAL

Jonathan Comish
Assistant Attorney General
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7632
ComishJ@michigan.gov

*Counsel for State of Michigan*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR MICHIGAN**
**RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Michigan (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/25/2025    Signature: _____

Name: DAVID TANAY

Position/Title: DIVISION CHIEF / MFCU DIRECTOR

/s/ Jon M. Woodruff
Jon M. Woodruff
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
(651) 300-7425
jon.woodruff@ag.state.mn.us

*Counsel for the State of Minnesota*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
MINNESOTA
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of MINNESOTA (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz,* Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: **11-19-25**          Signature: _____

Name:     Nicholas Wanka

Position/Title:     Director, Minnesota Medicaid Fraud Control Unit

Minnesota Attorney General's Office

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

FOR PLAINTIFF STATE OF MISSISSIPPI
LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By: /s/ Tricia L. Beale
Tricia L. Beale (MSB #99113)
Consumer Protection Division
Mississippi Attorney General's Office
1141 Bayview Ave., Suite 402
Biloxi, Mississippi 39530
Telephone: 228-386-4404
tricia.beale@ago.ms.gov

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
## [STATE]
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of [STATE] (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the mltidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/20/25          Signature: _Marlin M Miller_

Name: MARLIN A. MILLER

Position/Title: DIRECTOR MFCU, MISSISSIPPI ATTORNEY GENERAL'S

OFFICE

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

*/s/ Brent Mead*
Brent Mead
*Deputy Solicitor General*
Montana Department of Justice
215 North Sanders
P.O. Box 200151
Helena, MT 59620-0151
Telephone: (406)444-2026
Email: brent.mead2@mt.gov

*Counsel for the State of Montana*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
MONTANA
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Montana (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, **Case No. 3:16-cv-02056 (D. Conn.);** *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, **3:19-cv-00710-MPS (D. Conn.); and** *Connecticut et al v. Sandoz, Inc. et al*, **3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania,** *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, **Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/5/2025          Signature: _____

                          Name:  Jacob Griffith

                          Position/Title:  Director

                          _____

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

_/s/ Francisco Benzoni_
Francisco Benzoni
Special Deputy Attorney General
North Carolina Department of Justice
Consumer Protection Division
114 West Edenton Street
Raleigh, NC  27603
Telephone: (919) 716-6000
fbenzoni@ncdoj.gov

_Counsel for Plaintiff State of North Carolina_

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR**
**North Carolina**
**RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of North Carolina (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated:
11/18/25

Signature: _____ For F. Edward Kirby, Jr.

Name: Steve McCallister for F. Edward Kirby, Jr.

Position/Title: Director, NCDOJ, Medicaid Investigations Division

_____

STATE OF NORTH DAKOTA
Drew H. Wrigley
Attorney General

Elin S. Alm
Assistant Attorney General
Director, Consumer Protection & Antitrust Division
Office of Attorney General
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
Tel: (701) 328-5570
ealm@nd.gov

*Counsel for North Dakota*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
NORTH DAKOTA
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of North Dakota (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated:
November 17, 2025

Signature: _____

Name: Jeremy Ensrud

Position/Title: Interim Director, Medicaid Fraud Control Unit

Assistant Attorney General

MICHAEL T. HILGERS
ATTORNEY GENERAL

<u>/s/Justin C. McCully</u>
Justin C. McCully
Assistant Attorney General
Nebraska Department of Justice
2115 State Capitol
402-471-9305
Justin.mccully@nebraska.gov

*Counsel for the State of Nebraska*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR NEBRASKA
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Nebraska (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al,* Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al,* 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz,* Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation,* Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated:  __11-4-2025__          Signature: _____

                              Name:  **D. Mark Collins**

                     Position/Title:  Assistant Attorney General

                                      Director, Medicaid Fraud & Patient Abuse Unit

JOHN M. FORMELLA
Attorney General

/s/Alexandra C. Sosnowski
Alexandra C. Sosnowski
Senior Assistant Attorney General
New Hampshire Department of Justice
Consumer Protection and Antitrust Bureau
One Granite Place South
Concord, N.H. 03301
(603) 271-2678
Alexandra.C.Sosnowski@doj.nh.gov

*Counsel for the State of New Hampshire*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
NEW HAMPSHIRE
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of New Hampshire (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 1/27/26        Signature: _____

Name: Charles O. Bucca

Position/Title: Director, N.H. MFCU

_____

*/s/ Yale A. Leber*

Yale A. Leber
Deputy Attorney General
Division of Law
Antitrust Litigation and Competition Enforcement
124 Halsey Street
PO Box 45029
Newark, NJ 07101
Tel: (862) 381-4150
Yale.Leber@law.njoag.gov

*Counsel for the State of New Jersey*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR NEW JERSEY
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of New Jersey (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/6/2025    Signature: *Heather M. Hadley*

Name: Heather M. Hadley

Position/Title: Director, Medicaid Fraud Control Unit

/s/ Anthony R. Juzaitis
Name:  Anthony R. Juzaitis
Title:  Assistant Attorney General – Deputy Director of Consumer Protection
Agency:  New Mexico Department of Justice
Address: 408 Galisteo St., Santa Fe, NM 87501
Phone:  (505) 651-7565
Email:  AJuzaitis@nmdoj.gov

*Counsel for the State of New Mexico*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
NEW MEXICO
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of New Mexico (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11-7-25

Signature: _____

Name: _____ Joseph Martinez _____

Position/Title: Acting Director _____

New Mexico Medicaid Fraud Control Unit

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

/s/Lucas J. Tucker
Lucas J. Tucker
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson Street
Carson City, NV 89701
Tel: (702) 486-3256
Email: ltucker@ag.nv.gov

*Counsel for the State of Nevada*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
NEVADA
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Nevada (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al,* **Case No. 3:16-cv-02056 (D. Conn.);** *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al,* **3:19-cv-00710-MPS (D. Conn.); and** *Connecticut et al v. Sandoz, Inc. et al,* **3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania,** *In re Generic Pharmaceuticals Pricing Antitrust Litigation,* **Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11-13-25        Signature: _____

Name: ANDREW SCHULKE

Position/Title: CHIEF DEPUTY ATTORNEY GENERAL

MFCU NEVADA

Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General
Economic Justice Division

ELINOR R. HOFFMANN
Chief, Antitrust Bureau
AMY MCFARLANE
Deputy Bureau Chief, Antitrust Bureau


_____/s/ Robert L. Hubbard_____
ROBERT L. HUBBARD
SAAMI ZAIN
ISABELLA PITT
BENJAMIN COLE
Assistant Attorneys General
28 Liberty Street, 20th Floor
New York, NY 10005
212 416-8267
Robert.Hubbard@ag.ny.gov

ATTORNEYS FOR THE STATE OF NEW YORK


Pursuant to this settlement agreement ("Agreement"), the New York State Attorney General will recommend that the Office of the Medicaid Inspector General NOT exercise its authority to impose permissive exclusion on Lannett based on the covered Conduct, as defined in the Agreement.

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR NEW YORK
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of New York (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz,* Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated: 11/26/25          Signature: _____

                         Name:      Paul J. Mahoney

                         Position/Title: Ass't Deputy Attorney General

                                         New York Medicaid Fraud Control Unit

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

FOR PLAINTIFF STATE OF OHIO:

DAVE YOST
ATTORNEY GENERAL


  _/s/ Edward J. Olszewski_

Edward J. Olszewski, Assistant Section Chief, Antitrust
Office of Ohio Attorney General
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
Phone: 614.466.4328
Edward.Olszewski@OhioAGO.gov

*Counsel for Plaintiff State of Ohio*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
## Ohio
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Ohio (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz*, Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: __11/10/25__    Signature: _____

Name: _____

Position/Title: Benjamin Karrasch

Director-Ohio MFCU

_____

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

*s/ Christopher J. Campbell*
Christopher J. Campbell (admitted *pro hac vice*)
Assistant Attorney General
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105
Telephone:     (405) 522-0858
Email:          Chris.Campbell@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR OKLAHOMA
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Oklahoma (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/26/25      Signature: _____

Name:      Charles A. Dickson, III

Position/Title:   Director, Medicaid Fraud Control Unit

_____

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

<u>/s/Gina Ko</u>
Gina Ko
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Email: gina.ko@doj.oregon.gov

*Counsel for the State of Oregon*

### SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR OREGON
### RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of OREGON (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.


**<u>Medicaid Fraud Control Unit</u>**


Dated: 11/17/25          Signature: _____

                         Name: _____
                                      Sheen Y. Wu

                         Position/Title: _____
                                      Director/Attorney in Charge

                                      _____
                                      Oregon DOJ - MFCU

*/s/ Tracy W. Wertz*
Tracy W. Wertz
Chief Deputy Attorney General
Antitrust Section
Joseph S. Betsko
Assistant Chief Deputy Attorney General
Jessica Kuehn
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Phone: (717) 787-4530
Fax: (717) 787-1190
twertz@attorneygeneral.gov

*Counsel for the Commonwealth of Pennsylvania*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR PENNSYLVANIA
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the Commonwealth of Pennsylvania (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al,* Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al,* 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz,* Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated: _**11/3/25**_      Signature:

Name:

Heather M. Albright

Position/Title:

Chief Deputy Attorney General

# Lannett State AG Settlement Agreement

FOR PLAINTIFF CONMMONWEALTH OF PUERTO RICO

LOURDES L. GÓMEZ-TORRES
ATTORNEY GENERAL

 _/s/ Tania L. Fernández-Medero_
TANIA L. FERNÉNDEZ-MEDERO
Deputy Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, Ext. 1204
tfernandez@justicia.pr.gov

_Counsel for Commonwealth of Puerto Rico_

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR PUERTO RICO
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the Commonwealth of PUERTO RICO (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/17/25      Signature: _____

Name: Luis Freire _____

Position/Title: Director _____

_____

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

<u>/s/ *Stephen N. Provazza*</u>
Stephen N. Provazza
Assistant Attorney General
Office of the Attorney General – State of Rhode Island
150 South Main Street
Providence, RI 02903
sprovazza@riag.ri.gov

*Counsel for the State of Rhode Island*

### SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR STATE OF RHODE ISLAND RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Rhode Island (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

**[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/10/2025   Signature: _____

Name: _____
Andrea M. Mauro

Position/Title: _____
Special Assistant Attorney General

Director – RI Medicaid Fraud Control Unit

/s/Mary Frances G. Jowers
Mary Frances G. Jowers
Assistant Deputy Attorney General
South Carolina Office of the Attorney General
PO Box 11549
Columbia, SC  29211
803-734-3996
mfjowers@scag.gov

*Counsel for the State of South Carolina*

### SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR SOUTH CAROLINA
### RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of South Carolina (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, **Case No. 3:16-cv-02056 (D. Conn.);** *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, **3:19-cv-00710-MPS (D. Conn.); and** *Connecticut et al v. Sandoz, Inc. et al*, **3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania,** *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, **Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: **11/17/2025**    Signature: _SGOpet_

Name:    Stephanie G. Opet

Position/Title:    Assistant Deputy Attorney General

Director, SC Medicaid Fraud Control Unit

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

**MARTY J. JACKLEY**
Attorney General
State of South Dakota

/s/

By: Amanda Miiller
Deputy Attorney General
South Dakota Office of the Attorney General
1302 East SD Highway 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
amanda.miiller@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
SOUTH DAKOTA
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of South Dakota (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/12/25        Signature: *Stephen Gemar*

Name: Stephen G. Gemar

Position/Title: Director, South Dakota Medicaid Fraud, Abuse and Neglect Services Unit

**State of Tennessee**
**Jonathan Skrmetti**
**Attorney General**


*Austin C. Ostiguy*

Austin C. Ostiguy
Assistant Attorney General
Daniel Lynch
Assistant Attorney General
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 532-7271
Austin.Ostiguy@ag.tn.gov
Counsel for Tennessee
Dated: 12/10/2025

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR TENNESSEE
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of TENNESSEE (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: *11-18-2025*     Signature: _____

Name: *GENE STEGALL*

Position/Title: *TBI ASSISTANT DIRECTOR,*

*MEDICAID FRAUD CONTROL DIVISION*

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

/s/*Christopher M. Timmons, Esq.*
Name          Christopher M. Timmons
Title         Civil Chief
Agency        Virgin Islands Department of Justice
Address       6151 Estate La Reine, Kingshill VI  00850
Phone         (340) 773-0295
Email         christopher.timmons@doj.vi.gov

*Counsel for the Territory of the United States Virgin Islands*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
United States Virgin Islands
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of the United States Virgin Islands (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

**[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/3/2025   Signature: _____

Name: Julita de leon

Position/Title: Asst Attorney General
MFCU Director

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

Respectfully submitted,

FOR PLAINTIFF STATE OF UTAH
DEREK E. BROWN
UTAH ATTORNEY GENERAL


Marie W.L. Martin
Deputy Division Director,
Office of the Attorney General of Utah
including as counsel for the Utah Division
of Consumer Protection
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Tel: 801-366-0375
Fax: 801-366-0378
mwmartin@agutah.gov

*Attorneys for the State of Utah*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR UTAH
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Utah (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al,* Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz,* Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated: <u>11/05/2025</u>

Signature: *Kaye Lynn Wootton*

Name: Kaye Lynn Wootton

Position/Title: MFCU Director

Assistant Attorney General

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**



**Progress® | RightSignature**

**REFERENCE NUMBER**
0E7457D1-4057-4E15-A1A9-7EE670207D0A

# SIGNATURE CERTIFICATE

| TRANSACTION DETAILS | DOCUMENT DETAILS |
|---|---|
| **Reference Number**<br>0E7457D1-4057-4E15-A1A9-7EE670207D0A | **Document Name**<br>The Lannett Company-1301 - MFCU Signature Page FINAL |
| **Transaction Type**<br>Signature Request | **Filename**<br>The_Lannett_Company-1301_-_MFCU_Signature_Page_FINAL.docx |
| **Sent At**<br>11/05/2025 07:55:46 PM EST | **Pages**<br>1 page |
| **Executed At**<br>11/05/2025 10:12:58 PM EST | **Content Type**<br>application/vnd.openxmlformats-officedocument.wordprocessingml.document |
| **Identity Method**<br>email | **File Size**<br>17.9 KB |
| **Distribution Method**<br>email | **Original Checksum**<br>7cf17bebf3750a0510c1c1a8e733491f2acbb90c36ba28956a70d43b04866764 |
| **Signed Checksum**<br>738d49d105768a829dbb589854f588ad46c38f0f2964a1a6f2cef8dc59a37fc3 | |
| **Signer Sequencing**<br>Disabled | |
| **Document Passcode**<br>Disabled | |

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>Kaye Lynn Wootton | **Status**<br>signed | **Viewed At**<br>11/05/2025 10:11:27 PM EST |
| **Email**<br>kwootton@agutah.gov | **Multi-factor Digital Fingerprint Checksum**<br>4f53cda18c2baa0c0354bb5f9a3ecbe5ed12ab4d8e11ba873c2f11161202b945 | **Identity Authenticated At**<br>11/05/2025 10:12:58 PM EST |
| **Components**<br>5 | **IP Address**<br>63.232.161.46 | **Signed At**<br>11/05/2025 10:12:58 PM EST |
| | **Device**<br>Microsoft Edge via Windows | |
| | **Typed Signature**<br>*Kaye Lynn Wootton* | |
| | **Signature Reference ID**<br>24C8B2E8 | |

## AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 11/05/2025 07:55:46 PM EST | Andra Edmund (andrasedmund@agutah.gov) created document 'The_Lannett_Company-1301_-_MFCU_Signature_Page_FINAL.docx' on Chrome via Windows from 168.178.103.141. |
| 11/05/2025 07:55:46 PM EST | Kaye Lynn Wootton (kwootton@agutah.gov) was emailed a link to sign. |
| 11/05/2025 10:11:27 PM EST | Kaye Lynn Wootton (kwootton@agutah.gov) viewed the document on Microsoft Edge via Windows from 63.232.161.46. |
| 11/05/2025 10:12:58 PM EST | Kaye Lynn Wootton (kwootton@agutah.gov) authenticated via email on Microsoft Edge via Windows from 63.232.161.46. |
| 11/05/2025 10:12:58 PM EST | Kaye Lynn Wootton (kwootton@agutah.gov) signed the document on Microsoft Edge via Windows from 63.232.161.46. |

<u>*/s/Tyler T. Henry*</u>
Tyler T. Henry
Senior Assistant Attorney General
Antitrust Unit
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
(804) 692-0485
THenry@oag.state.va.us

*Counsel for the Commonwealth of Virginia*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
COMMONWEALTH OF VIRGINIA
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the Commonwealth of Virginia (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/19/2025        Signature: _____

Name:    Jill S. Costen

Position/Title:    Director and Chief

Medicaid Fraud Control Unit

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

<u>/s/ Jill S. Abrams</u>
Jill S. Abrams
Assistant Attorney General
Office of the Vermont Attorney General
109 State Street
Montpelier, Vermont 05609
Jill.abrams@vermont.gov

*Counsel for the State of Vermont*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR THE STATE OF VERMONT RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Vermont (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz,* Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/10/2025      Signature: *Elizabeth L. Anderson*

Name: Elizabeth Anderson, AAG

Position/Title: Director, Medicaid Fraud and Residential Abuse Unit

Office of the Vermont Attorney General

**FOR PLAINTIFF STATE OF WASHINGTON**

NICHOLAS W. BROWN
ATTORNEY GENERAL

*s/ Paula Pera C.*
Paula Pera C.
Holly A. Williams
Assistant Attorneys General, Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Tel: (206) 464-7744
paula.pera@atg.wa.gov
holly.williams@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
WASHINGTON
RE THE LANNETT COMPANY-1301**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of  WASHINGTON (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Single State Agency for Medicaid**

Dated: 11/06/2025        Signature: _____

Name:        Trinity Wilson

Position/Title:   Interim Medicaid Director

Health Care Authority

**Medicaid Fraud Control Unit**

Dated: 11/07/25        Signature: _____

Name:        Larissa Payne

Position/Title:   Director

Medicaid Fraud & Abuse Division

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

FOR PLAINTIFF STATE OF WISCONSIN:

JOSHUA L. KAUL

ATTORNEY GENERAL OF WISCONSIN


*/s/ Caitlin M. Madden*
Caitlin M. Madden
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 267-1311
caitlin.madden@wisdoj.gov

*Attorney for the Plaintiff State of Wisconsin*

### SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR WISCONSIN
### RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Wisconsin (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz,* Inc. et al, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**<u>Medicaid Fraud Control Unit</u>**

Dated: 11/17/25

Signature: *Daniel Hess* (electronically signed)

Name: Daniel Hess

Position/Title: AAG - Director of MFCEAU

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

/s/ Douglas L. Davis
Douglas L. Davis
Senior Assistant Attorney General
Consumer Protection and Antitrust Division
West Virginia Attorney General's Office
P.O. Box 1789
(304) 558-8986 phone
(304) 558-0184 fax
douglas.l.davis@wvag.gov

*Counsel for the State of West Virginia*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR
## WEST VIRGINIA
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of West Virginia (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> **[C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.**

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

<u>**Medicaid Fraud Control Unit**</u>

Dated: 11-4-25        Signature: _Jason Nicholas_

Name: _Jason D. Nicholas_

Position/Title: _Senior Assistant Attorney General_

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**

<u>/s/ *Michael T. Kahler*</u>
Michael T. Kahler
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 Capitol Avenue
Cheyenne, WY 82002
(307) 777-7196
mike.kahler@wyo.gov

*Counsel for the State of Wyoming*

## SIGNATURE PAGE FOR THE MEDICAID FRAUD CONTROL UNIT FOR WYOMING
## RE THE LANNETT COMPANY-1301

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval of the Medicaid Fraud Control Unit (MFCU) for the State of Wyoming (the "State") regarding the Settlement Agreement by and among **Lannett Company, Inc. and the States** (as specified in the Settlement Agreement) concerning:

> [C]laims in *Connecticut et al v. Aurobindo Pharma USA, Inc., et al*, Case No. 3:16-cv-02056 (D. Conn.); *Connecticut et al v. Teva Pharmaceuticals USA, Inc. et al*, 3:19-cv-00710-MPS (D. Conn.); and *Connecticut et al v. Sandoz, Inc. et al*, 3:20-cv-00802-MPS (D. Conn.) (collectively, the "Action") upon remand from the multidistrict litigation in the Eastern District of Pennsylvania, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Master Docket No. 16-MD-2724.

By its signature below, the Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**Medicaid Fraud Control Unit**

Dated: 11/03/25    Signature: _____

Name: Travis J. Kirchhefer _____

Position/Title: Director _____

Medicaid Fraud Control Unit _____

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**The Lannett Company-1301**