**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| STATE OF CONNECTICUT, et al., | No. 3:16-cv-02056-MPS |
| *Plaintiffs,* | |
| v. | |
| AUROBINDO PHARMA USA, INC., et al., | |
| *Defendants.* | |
| | |
| STATE OF CONNECTICUT, et al., | No. 3:19-cv-00710-MPS |
| *Plaintiffs*, | |
| v. | |
| TEVA PHARMACEUTICALS USA, INC. et al., | |
| *Defendants*. | |
| | |
| STATE OF CONNECTICUT, et al., | No. 3:20-cv-00802-MPS |
| *Plaintiffs*, | |
| v. | |
| SANDOZ, INC., et al., | |
| *Defendants*. | August 3, 2026 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF STATES' MOTION FOR AN ALLOCATION AND DISTRIBUTION PLAN FOR CONSUMER RESTITUTION FUNDS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................ 1

II.     BACKGROUND ............................................................................................................. 1

III.    STANDARD FOR APPROVAL OF ALLOCATION AND DISTRIBUTION PLANS.... 4

IV.     THE PLAN OF ALLOCATION........................................................................................ 5

    A.  Eligible Consumer.................................................................................................. 6

    B.  Qualifying Purchases ............................................................................................ 7

    C.  The State of Residence Determines Settlement Eligibility.................................... 7

        1.   Heritage Settlement ..................................................................................... 8

        2.   Bausch, Lannett, and Glenmark Settlements................................................ 8

        3.   Apotex Settlement ........................................................................................ 9

    D.  Allocation Framework Previously Approved with the Apotex Settlement .......................... 9

    E.  The States' Proposed Allocation Methodology ..................................................... 10

V.      THE CLAIMS PROCESS AND INITITAL DISTRIBUTION........................................ 12

    A.  Claim Form ......................................................................................................... 13

        1.   Claim Options............................................................................................. 13

        2.   No Proof of Purchase Required................................................................... 14

        3.   Payment Selection ...................................................................................... 14

    B.  Claims Deadline and Late Claims Forms.............................................................. 15

    C.  Fraudulent Claims ............................................................................................... 15

    D.  Review of Claim Forms and Resolution of Disputes............................................ 15

    E.  Determining the Allocation Among Claimants .................................................... 16

    F.  Timing of Consumer Distribution......................................................................... 18

    G.  Future Distributions and Catch-up ...................................................................... 19

    H.  Deadlines, Opt-Outs, and Release........................................................................ 19

VI.     NOTICE PLAN.............................................................................................................. 20

VII.    THE ALLOCATION AND DISTRIBUTION PLAN IS FAIR, ADEQUATE,
        AND REASONABLE..................................................................................................... 22

    A.  Option 1 and Option 2 Allow Equitable Allocation Among Eligible Consumers............. 24

    B.  The Treatment of EPP Consumers and the Proposed Allocation of the Apotex
        Consumer Restitution Funds is Fair and Reasonable........................................... 25

    C.  A Lack of Documentation Requirement Is Fair and Reasonable.................................. 26

D.    Claims Process and Review ................................................................................. 27

E.    Allocation of Consumer Restitution Funds Among Groups of Claims ............................. 28

VIII.    RESERVATION AND RIGHT TO AMEND ................................................................... 30

IX.    CONCLUSION ................................................................................................. 30

APPENDIX 1 ................................................................................................................. 32

## I.    INTRODUCTION

The Plaintiff States[1] ("States") move for preliminary approval of an allocation and distribution plan for settlement funds received in the above-captioned actions ("States' Actions") that are allocated to consumer restitution (the "Allocation and Distribution Plan"). The States intend that the plan regarding allocation of Consumer Restitution Funds[2] will apply to all current and future settlements in the States' Actions, as well as to any restitution funds obtained through litigation proceeds. Further, the States envision that the plan will govern both an initial distribution of restitution funds currently held in escrow for Eligible Consumers and potential future distributions as additional restitution funds are received and added to the escrow account. The plan accounts for differences among the underlying settlements and is consistent with the Court's prior approvals regarding use of settlement funds. The States also propose a robust consumer notice plan and a proposed claim form and claims process that is designed to enable the States to make an initial distribution to Eligible Consumers from the escrowed Consumer Restitution Funds, after final approval of the plan.

## II.    BACKGROUND

A large coalition of States brought three actions against generic drug manufacturers alleging that they conspired to fix prices and allocate markets for many generic drugs in violation

---

[1] "Plaintiff States" or "States" means Connecticut, Alaska, Arizona, California, Colorado, District of Columbia, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, and is intended to include every remaining plaintiff state attorney general in either of the three actions that comprise the States' Actions.
[2] Capitalized terms that are undefined have the same meaning as defined in the Plaintiff States' Plan of Allocation and Distribution of Consumer Restitution Funds.

1

of federal antitrust laws and state antitrust and consumer protection laws. The actions, collectively referred to as the States' Actions, include: (1) a complaint focused on agreements involving Heritage, filed in December 2016, *Connecticut et al. v. Aurobindo Pharma USA, Inc., et al.*, 3:16-cv-02056 (the "*Heritage* Action") which after amendments and consolidation of separate complaints, now encompasses 15 drugs; (2) a complaint focused on over 100 different drugs centered on agreements involving Teva Pharmaceuticals, filed in 2019, *Connecticut et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 3:19-cv-00710 (the "*Teva* Action"); and (3) a complaint focused primarily on dermatology products concerning over 80 different drugs, filed in 2020 (the "Dermatology Action"), *Connecticut et al. v. Sandoz, Inc., et al.*, 3:20-cv-00802 (collectively the "States' Actions").

While litigating the State Actions, Plaintiff States (the "States") have secured final approval of settlement agreements (collectively "Settlements") with the following Defendants: (i) Heritage Pharmaceuticals Inc., Emcure Pharmaceuticals Ltd., and Satish Mehta ("Heritage"); (ii) Apotex Corp. ("Apotex"); (iii) Bausch Health US, LLC and Bausch Health Americas, Inc. ("Bausch"); and (iv) Lannett Company, Inc. ("Lannett"), resolving the States' claims against these Defendants for their participation in an unlawful conspiracy to fix prices and allocate markets for generic pharmaceuticals. Most recently, on July 15, 2026, the States filed a Motion For Preliminary Approval of Settlement with Glenmark Pharmaceuticals, Inc., USA, as ECF Nos. 1009 (3:16-cv-02056-MPS), 968 (3:19-cv-00710-MPS), and 1461 (3:20-cv-00802-MPS).

This Court issued an Order granting final approval of the settlement with Heritage on April 1, 2025, ECF Nos. 767 (3:16-cv-02056-MPS), 635 (3:19-cv-00710-MPS), and 602 (3:20-cv-00802-MPS), with Apotex on August 12, 2025, ECF Nos. 875 (3:16-cv-02056-MPS), 760 (3:19-cv-00710-MPS), and 835 (3:20-cv-00802-MPS), and with Bausch and Lannett on May 27,

2026. ECF Nos. 990 (3:16-cv-02056-MPS), 948 (3:19-cv-00710-MPS), and 1432 (3:20-cv-00802-MPS), allocating a share of the settlement funds to restitution for Eligible Consumers, placing the Consumer Restitution Funds from each settlement into an escrow account, and deferring approval of a plan for the allocation and distribution of the Consumer Restitution Funds to Eligible Consumers. The Consumer Restitution Funds received from the Settlements are currently being held in an escrow account ("Escrow") with Huntington Bank as escrow agent ("Escrow Agent").

The States believe they have accumulated sufficient funds in escrow so that an initial distribution to Eligible Consumers is now appropriate and efficient, and the States wish to start distributing restitution funds to Consumers harmed by Defendants' conduct. The States are therefore seeking the Court's preliminary approval of a plan of allocation and distribution of Consumer Restitution Funds. As part of the proposed Allocation and Distribution Plan, the States also seek Court approval of an initial distribution of Consumer Restitution Funds that have been received and are held in Escrow ("Initial Distribution"), a form for Eligible Consumers to submit claims for eligible purchases of Drugs at Issue ("Claim Form"), and a Notice Plan to inform Consumers of the important aspects of the Allocation and Distribution Plan, including who is eligible for distribution, how to submit a claim, the proposed allocation among claimants, and how an Eligible Consumer may object to the Allocation and Distribution Plan or opt out of the States Actions. And while the proposed Initial Distribution is limited to Consumer Restitution Funds accumulated in Escrow at the time of final approval of the Allocation and Distribution Plan, the States anticipate using the Allocation and Distribution Plan and the Claim Form—subject to any necessary modifications—to administer distributions of Consumer Restitution Funds from future settlements and in future distribution rounds.

3

As a matter of law[3] and policy, the States seek the Court's approval of an Allocation and Distribution Plan for the allocation and distribution of Consumer Restitution Funds. The States have developed a Notice Plan to provide Consumers with an opportunity to comment on and object to the proposed Allocation and Distribution Plan, including a proposed claim form, and a claims process by which Eligible Consumers can submit claims. In addition, the States seek a deadline for Eligible Consumers to opt out of the Allocation and Distribution Plan and the States' litigation in general ("Opt-Out Deadline"), a deadline for Eligible Consumers to comment and object to the Allocation and Distribution Plan ("Objection Deadline"), a deadline for Eligible Consumers to submit a Claim Form ("Claim Deadline"), and a date for final approval of the Allocation and Distribution Plan ("Final Approval Hearing"). The proposed timing for the deadlines and important dates are outlined in Appendix 1 (Timeline of Events) to this Memorandum.

### III. STANDARD FOR APPROVAL OF ALLOCATION AND DISTRIBUTION PLANS

Approval of a plan of distribution is within the discretion of the Court. *In re Chicken,* 669 F.2d 228, 238 (5th Cir. 1982)*; West Virginia v. Chas. Pfizer & Co., Inc.,* 440 F.2d 1079, 1085 (2d Cir. 1971); *White v. National Football League,* 822 F. Supp. 1389, 1417 (D. Minn. 1993). The standard for judicial approval of a settlement agreement, which requires a finding that the settlement is fair, adequate, and reasonable "applies with as much force to the review of the allocation agreement as it does to the review of the overall settlement between plaintiffs and defendants." *In re Chicken Antitrust Litig.,* 669 F.2d at 238; *see, also, In re Citric Acid Antitrust*

---

[3] *See, e.g., Shepherd Park Citizens Ass'n v. Gen. Cinema Beverages of Washington, D.C.,* 584 A.2d 20 (D.C. 1990); D.C. Code § 28-4507); Idaho Code § 48-108(3); Nev. Rev. Stat. 598.0975(3)(b); ORS 646.775(2), (3), (4), and (5).  For citations of the authority pursuant to which each State is acting, see footnote 9 below.

*Litig.*, 145 F. Supp, 2d 1152, 1154 (N.D. Cal. 2001) (Approving a plan for the allocation of a class settlement fund is governed by the same legal standards that apply to approving the settlement terms: the distribution plan must be "fair, reasonable and adequate"). A plan of allocation may be approved so long as it has a "reasonable, rational basis." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400 (CM) (PED), 2010 WL 4537550, at *21 (S.D.N.Y. Nov. 8, 2010); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009). A "plan of allocation need not be perfect." *In re GSE Bonds Antitrust Litigation,* 414 F. Supp.3d *686, 694 (S.D.N.Y. 2019) (quoting In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007)). As shown below, the States' proposed Allocation and Distribution Plan provides a fair, adequate, and reasonable structure for allocating and distributing Consumer Restitution Funds to Eligible Consumers.

### IV.     THE PLAN OF ALLOCATION

The States' proposed Allocation and Distribution Plan accounts for which states have joined each different settlement, a Claimant's state of residence, and, for the Apotex settlement, the Claimants who are only members of the EPP class. The Allocation and Distribution Plan is designed to make it easy for Consumers to submit claims and for Rust Consulting, as Claims Administrator, to review claims, determine eligibility, and calculate payments from the Consumer Restitution Funds. The Allocation and Distribution Plan also includes reasonable safeguards, including claim review and fraud screening, to help prevent improper or fraudulent claims and protect the distribution process. Efficiency, ease of administration, and conservation of public and private resources are highly relevant to the reasonableness of a settlement and distribution plan. *See In re PaineWebber Ltd. Partnership Litig.,* 171 F.R.D. 104, 135, (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997). The "goal of any distribution method is to get as much of the available damages remedy to [consumers] … as possible and in as simple and expedient a manner as

possible." *In re LIBOR-Based Financial Instruments Antitrust Litigation* ("LIBOR")*, 327 F.R.D. 483, 496 (S.D.N.Y. 2018) (quoting 4 William B. Rubenstein, *Newberg on Class Actions* § 12:15 (5th ed.) (Westlaw 2018). "'A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund.'" *LIBOR,* 327 F.R.D. at 496 (quoting *In re Credit Default Swaps Antitrust Litig.*, 13-md-2476 (DLC), 2016 WL 2731524 *9 (S.D.N.Y. April 26, 2016).

The Allocation and Distribution Plan provides that Consumer Restitution Funds from each settlement will be allocated and distributed to Eligible Consumers who submit timely, valid claims ("Claimants"). Eligible Consumers, who are not EPP Consumers, may choose either (1) an equal-share payment (Option 1) or (2) a proportional-share payment based on their estimated out of pocket spending (Option 2), and the selected option is applied to each settlement for which the Consumer is eligible. EPP Consumers will receive a fixed payment amount (to be determined later) from a share of the Consumer Restitution Funds from the Apotex Settlement only. Accordingly, Consumer Restitution Funds from the Apotex Settlement will be allocated among three different groups of Claimants: Claimants who choose Option 1 ("Option 1 Claimants"), Claimants who choose Option 2 ("Option 2 Claimants"), and Claimants who are EPP Consumers ("EPP Claimants"). Consumer Restitution Funds from the other settlements will be allocated among only two groups of Claimants: Option 1 Claimants and Option 2 Claimants. The States propose that an Initial Distribution will take place only after the Court grants final approval of the Allocation and Distribution Plan.

### A. Eligible Consumer

Eligible Consumers are natural persons who purchased any of the Drugs at Issue in the United States between May 1, 2009 and December 31, 2019, not for resale, and not directly from

Defendants. Eligible Consumers cannot be officers, directors, management, or employees of Defendants or their affiliates. Eligibility also requires that the Consumers currently reside in one of the states whose attorney general is a party to the settlement ("Settling States"). For the Apotex Settlement only, Consumers are also eligible if they reside in Alabama, Arkansas, Hawaii, or Texas." A Consumer's place of residence at the time the Claim Form is submitted governs eligibility, not the location of purchase. The address reported on the Claim Form will be used to determine eligibility. Moving after submitting a Claim Form will not forfeit eligibility and may allow recalculation if the new residence increases settlement eligibility. *See,* Allocation and Distribution Plan ¶ I(A).

### B. Qualifying Purchases

Qualifying Purchases, for purposes of eligibility, include any purchase made of a Drug at Issue manufactured by any of the Defendants in the States' Actions, provided the purchase was made in the United States between May 1, 2009 and December 31, 2019, was not for resale, and was not made directly from any Defendant. *See,* Allocation and Distribution Plan ¶ I(B). Any purchase of a Drug at Issue during the Time Period is a Qualifying Purchase for purposes of eligibility to recover from the Consumer Restitution Funds regardless of which Defendant manufactured the drug purchased. This is appropriate because the States are pooling recoveries from all settlements and any future litigation recoveries in this action to maximize and more efficiently deliver relief to their Consumers

### C. The State of Residence Determines Settlement Eligibility.

The Allocation and Distribution Plan provides that Consumer Restitution Funds from each settlement will be allocated among Eligible Consumers who reside in a state that is a party to that settlement and who submit a timely, valid, and complete Claim Form. Additionally, for the Apotex

7

Settlement only, Eligible Consumers who reside in Alabama, Arkansas, Hawaii, or Texas and submit a timely, valid, and complete Claim Form, will be allocated a fixed payment to be determined once all claims have been received and reviewed. *Id*. ¶ I(B). By considering the identity of the Settling States in each of the different settlements and an Eligible Consumer's current state of residence, the Allocation and Distribution Plan allows the States to return money to residents of their states who overpaid for the Drugs at Issue as a result of Defendants' conduct.

### 1.  Heritage Settlement

The Heritage Settlement was joined by 50 jurisdictions.[4] Eligible Consumers residing in those 50 jurisdictions, which are all U.S. jurisdiction except Alabama, Arkansas, Hawaii, Texas, American Samoa, and Guam, are entitled to distribution from the Heritage Consumer Fund upon submitting a timely, valid and complete Claim Form.

### 2.  Bausch, Lannett, and Glenmark Settlements

The Bausch, Lannett, and Glenmark settlements are joined by 48 jurisdictions. Two states from previous settlements, Louisiana and Missouri, were dismissed from the States' Actions since the Heritage settlement was approved and are no longer litigating states. Therefore, Eligible Consumers under these three settlements are Consumers residing in Alaska, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North

---

[4] Connecticut, Alaska, Arizona, California, Colorado, District of Columbia, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. Heritage Settlement page 1.

Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming,[5] and who otherwise meet the eligibility criteria.

### 3. Apotex Settlement

The settling attorneys general in the Apotex settlement included all jurisdictions except Alabama, Arkansas, Hawaii, Texas, Guam, and American Samoa.[6] The Apotex Settlement was a joint settlement that included the End-Payer Plaintiffs (the "EPPs") in the related action *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.) (the "MDL"). Therefore, the allocation and distribution of the Consumer Restitution Funds in the Apotex settlement must account for Eligible Consumers only represented by the EPPs and will necessarily be a little different than the other settlements, because it includes non-litigating states in the State Actions.

### D. Allocation Framework Previously Approved with the Apotex Settlement

When granting approval of the Apotex Settlement, the Court was presented with, and approved, a proposed allocation framework previewing the States' anticipated allocation of settlement funds among Eligible Consumers ("Apotex Allocation Framework"). ECF Nos. 875 (3:16-cv-02056-MPS);    760    (3:19-cv-00710-MPS);    and    835    (3:20-cv-00802-MPS).    This

---

[5] Excluded jurisdictions are Alabama, American Samoa, Arkansas, Guam, Hawaii, Louisiana, Missouri, and Texas.

[6] Alaska, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Virgin Islands, Washington, West Virginia, Wisconsin, and Wyoming. Apotex Settlement ¶ I.Z.

9

framework was noticed to Consumers under the Apotex Notice Plan. Under the approved Apotex Allocation Framework, Eligible Consumers would be entitled to receive payments in proportion to their spend on the Drugs at Issue, except for Consumers residing in a non-settling state on whose behalf only EPPs were settling claims, namely Alabama, Arkansas, Hawaii, and Texas ("EPP Consumers"), who would only be entitled to receive a minimum (in form of a fixed) payment.

### E. The States' Proposed Allocation Methodology

The proposed allocation methodology in the Allocation and Distribution Plan builds on the Apotex Allocation Framework approved in ECF Nos. 875 (3:16-cv-02056-MPS), 760 (3:19-cv-00710-MPS), and 835 (3:20-cv-00802-MPS). The Allocation and Distribution Plan retains the Apotex Allocation Framework's two core components: (1) payments to Eligible Consumers allocated in proportion to each Eligible Consumer's out of pocket spend on the Drugs at Issue, and (2) a fixed (minimum) payment for eligible EPP Consumers. The Allocation and Distribution Plan adds a third option applicable only to Eligible Consumers who are not EPP Consumers: a simple-claim, equal-share option. Under this option, an Eligible Consumer elects to receive an equal share of the Consumer Restitution Funds later allocated to all Qualifying Claimants[7] who make that election. The election will apply to each settlement in which the Consumer is an Eligible Consumer. Accordingly, the Allocation and Distribution Plan will require an Eligible Consumer, who is not an EPP Consumer, to choose between two claim options for receiving payment from the Consumer Restitution Fund:

---

[7] The term Qualifying Claimants is defined in the Allocation and Distribution Plan as Eligible Consumers who submit timely Claim Forms demonstrating valid and accepted claims.

Option 1:       The Consumer elects to receive an equal share of the settlement proceeds available to all Claimants who select this option for each settlement where the Consumer is an Eligible Consumer; or

Option 2:       The Consumer elects to receive a share of the settlement proceeds, for each settlement where the Consumer is an Eligible Consumer, based on the total estimated amount that the Consumer paid out of pocket for any Drug(s) at Issue during the Time Period.

*See,* Allocation and Distribution Plan ¶ II(B). Option 1 is the simplest option because the Consumer does not need to estimate how much the Consumer spent out of pocket on the Drugs at Issue; the Consumer need only select Option 1 on the Claim Form. Eligible Consumers who select Option 1 are likely to *receive less* than those who select Option 2, and at best, will receive the same amount. Option 2 requires additional effort and information but may result in a larger payment. A selection of Option 2 will require a Consumer to consider purchases of Drugs at Issue and estimate the total amount the Consumer paid for Drugs at Issue during the Time Period. And while selecting Option 2 does not require the submission of documentation, such as receipts, with the Claim Form to prove or corroborate the estimated purchases, such documentation may be requested at a later date (and if so, a lack of documentation could affect a Consumer's eligibility or payment amount). By choosing Option 2, a Consumer may receive a payment amount higher than the equal share a Consumer would receive by selecting Option 1, and the payment amount will not be less than if the Consumer chose Option 1. *Id.*

These two options do *not* apply to EPP Consumers (residents of Alabama, Arkansas, Hawaii, and Texas). These EPP Consumers are only entitled to a fixed payment (at an amount that is to be determined), which will be funded only by the Apotex settlement. EPP Consumers will

11

not be able to choose Options 1 or 2. *Id.* ¶ II(C). This is consistent with the previously approved Apotex Allocation Framework. ECF Nos. 875 (3:16-cv-02056-MPS); 760 (3:19-cv-00710-MPS); and 835 (3:20-cv-00802-MPS).

## V.      THE CLAIMS PROCESS AND INITITAL DISTRIBUTION

The States have accumulated approximately $25-30 million[8] in Consumer Restitution Funds from the settlements with Heritage, Apotex, Bausch, Lannett, and Glenmark. Additionally, the States are expecting additional Consumer Restitution Funds from additional settlements that are being finalized. With the amount of Consumer Restitution Funds received, the States are proposing to do an Initial Distribution to Eligible Consumers after the following: (1) completion of a Notice Plan for the Claims Process, (2) the expiration of a Claims Deadline and receipt of all timely Claim Forms[9] by the Claims Administrator; (3) review of the Claim Forms by the Claims Administrator; (4) determination of the amounts recommended to be allocated and paid to Qualifying Claimants (*e.g.*, based on the option selected on the Claim Form and eligibility for the applicable settlements); (5) the resolution of any disputes, and (5) final approval of this Allocation and Distribution Plan by the Court. *See* Allocation and Distribution Plan ¶ IV. Accordingly, the States seek the Court's approval of the Allocation and Distribution Plan's proposed claims process, which includes a Notice Plan, Claim Form, Claim Deadline, claim review, allocation methodology, and the plan for an Initial Distribution. The States contemplate that this proposed claims process and plan for an Initial Distribution will also provide a roadmap for future distributions in this matter. *Id.* ¶ IV (C).

---

[8] The Total amount accumulated and available for distribution will depend on the timing of the final approval of the Allocation and Distribution Plan, including the plan for an Initial Distribution, as well as future settlements, settlement approvals, and settlement payments.

[9] The Claim Form is attached as Exhibit C to the Declaration of Tiffaney Janowicz in Support of States' Motion for Preliminary Approval of an Allocation and Distribution Plan and will be available on the settlement website: www.AGGenericdrugs.com.

Further details on the Allocation and Distribution Plan, including the plan for the Initial Distribution, are outlined in the Allocation and Distribution Plan filed herewith.

### A. Claim Form

The States propose a claims process that is quick and easy to complete. To receive payment from the Consumer Restitution Funds, an Eligible Consumer must submit a valid Claim Form by the Claims Deadline. *See* Allocation and Distribution Plan ¶ II. The Claim Form must include the requested information and a certification that the Consumer meets the eligibility requirements, including the purchase of one or more Drugs at Issue during the Time Period. *Id.* Consumers will be able to submit Claim Forms online via the website [www.AGGenericDrugs.com](www.AGGenericDrugs.com) or by mailing a hard copy of the Claim Form to the Claims Administrator. *Id.* ¶ II(A). A proposed Claim Form is attached to the declaration of Tiffaney Janowicz, filed herewith, as Exhibit C ("Claim Form"). A hard copy of the Claim Form can be downloaded and printed from the settlement website, or a Consumer may request the Claim Form sent to them by mail. *Id.*

### 1. Claim Options

A Consumer who is not an EPP Consumer must choose between Option 1 and Option 2 on the Claim Form. A failure to choose between Option 1 and Option 2 will result in Option 1 being selected. *Id*. ¶ II(B). The Claim Form will have a separate box to check for Eligible Consumers residing in Alabama, Arkansas, Hawaii, and Texas, who will not have the option to choose between Options 1 and 2. The Claim Form will clearly disclose that the allocation to Claimants in Alabama, Arkansas, Hawaii, and Texas will be a fixed payment (at an amount that is to be determined). *See* Exhibit C . Regardless of which option is selected, the Claims Administrator will use the information provided in the Claim Form to determine eligibility for

13

payment and the amount of distribution the Eligible Consumer may receive from the Consumer Restitution Funds. *See* Allocation and Distribution Plan ¶ III(A).

### 2. No Proof of Purchase Required

The States propose that no documents or proof of purchase will be required to submit a Claim Form. The Claim Form will include a statement that the Claims Administrator may ask for additional information if required to validate a claim or corroborate an Option 2 Claimant's estimated out of pocket spend. *Id.* ¶¶ II(B), III(A); *see also* Exhibit C. A Claimant's failure to respond and provide documentation, if requested by the Claims Administrator, could affect a Consumer's eligibility or payment. *Id.* ¶¶ II(B).

### 3. Payment Selection

The Claim Form will require a Consumer to select a preferred payment method, *i.e.,* how a Consumer would like to receive payment. The options will be electronic payment through PayPal, Venmo, or Zelle, or payment via check. *See* Allocation and Distribution Plan ¶ II(D). Payment through electronic form is strongly encouraged. If a Consumer does not have the ability to receive payment electronically, the Consumer may choose to receive payment through a mailed physical check. Mailed checks cost significantly more than electronic payments because of additional processing and delivery costs. Because the States anticipate multiple payments to Consumers, it may be more efficient for the Claims Administrator to delay issuing checks so amounts can be consolidated and duplicative administrative costs avoided. As a result, payment via a mailed check is likely to be considerably delayed compared to electronic payment (possibly by months). If a Consumer selects multiple payment methods, an electronic payment selected by the Consumer will be chosen by the Claims Administrator. *Id.* ¶ II(D). Failure to select a "preferred method of payment" will result in payment via a mailed check. *Id.*

14

### B.  Claims Deadline and Late Claims Forms

The States propose a Claims Deadline of 180 days from the date of the Court's preliminary approval of the proposed Allocation and Distribution Plan. *See* Appendix 1. This will be the deadline for claims that will be considered for the Initial Distribution. Only Consumers who complete and submit a valid Claim Form by the Claims Deadline will be entitled to distribution from the Initial Distribution approved by the Court. The ability to submit Claim Forms will not be removed or closed at the Claims Deadline. Consumers who submit a Claim Form after the Claims Deadline will be considered in any subsequent, future distributions in the States' Actions. If a Consumer fails to submit a valid Claim Form by a future *final* Claims Deadline, that Consumer will be barred from participating in any distribution from the Consumer Restitution Funds (unless otherwise ordered by the Court). *See* Allocation and Distribution Plan ¶ II(E).

### C.  Fraudulent Claims

Because the claims process will be open, online, and will feature electronic payments, the Claims Administrator anticipates receiving fraudulent claims and has implemented processes to identify, address, and prevent fraud. *See* Declaration of Jason Stinehart in Support of the States' Motion for Preliminary Approval of an Allocation and Distribution Plan ("Stinehart Decl.") ¶¶ 9-15; *See* Allocation and Distribution Plan ¶ III(A). Consistent with those safeguards, the Claims Administrator will employ numerous technical safeguards to prevent and detect fraud, as detailed in the submitted declaration. *See* Allocation and Distribution Plan ¶ III(A).

### D.  Review of Claim Forms and Resolution of Disputes

The Claims Administrator will also review Claim Forms for validity, eligibility, completeness, and corroboration (when deemed appropriate by Claims Administrator and States). *See* Allocation and Distribution Plan ¶ III(A). If a Claim Form is incomplete, deficient, or if the

Claims Administrator has any questions, the Claims Administrator will communicate with the Claimant via First Class Mail, email, or telephone. *Id.* The Claims Administrator may also contact a Claimant who selected Option 2 to request documentation or other materials, at the discretion of the Claims Administrator and the States. *Id.* Claimants will have 21 days to cure deficiencies or respond to documentation requests, and if the Claimant does not do so, the claim may be rejected or adjusted. *Id.* In the event of any disputes between Claimants and the Claims Administrator, the decision of the Claims Administrator will be final, subject to the Claimant's right to seek Court review by submitting a written appeal within twenty-one (21) calendar days of the final rejection notice (with copies to the Claims Administrator and the States' counsel). *Id.* ¶ III(B). The final rejection notification from the Claims Administrator will advise the Claimant of the right to seek review. *Id.*; Stinehart Decl. ¶¶ 16-19.

### E. Determining the Allocation Among Claimants

After the Claims Administrator reviews all submitted claims, the States, working with the Claims Administrator, will determine the amount each Claimant is entitled to receive from the Consumer Restitution Funds in the Initial Distribution. Within each settlement, the Consumer Restitution Funds will be allocated between the different groups: Claimants who choose Option 1, Claimants who choose Option 2, and Claimants who are EPP Consumers (for the Apotex Settlement only) ("Allocation Groups"). The Consumer Restitution Funds allocated to Claimants who choose Option 1 will be divided equally between those Option 1 Qualifying Claimants. The Consumer Restitution Funds allocated to Claimants who choose Option 2 will be divided proportionally between Option 2 Claimants, based on reported estimated spend. The share of the Consumer Restitution Funds from the Apotex Settlement that are allocated to Qualifying Claimants who are EPP Consumers will be divided equally between those Qualifying Claimants.

The factors that will determine the allocation of Consumer Restitution Funds among the Allocation Groups will include: (1) the amount of Consumer Restitution Funds available for allocation; (2) total consumer participation, i.e. the number of timely and valid Claim Forms submitted; (3) the number of Qualifying Claimants in each Allocation Group, and (4) the need to ensure that the lowest individual payment amount to any Qualifying Claimant is not so low as to be administratively inefficient or to discourage participation in the claims process. *See* Section VII(E), *infra*. The allocation of Consumer Restitution Funds between the Allocation Groups will be adjusted to ensure that each Option 2 Claimant receives no less than an Option 1 Claimant from the same settlement, and each Option 1 claimant receives no less than an EPP Consumer Claimant from the Apotex settlement. *See* Allocation and Distribution Plan ¶ III(C).

After calculating each Qualifying Claimant's Initial Distribution amount, the Claims Administrator will submit to the Court—along with the States' final-approval motion—a final report explaining the tasks and methodologies employed by the Claims Administrator in processing the claims and determining the amounts for the Initial Distribution. This report will also contain, in redacted form: (1) a list of the Consumers (if any) who submitted Claim Forms that were rejected, adjusted, or changed and the reasons for that action; (2) a list of challenges (if any) made by Claimants, and the disposition of any such challenges; and (3) the date the final decision on any Claimant's challenge was communicated to the Claimant by the Claims Administrator, for purposes of calculating the timeliness of any appeal using the procedure for resolving disputes. *See* Allocation and Distribution Plan ¶ III(D). Additionally, the Claims Administrator will provide reasonable assurances that the Payment List: (a) was compiled in accordance with the Allocation and Distribution Plan; (b) is accurate as to Qualifying Claimants' name, addresses, state of residence, eligibility, option selection, and estimated spend under Option

17

2; and (c) provides all information necessary to make a payment equal to the amount of the available Consumer Restitution Funds allocated to such Qualifying Claimant from the settlements for which the Qualifying Claimant is an Eligible Consumer. *Id.*

### F.  Timing of Consumer Distribution

At the appropriate time, at the direction of the Claims Administrator and the States, the Escrow Agent will make an Initial Distribution of the Consumer Restitution Funds to Qualifying Claimants. This Initial Distribution will only take place after the: (1) expiration of the Claims Deadline and receipt of all timely Claim Forms by the Claims Administrator; (2) review of the Claim Forms by the Claims Administrator; (3) determination of the amounts recommended to be paid to each Qualifying Claimant (*e.g.*, based on the option selected on the Claim Form and eligibility for the applicable settlements); (4) the resolution of any disputes; and (5) final approval of the Allocation and Distribution Plan by the Court. *Id.* ¶ IV(A).

Payments will be made via electronic payment or via mail through a physical check based on the Claimant's choice of payment method on the Claim Form. *Id.* ¶¶ II(D). Once payment is issued by the Claims Administrator, a Claimant will have one hundred eighty (180) days to claim the payment. *Id.* ¶ IV(B). If a Claimant *does not* cash their check or otherwise accept receipt of the payment within one hundred eighty (180) days, the payment will be cancelled and will remain in the Consumer Restitution Funds in the state escrow and be added to the balance available for future distribution to Eligible Consumers. *Id.* A Claimant may request the payment be reissued by contacting the Claims Administrator within ninety (90) days of the expiration date on the initial payment. *Id.* If the Claimant does not contact the Claims Administrator to request the payment be reissued within ninety (90) days of the initial payment expiration date, the Claimant loses all claims to the payment, and the payment amount will remain in the Consumer Restitution Funds.

Thereafter, the Claimant may submit a new updated claim and will only be entitled to a payment amount based on the funds available in future distributions taking place after the submission of the new claim. *Id*. ¶ IV(B)

### G. Future Distributions and Catch-up

All valid Claim Forms submitted by the Claims Deadline will also be considered for all future distributions, as well as Claim Forms submitted after the Claims Deadline. Amounts paid to a Qualifying Claimant in the Initial Distribution will be credited against any future distributions so that new Qualifying Claimants can first receive the amounts they would have received in earlier rounds. *Id*. ¶ IV(C). This approach, where feasible, prioritizes "catching up" Eligible Consumers who submit later claims and qualify for subsequent distribution to the amount they would have received in earlier rounds, so that their timing of submitting a Claim Form alone does not create lasting disparities. Over the life of the program, the goal is parity: by the time the final distribution is completed, similarly situated Qualifying Claimants should end up with comparable total recoveries, consistent with their eligibility and their election between Option 1 and Option 2.

### H. Deadlines, Opt-Outs, and Release

Eligible Consumers are bound by the Allocation and Distribution Plan, unless they opt out using the instructions on the settlement website. *Id*. ¶ IV(C). The States propose that the Court set a deadline for opting out of the Allocation and Distribution Plan and the States' Actions ("Opt-Out Deadline") at approximately twenty-four (24) calendar days prior to the Final Approval Hearing (which is no less than 341 Days from Preliminary Approval). *See* Appendix 1. Eligible Consumers who wish to comment on or object to any aspect of the Allocation and Distribution Plan must file a written objection with the Court. *Id*. ¶ IV(C). The States propose that the Court set a deadline for comments and objections to the Allocation and Distribution Plan ("Objection

19

Deadline") at approximately twenty-four (24) calendar days prior to the Final Approval Hearing (which is no less than 341 Days from Preliminary Approval). *See* Appendix 1. Payments made under the Allocation and Distribution Plan are final as to Claimants, and no claims may be brought against the State Attorneys General, the Claims Administrator, or other State designees for distributions made substantially in accordance with the Plan or Court orders. *See* Allocation and Distribution Plan ¶ IV(E).

## VI.    NOTICE PLAN

The States propose giving notice of the proposed Allocation and Distribution Plan, including the plan of Initial Distribution, according to the Notice Plan set forth in the declaration of Tiffaney Janowicz. *See* Declaration of Tiffaney Janowicz in Support of States' Motion for Preliminary Approval of an Allocation and Distribution Plan ("Janowicz Decl."). To ensure compliance with notice requirements, as well as state and federal laws, the States have retained Rust Consulting, Inc ("Rust") as the Notice and Claims Administrator. Rust is a nationally recognized notice and administration company specializing in the design and implementation of notice and administration programs of all sizes and types in class action settlements and similar matters. *See* Janowicz Decl. ¶¶ 2-3. To ensure that the Notice Plan is successful, the States propose to take various actions to effectuate broad, clear, and concise notice to Consumers – as well as prepare for a fair and thorough claims process.

*First,* Rust has created a website for this case—www.AGGenericDrugs.com—with specifics about the settlements and the litigation. The website's Home page will be modified to present overviews of the Allocation and Distribution Plan and the claims process along with the Consumers' options and relevant deadlines (when available). *Id.* ¶¶ 11-14.

*Second,* Rust has created an email address (info@AGGenericDrugs.com) and a toll-free number (1-866-290-0182) specific to the States' Actions, to answer questions and provide

instructions to Consumers about the litigation, settlements, the Allocation and Distribution Plan, and the claims process for the Initial Distribution. Janowicz Decl. ¶¶ 32-34. The States have developed consumer notices in the Form of a Short Form Notice and Long Form Notice. *See Id.* ¶ 11; Exhibits A, B. These notices will be available on the website or may be requested by mail, email, or telephone. *Id.*. ¶¶ 11, 32-24.

*Third,* Rust will provide some direct notice to Consumers who have registered to receive updates. From the time the first settlement in the States' Actions was announced, Rust has been collecting registrations through the settlement website and by telephone. Janowicz Decl. ¶ 15. When possible, Rust will email the Short Form Notice informing Consumers about the Allocation and Distribution Plan to Consumers who previously registered to receive updates concerning the case status. *Id.* For those Consumers who did not provide an email address with their registration, Rust will mail the Long Form Notice and a copy of the Claim Form. *Id.* A note will accompany both types of notices to let Consumers know that the notice is being sent as a result of their registration. *Id.*

*Fourth*, Rust will implement an extensive paid media program. Janowicz Decl. ¶¶ 16-25**.** This program is designed to ensure that the Notice is placed in media outlets whose audiences are likely to include the notice's target audience and includes digital advertising (digital banner ads on various websites and/or social media) as well as print media through *Reader's Digest* and *Better Homes and Gardens*. *Id.*

*Fifth*, an earned media program will be implemented that includes press releases issued by the States. Janowicz Decl. ¶¶ 26-29. Press releases help inform Eligible Consumers about the Allocation and Distribution Plan through traditional media, such as television, radio, and newspapers, as well as through digital media. *Id.* Additionally, the language of the Summary

21

Notice will be distributed through PR Newswire's Multicultural and US1 Newslines in English, Spanish, and Chinese, as a nationwide press release across the U.S. reaching approximately 14,500 websites, media outlets, and journalists. *Id.*

*Sixth*, Rust will also send the Short Form Notice to 17,500 independent drug stores across the country via mail and email, accompanied with a letter from the States asking pharmacies to post, email or otherwise share the Notice with customers who may have purchased one or more of the drugs at issue. Janowicz Decl. ¶ 30. Additional specifics of the Notice Plan are provided in the Janowicz Declaration. The States believe the Notice Plan provides reasonable notice to Consumers under the circumstances. The States request that this Court approve the Notice Plan, and order that Notice commence within fourteen (14) days after the entry of the Preliminary Approval order, allowing the States' and the Claims Administrator to update the settlement website and ensure the online Claim Form is live and functional. *See* Appendix 1.

## VII.    THE ALLOCATION AND DISTRIBUTION PLAN IS FAIR, ADEQUATE, AND REASONABLE

The Court should approve the Plaintiff States' Allocation and Distribution Plan for the Consumer Restitution Funds because it is fair, adequate, and reasonable under the well-established settlement-approval standard. Approval of a plan of distribution for a settlement fund is governed by the same standards of review applicable to approval of the settlement as a whole—the distribution plan must be fair, reasonable, and adequate. *In re Namenda Direct Purchaser Antitrust Litigation*, 462 F.Supp.3d 307, 316 (S.D.N.Y. 2020); *In re PaineWebber Ltd. Partnership Litig,* 171 F.R.D. at 133. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Am. Bank Note Holographics, Inc.,* 127 F. Supp. 2d 418, 429–30 (S.D.N.Y.2001) (quotation marks omitted).

22

The determination whether the allocation plan is equitable is "squarely within the discretion of the district court." *In re PaineWebber Ltd. Partnership Litig.,* 171 F.R.D. at 132. Factors commonly informing that review include whether the methodology is rationally related to harm alleged, whether similarly situated claimants are treated similarly, whether administrative feasibility and cost are reasonably addressed, and whether safeguards exist against fraud or windfalls. *See, e.g., In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (pro-rata distribution of settlement funds fair and reasonable because it was tied directly to the losses at issue); *Rodriguez v. CPI Aerostructures, Inc.*, 20 CV 982 (ENV) (CLP), 2023 WL 2184496 (S.D.N.Y. Feb. 16, 2023) (pro-rata distribution in proportion to the claim relative to total claims); *In re PaineWebber Ltd. Partnerships Litigation*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) (where real and cognizable differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh- distribution in favor of plaintiffs whose claims are more likely to succeed); *LIBOR*, 327 F.R.D. at 496 (the goal of any distribution method is to get as much of the available damages remedy to claimants as possible and in as simple and expedient a manner as possible); *In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*, No. 02 Cv. 5575(SWK), 2008 WL 2941219 (S.D.N.Y. July 30, 2008) (considering safeguards against fraudulent claims and windfalls to undeserving claimants).

The States' Allocation and Distribution Plan strives to be efficient, fair, and reasonable, to simplify the claims process, and to encourage broad and valid participation. *See In re PaineWebber Ltd. Partnership Litig.,* 171 F.R.D. at 135 (Efficiency, ease of administration and conservation of public and private resources are highly relevant to the reasonableness of a settlement and distribution plan). The Allocation and Distribution Plan provides a rational, claimant-friendly structure that treats similarly situated Consumers alike, offers a meaningful election between two

23

tailored recovery paths, incorporates comprehensive eligibility and anti-fraud measures, and reasonably provides a fixed-amount of recovery for EPP Consumers tied to the Apotex settlement, reflecting the distinct litigation posture of those states. *See, e.g., LIBOR*, 327 F.R.D. 483 (S.D.N.Y. 2018) (finding that the plan struck a reasonable balance between precision and efficiency, even though greater precision could theoretically have been achieved); *In re PaineWebber Ltd. Partnerships Litigation*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) (where real and cognizable differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution in favor of plaintiffs whose claims are more likely to succeed). The Allocation and Distribution Plan is designed to apply uniform rules to all Qualifying Claimants within the different Allocation Groups, maintaining fairness without exceeding available funds. Subsequent distributions will prioritize bringing new Qualifying Claimants current while netting prior payments, promoting equity across the claim lifecycle in order not to disadvantage any Eligible Consumer because of the timing of the claims process. By the end of the litigation in the States' Actions, the goal is to distribute as much money as possible to as many Eligible Consumers as possible in an equitable and fair manner.

**A.  Option 1 and Option 2 Allow Equitable Allocation Among Eligible Consumers.**

The dual-option structure seeks to maximize participation, ensure fairness, and promote administrative efficiency while safeguarding accuracy and due process. In reviewing allocation and distribution plans, courts examine whether the plan equitably treats eligible claimants. *In re Giant Interactive Group, Inc. Securities Litigation*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011). Option 1 delivers quick, low-friction relief for Claimants with modest or uncertain spend or without ability to access records, while Option 2 enables greater accuracy for higher-spend Claimants willing and able to estimate purchases, maximizing individualized fairness. Option 1 ensures that Eligible Consumers who are similarly situated—because they cannot reasonably estimate their spend on

24

the Drugs at Issue—are treated the same by receiving an equal-share payment, and it allows them to submit a claim despite that uncertainty without having to guess the amounts of purchases they made years ago and over several years. Option 2 allows Eligible Consumers who are situated differently—in that they know approximately how much they paid out of pocket for one or more of the Drugs at Issue during the Time Period—to provide that estimate and recover proportionally to that estimated out of pocket spend. The floor applied to Option 2—providing that an Option 2 Claimant will receive no less than if the Claimant chose Option 1—eliminates any downside risk from estimating out of pocket spend and ensures that claimants who seek a spend-based recovery are not penalized relative to the equal-share baseline.

**B. The Treatment of EPP Consumers and the Proposed Allocation of the Apotex Consumer Restitution Funds is Fair and Reasonable**

The States of Alabama, Arkansas, Hawaii, and Texas are not plaintiff states in the States' Actions. Therefore, Consumers residing in those states are not represented by their Attorneys General. Their claims related to purchases of the Drugs at Issue are represented only by the End-Payer Plaintiffs in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.). Their litigation posture differs from that of Consumers who reside in states whose attorneys general are litigating the States' Actions, and that difference supports treating them differently—but equitably—when allocating the Consumer Restitution Funds from the Apotex Settlement for which the EPP Consumers are Eligible Consumers.

Treating EPP Consumers differently than Eligible Consumers in Settling States is fair and reasonable because the claims asserted on their behalf are materially different and riskier. EPP Consumers proceed only through the EPP class claims, which depend on Rule 23 certification and carry greater litigation uncertainty than the States' *parens patria*e and other state-law claims. Allocating based on relative claim strength and risk of non-recovery is common and approved.

25

*See, e.g., In re Remicade Antitrust Litig.*, No. CV 17-4326-KSM, 2023 WL 1850502 (E.D. Pa. Feb. 8, 2023); *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 344 (E.D.N.Y. 2010); *Weinberger v. Kendrick*, 698 F.2d 61, 78 (2d Cir. 1982); *In re PaineWebber Ltd. Partnership Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

The States are bearing all litigation and settlement costs in the States' Actions (*e.g.*, the work and expense of notice, claims administration, and distribution) which also supports allocating greater benefits to their residents. Under the governing standard—whether counsel evaluated the merits and whether the allocation is fair in light of that evaluation—the States' allocation has a rational basis, was properly noticed with opt-out and objection rights, and drew no objections, all of which supports final approval. *See In re PaineWebber Ltd. Partnership Litig.,* 171 F.R.D. at 133.

### C.  A Lack of Documentation Requirement Is Fair and Reasonable

Not requiring the submission of receipts or other documentation of Qualifying Purchases is fair and reasonable under the circumstances of this case. Due to the time that has passed since any eligible purchases were made and that Consumers are unlikely to be able to locate or obtain receipts of eligible purchases, the States believe that a documentation requirement will greatly impede their ability to return money to Eligible Consumers. Requiring Eligible Consumers to obtain and produce documentation of purchases would be unduly burdensome and because of the time that has passed, records may be unavailable. Additionally, requiring the Claims Administrator to collect, review, and verify purchase documentation would impose substantial administrative costs with little corresponding benefit and would delay payments to Qualifying Claimants. Courts

in the Second Circuit have recognized that requiring documentation can render a settlement practically unworkable for class members. *See,* e.g. *In re Initial Public Offering Securities Litigation*, 671 F. Supp. 2d 467, 489 (S.D.N.Y 2009) (acknowledged a wave of objections from class members who argued that required documentation was too burdensome, with claimants noting that records from nearly a decade earlier were unavailable, that the cost in time and effort to assemble documentation exceeded any small settlement recovery, and that many brokerage firms holding relevant records were long gone).

This matter does not readily permit the calculation of accurate, well-documented losses for any Eligible Consumers. Under the circumstances, the allocation and distribution of Consumer Restitution Funds through a claims process that does not generally require receipts or other documentation of Qualifying Purchases has a "reasonable, rational basis," *See In re Am. Bank Note Holographics, Inc.,* 127 F. Supp. 2d at 429, promotes efficiency, ease of administration and conservation of resources, *See In re PaineWebber Ltd. Partnership Litig.,* 171 F.R.D. at 135, aims to distribute as much of the available Consumer Restitution Funds as possible to Eligible Consumers in as simple and expedient manner, *See LIBOR,* 327 F.R.D. at 496, and it "need not be perfect," *See In re GSE Bonds Antitrust Litigation, 414 F. Supp.3d at 694.*

### D.  Claims Process and Review

The claims process and review procedures are fair, adequate, and reasonable. The Claims Administrator will conduct front-end and back-end anti-fraud screening as well as employ various technical safeguards to prevent fraud, verify timeliness and completeness, communicate deficiencies, and allow for cure, with authority to adjust, reject, or (if necessary) convert to Option 1, subject to court review. Stinehart Decl. ¶¶ 9-19; *See In re AOL Time Warner, Inc. Securities &*

27

*"ERISA" Litigation*, No. 02 Cv. 5575(SWK), 2008 WL 2941219 (S.D.N.Y. July 30, 2008) (considering safeguards against fraudulent claims and windfalls to undeserving claimants).

The Allocation and Distribution Plan also provides a dispute resolution mechanism for Consumers whose claims are disputed or rejected. *See e.g. In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 330 F.R.D. 11, 41 (2019) (the court emphasized that claimants must have the opportunity to contest the accuracy of estimates made by the Class Administrator). If the Claims Administrator issues a final rejection or adjustment, the Claimant is notified and may seek Court review within twenty-one (21) calendar days, ensuring an independent avenue of redress, and promoting procedural fairness. *Id.;* Allocation and Distribution Plan ¶ III(B).

The Allocation and Distribution Plan clearly sets out the distribution timeline and the procedures that will govern the process. Before final Court approval and distribution, the Claims Administrator will provide a detailed, redacted report describing the review methodologies, identifying rejections and challenges, and setting forth the timing of final decisions, thereby facilitating judicial oversight. *Id*. ¶ III(D). The Allocation and Distribution Plan satisfies the governing fairness standard for allocation agreements. It reasonably ties recovery to Claimants estimated harm, when possible, treats similarly situated Claimants equally and all Claimants equitably, encourages settlement participation, promotes administrative ease and efficiency and prevents unduly wasting of funds, and implements robust and efficient anti-fraud measures.

### E.  Allocation of Consumer Restitution Funds Among Groups of Claims

The plan for allocation of Consumer Restitution Funds among the Allocation Groups is fair, reasonable, and adequate under the circumstances. The Allocation and Distribution Plan contemplates that the States, will equitably allocate the Consumer Restitution Funds among

Qualifying Claimants across the three Allocation Groups: Claimants who choose Option 1, Claimants who choose Option 2, and (for the Apotex Settlement only) Claimants who are EPP Consumers. This allocation will be guided by several factors, including: (1) the amount of Consumer Restitution Funds available for allocation; (2) total consumer participation, i.e. the number of timely and valid Claim Forms submitted; (3) the number of Qualifying Claimants in each Allocation Group, and (4) the need to ensure that the lowest individual payment amount to any Qualifying Claimant is not so low as to be administratively inefficient or to discourage participation in the claims process. The allocation of Consumer Restitution Funds between the Allocation Groups will be adjusted to ensure that each Option 2 Claimant receives no less than an Option 1 Claimant from the same settlement, and each Option 1 claimant receives no less than an EPP Consumer Claimant from the Apotex settlement. *See* Allocation and Distribution Plan ¶ III(C).

The proposed allocation among the Allocation Groups for the Initial Distribution cannot be performed until after the Claims Deadline and after the Claims Administrator has completed fraud screening and reviewed all Claim Forms for validity, eligibility, and completeness, and has identified the number of Qualifying Claimants in each Allocation Group and the total and individual estimated out of pocket spend reported by Option 2 Qualifying Claimants. Only at that stage will the States, with the Claims Administrator's assistance, be able to calculate an equitable allocation among the Allocation Groups and submit that proposed allocation to the Court for approval. The States' motion for final approval will describe the methodology and factors used to determine the proposed allocation among the Allocation Groups.

Accordingly, the Allocation and Distribution Plan is fair, adequate, and reasonable, and preliminary approval of the Allocation and Distribution Plan, the Notice Plan, the Claim Form,

29

and the Initial Distribution plan, subject to the Court's subsequent review, direction, and final approval, is warranted.

## VIII.    RESERVATION AND RIGHT TO AMEND

The States are cognizant that the current amount of Consumer Restitution Funds is limited and that the number of potential Eligible Consumers may be very large. Nevertheless, after ten years of litigation, the States have a desire to start distributing some meaningful funds to their Consumers who were harmed by Defendants' conduct. Consequently, to guard against the risk of excessive claim volume, the States request that the Court incorporate into its Order a provision expressly authorizing the States to return to the Court and seek the Court's approval to amend or suspend the Allocation and Distribution Plan, including the plan for Initial Distribution, if the number of valid Claims received make an Initial Distribution ineffective, unproductive, or uneconomical.

## IX.    CONCLUSION

For the foregoing reasons, the States respectfully request that the Court grant preliminary approval of (1) the Allocation and Distribution Plan, including the plan for an Initial Distribution, (2) the Claim Forms, and (3) the Notice Plan, and set a (4) date by which Eligible Consumers must submit a Claim Form for the Initial Distribution ("Claim Deadline"), (5) a date by which Eligible Consumers may comment on or file an objection to the Allocation and Distribution Plan ("Objection Deadline"), (6) a date by which Eligible Consumers may opt out of the Allocation and Distribution Plan and the States' Actions ("Opt-Out Deadline"), and (7) a date and time for a final approval hearing ("Final Approval Hearing").

Respectfully submitted August 3, 2026.

| STATE OF NEW YORK | STATE OF NORTH DAKOTA |
|---|---|
| LETITIA JAMES | Drew H. Wrigley |
| Attorney General | Attorney General |

*/s/ Saami Zain*        */s/ Elin S. Alm*

Saami Zain                    Elin S. Alm

| Bar Number phv208392 | Bar number pv207896 |
|---|---|
| Robert Hubbard | Assistant Attorney General |
| Federal Bar No. ct30195 | Director, Consumer Protection & |
| Assistant Attorneys General | Antitrust Division |
| Antitrust Bureau | Office of Attorney General |
| 28 Liberty Street, 20th Floor | 1720 Burlington Drive, Suite C |
| New York, NY 10005 | Bismarck, ND  58504-7736 |
| Tel: (212) 416-8267 | Telephone (701) 328-5570 |
| Robert.Hubbard@ag.ny.gov | Facsimile (701) 328-5568 |
| Saami.Zain@ag.ny.gov | ealm@nd.gov |

*Attorneys for the State of New York*      *Attorney for the State of North Dakota*

STATE OF CONNECTICUT
WILLIAM TONG
ATTORNEY GENERAL

/s/ Cara Moody

Cara L. Moody
Federal Bar No. ct31924
Assistant Attorneys General
Nicole Demers
Federal Bar No. ct27233
Deputy Associate Attorney General
Office of the Attorney General
165 Capitol Ave.
Hartford, CT 06106
Tel: (860) 808-5030
Fax: (860) 808-5391
Cara.Moody@ct.gov
Nicole.Demers@ct.gov

*Counsel for Plaintiff State of Connecticut represents the consent of all Plaintiffs in the above-captioned case pursuant to Section XI.D. of the Electronic Filing Policies and Procedures.*

31

**APPENDIX 1**

**Timeline of Events**

| Event | Deadline |
|---|---|
| **Preliminary Approval** | **0 Days[10] after Preliminary Approval** |
| Notice Plan Begins | 14 Days after Preliminary Approval |
| Notice Plan Ends | 180 Days after Preliminary Approval |
| Claims Deadline | 180 Days after Preliminary Approval |
| Initial Claim Review Begins | 180 Days after Preliminary Approval |
| Initial Claim Review Ends | 305 Days after Preliminary Approval |
| Notices of Rejection Issued and Sent | 305 Days after Preliminary Approval (60 days prior to final approval hearing) |
| Requests for Review  of Notices of Rejection Due | 326 Days after Preliminary Approval (21 days after Notice of Rejection) |
| Opt-Out Deadline | 24 Days prior to the Final Approval Hearing (no less than 341 Days from Preliminary Approval) |
| Objection Deadline | 24 Days prior to the Final Approval Hearing (no less than 341 Days from Preliminary Approval) |
| Motion for Final Approval | 14 Days prior to the Final Approval Hearing (no less than 351 Days from Preliminary Approval) |
| Claims Administrator Report | 14 Days prior to the Final Approval Hearing (no less than 351 Days from Preliminary Approval) |
| **Final Approval Hearing** | **No less than 365 Days from Preliminary Approval** |
| Notice of Distribution | 60 Days after Final Approval |
| Initial Distribution – Starting Issuance of Payments | 90 Days after Final Approval |
| Payment Expiration | 180 Days after issuance |
| Request Reissuance | 90 Days after expiration of initial payment (270 days from issuance of payment) |

---

[10] Days means calendar days in this context.