**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THE STATE OF CONNECTICUT, *et al.*,<br>*Plaintiffs*,<br>v.<br>SANDOZ, INC., *et al.*,<br>*Defendants*. | **Case No. 3:20-cv-00802-MPS**<br>**Hon. Michael P. Shea**<br>**August 28, 2026** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF HECTOR ARMANDO KELLUM'S MOTION FOR CLARIFICATION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .... 1

ARGUMENT .... 2

I. THE OPPOSITION MISCHARACTERIZES THE NATURE OF MR. KELLUM'S MOTION .... 2

A. Mr. Kellum Does Not Seek Reconsideration of a Prior Decision .... 3

B. Mr. Kellum Does Not Seek an Advisory Opinion. .... 5

C. Mr. Kellum Does Not Seek to File a Sur-Reply. .... 5

II. MR. KELLUM TIMELY REVOKED HIS PRIOR FIFTH AMENDMENT INVOCATION. .... 6

III. THE STATES SUFFERED NO UNDUE PREJUDICE FROM MR. KELLUM'S REVOCATION. .... 8

IV. THE COURT SHOULD NOT DRAW ADVERSE INFERENCES FROM MR. KELLUM'S PRIOR INVOCATION OF THE FIFTH AMENDMENT. .... 10

CONCLUSION .... 10

Hector Armando Kellum respectfully submits this reply memorandum of law in support of his Motion for Clarification.

## PRELIMINARY STATEMENT

Unable to identify any undue prejudice arising from Mr. Kellum's timely withdrawal of his assertion of his Fifth Amendment rights, the majority of the Opposition attempts to paint the Motion as procedurally improper, to avoid the States' lack of support for their position against withdrawal. Mr. Kellum is not asking the Court to reconsider a prior decision or issue an advisory opinion, nor is he offering a sur-reply in support of his individual motion for summary judgment. Mr. Kellum simply wants to make sure the Court has the full record before it, including the prior agreement between the parties permitting Mr. Kellum to withdraw his invocation, and to ensure that he will have an opportunity to respond to the statements the Court has made about his prior invocation because he was not a party to the motions in which the Court made those statements.

Clarification is needed because the Court has expressed uncertainty surrounding whether Mr. Kellum continues to invoke the Fifth Amendment and the States have seized on that uncertainty. Mr. Kellum invoked and withdrew his Fifth Amendment privilege pursuant to a stipulation (the "Stipulation") entered while this case was part of *In re Generic Pharms. Pricing Antitrust Litig.* and pending in the Eastern District of Pennsylvania (the "MDL"). The Stipulation permitted Mr. Kellum to invoke the privilege "without prejudice to his ability to later withdraw the invocation of that right" or the need for further court approval. The Stipulation balanced Mr. Kellum's constitutional rights against the potential risk of undue prejudice by allowing the MDL Plaintiffs, including the States, to oppose a second deposition. It is too late for the States to object to the withdrawal now because not only did they not oppose the second deposition, but they admittedly noticed it and questioned Mr. Kellum during it.

Even if this Court were to undertake again the balancing of interests counseled by the Second Circuit in *In re 4003-4005 5th Ave., Brooklyn, N.Y.*—a needless draw on Court resources, since the parties and MDL court already struck that balance when entering the Stipulation—the States have not identified any undue prejudice arising from Mr. Kellum's withdrawal of his Fifth Amendment privilege. The Group 3 summary judgment motions, to which the Court expressed uncertainty about the status of Mr. Kellum's Fifth Amendment invocation, were filed nearly three months after the States deposed Mr. Kellum. The States' opposition briefs were due nearly six months later. The States had plenty of time to address Mr. Kellum's testimony, and address it they did, citing portions they like in their papers. There is thus no principled basis upon which they could argue that no one else can rely on that testimony, too. Accordingly, rather than suffer from any undue prejudice, it is the States that are seeking to unfairly tip the scales in their favor.

## ARGUMENT

### I. THE OPPOSITION MISCHARACTERIZES THE NATURE OF MR. KELLUM'S MOTION.

The Motion for Clarification properly identifies Mr. Kellum's intent: to receive clarification as to his rights in connection with the Court's decisions on other Defendants' motions for summary judgment and to clarify the record for the Court because it has expressed uncertainty surrounding the status of Mr. Kellum's Fifth Amendment invocation. Mot. 1. Mr. Kellum does not ask the Court "to alter or change" its prior summary judgment rulings; rather, he seeks to resolve "ambiguities" that arose from the Court's references to his withdrawal in decisions on motions to which he was not a party. *See Metcalf v. Yale Univ.*, 2019 WL 1767411, at *2 (D. Conn. Jan. 4, 2019). The States misconstrue Mr. Kellum's request because they have no answer on the substance. *See* Opp'n 3-10.

**A. Mr. Kellum Does Not Seek Reconsideration of a Prior Decision.**

Contrary to the States' argument, Mr. Kellum's Motion for Clarification cannot be deemed to be a motion for reconsideration because he is not requesting that the Court alter or change its orders on any Group 3 motions for summary judgment. Opp'n 4. While Mr. Kellum is concerned about the Court drawing an adverse inference arising from his Fifth Amendment invocation on an undeveloped record, those inferences, to date, have not been used against Mr. Kellum. Moreover, the Court has repeatedly explained that it has not made a finding as to whether Mr. Kellum's Fifth Amendment invocation has been withdrawn. *See Connecticut v. Sandoz, Inc.*, 2026 WL 1533866, at *5 n.6 (D. Conn. June 1, 2026) ("I made no findings as to whether [Mr. Kellum] has withdrawn his invocation because that determination was not required to deny reconsideration. I make no such findings here either."); *Connecticut v. Sandoz, Inc.*, 2026 WL 1970994, at *4 n.3 (D. Conn. July 8, 2026) (again making "no such findings" as to whether Mr. Kellum withdrew his Fifth Amendment invocation). Clarifying the factual record concerning an issue on which the Court has "made no findings" but expressed uncertainty, does not require the Court to revisit its prior rulings and certainly is not sanctionable (*contra*, Opp'n 6 n.4).

The cases the States rely upon to recast Mr. Kellum's Motion for Clarification as a request for reconsideration are readily distinguishable from Mr. Kellum's position. In each of those cases, the movant sought "clarification" after an adverse summary judgment ruling in order to pursue an alternative theory of liability, or to revisit an issue that the court had already squarely decided against that movant. *See Colt's Mfg. Co. LLC v. Am. Int'l Specialty Lines Ins. Co.*, 2025 WL 2462900 (D. Conn. Aug. 27, 2025) (following loss on summary judgment, plaintiff filed a motion styled as one for clarification that "could reasonably be understood to be a motion for reconsideration" because the motion "invite[d] the court to amend its ruling to address an alternative theory" of liability); *Davis v. Conn. Cmty. Bank*, No. 3:10-cv-261 (D. Conn. June 11,

2013), ECF No. 377 (denying motion that sought "clarification" of a lost motion for summary judgment); *see also Flexsys Am. LP v. Kumho Tire U.S.A., Inc.*, 726 F. Supp. 2d 778, 786 (N.D. Ohio 2010) (seeking order that a prior ruling did not apply to a patent when the construction of that patent was "squarely addressed" by the original order); *Myers v. Conn. Comm'n of Corr.,* No. 3:23-cv-753, 2025 WL 524346 (D. Conn. Feb. 18, 2025) (denying a motion for reconsideration on a writ of habeas corpus that attempted to relitigate arguments already decided). Here, Mr. Kellum's individual motion for summary judgment has yet to be decided and he seeks no alteration of the Court's prior orders.[1]

While the States also fault Mr. Kellum for explaining why he believes the Court erred in applying an adverse inference in its ruling on the motion for partial summary judgment filed by Actavis Holdco U.S., Inc., Actavis Pharma, Inc., and Actavis Elizabeth, LLC (collectively, "Actavis"), Mr. Kellum did so to explain why he was seeking to clarify that such ruling was made without prejudice to his ability to contest that determination because it appears to rest at least in part on the assumption that Mr. Kellum's April 2025 deposition did not apply to the States' cases. *See* Opp'n 5; Mot. 9, 15-18. The States' assertion that Mr. Kellum "could have and should have made" these arguments earlier, Opp'n 6 (internal quotations omitted), makes no sense because Mr. Kellum was not a party to Actavis's motion and thus had no opportunity to address the propriety of an adverse inference.

[1] While Mr. Kellum is included within the settlement Sandoz Inc. ("Sandoz") negotiated with the States, all States have not yet executed the settlement agreement, and it is important for the Court to have the full record concerning Mr. Kellum's invocation and withdrawal of his Fifth Amendment rights to avoid any further uncertainty or prejudice arising from the States' mischaracterization of the circumstances surrounding Mr. Kellum's withdrawal.

### B. Mr. Kellum Does Not Seek an Advisory Opinion.

Nor does Mr. Kellum seek an advisory opinion. Opp'n 7-8. The States' cases in support of their argument that Mr. Kellum seeks an advisory opinion all involved issues that were not part of the underlying decision on which the party sought clarification or requested "guidelines" from the court concerning the production of privileged documents. *See Honeybee Robotics LLC v. Ensign-Bickford Aerospace & Def. Co.*, 2026 WL 82452, at *3 (S.D.N.Y. Jan. 12, 2026) (denying motion for clarification because the plaintiff "request[ed] an affirmative ruling in its favor on an issue unrelated to an ambiguity in a prior court order"); *In re Google Digital Advert. Antitrust Litig.*, 2023 WL 196146, at *1 (S.D.N.Y. Jan. 17, 2023) (denying request to "clarify the attorney-client privilege and the attorney work product doctrine for purposes of documents produced in the MDL") (internal quotations omitted); *Whitserve, LLC v. GoDaddy.com, Inc.*, 2013 WL 1442449, at *3 (D. Conn. Apr. 9, 2013) (holding that the court "cannot 'clarify' a matter that was not before it at the time it originally ruled"). Mr. Kellum's Motion, by contrast, seeks clarification concerning his rights with respect to an issue that has been discussed in multiple summary judgment decisions over the past few months and to ensure that the Court understands the history of his invocation and subsequent withdrawal as the Court continues to make rulings in the lead up to trial.

### C. Mr. Kellum Does Not Seek to File a Sur-Reply.

Mr. Kellum's Motion for Clarification is also not an attempt at a sur-reply. Opp'n 8-10. Although Mr. Kellum's reply in support of summary judgment and his Motion for Clarification overlap in some respects, the Motion for Clarification does not reargue why he was entitled to judgment on the claims against him. That distinguishes the cases cited by the States. *See McKnight v. Malone*, 2025 WL 834295, at *3 n.4 (D. Md. Mar. 17, 2025) (denying *pro se* plaintiff's motion for clarification because it "consist[ed] largely of case citations and arguments previously raised"); *Greene v. City of Norwalk*, 2016 WL 829864, at *2 (D. Conn. Mar. 1, 2016) (denying motion for

reconsideration because it was "250 days past its prime" and sought to "re-litigate for the third time an issue that has now already been decided twice"). Instead, the Motion focuses entirely on the Court's references to Mr. Kellum's since-withdrawn invocation of the Fifth Amendment, which could not have been addressed in Mr. Kellum's individual summary judgment motion because the Court's statements were made in decisions issued long after Mr. Kellum filed that motion.

## II. MR. KELLUM TIMELY REVOKED HIS PRIOR FIFTH AMENDMENT INVOCATION.

The States' contention that Mr. Kellum has not withdrawn his invocation of the Fifth Amendment misconstrues the facts and the law of this case. Prior to his first deposition in 2023, Mr. Kellum indicated he would invoke his Fifth Amendment rights and negotiated the Stipulation with the States and other parties to preserve his right to later withdraw that invocation. *See* Mot. 5. In return, the States preserved their "right to seek any relief otherwise permitted by law of the Court's Pretrial Order, including but not limited to an adverse inference instruction based on Mr. Kellum's assertion of his Fifth Amendment right against self-incrimination, or to seek or oppose a second deposition of Mr. Kellum if he later withdraws his invocation of that right." *See* Order Approving Joint Stipulation, *In re Generic Pharms. Pricing Antitrust Litig.*, 2:16-md-2724 (E.D. Pa. June 20, 2023), ECF No. 2482 at 3. The Stipulation was entered by the court presiding over this case at the time and it controls here. *See Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 428 (E.D.N.Y. 2011) ("It is well-established that Orders issued by a federal transferee court remain binding if the case is sent back to the transferor court.") (internal quotations omitted).

Allowing parties to stipulate in advance to the conditions governing the invocation of the Fifth Amendment privilege and its subsequent withdrawal fully complies with Second Circuit law. Although the States argue that more was required under *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78 (2d Cir. 1995), the Second

Circuit's reference to an "appropriate motion" does not apply here because Mr. Kellum sought accommodation from the then-presiding court prior to invoking the Fifth Amendment. The MDL court's entry of the Stipulation did exactly what the Second Circuit envisions when a party seeks to withdraw an invocation—it gave the States "every reasonable opportunity to litigate [the] case fully" while avoiding making Mr. Kellum's exercise of his Fifth Amendment rights "unnecessarily costly." *Id.* at 84. Because Mr. Kellum made an application to the court before invoking the Fifth Amendment, *4003-4005 5th Ave.* does not impose an additional requirement to return to the court before withdrawing the invocation. The parties already agreed to the parameters by which Mr. Kellum could do so and the court blessed that arrangement.[2]

The States' proffered interpretation of the Stipulation would render its provisions meaningless. Opp'n 11 n.6. Although the States admit that they noticed Mr. Kellum's second deposition and participated in it, they nonsensically assert that they nonetheless retained the right to both take the deposition *and* seek an adverse inference instruction and exclude Mr. Kellum's testimony from this case. Opp'n 10-11. Once Mr. Kellum withdrew the invocation and the States took his deposition, those rights were extinguished because such right to an adverse inference was meant to apply only if Mr. Kellum (*i*) did not revoke or (*ii*) the States successfully sought to prevent the second deposition from occurring. Under the States' reading, they could depose Mr. Kellum

[2] *State Farm Mutual Auto. Insurance Co. v. CPT Medical Services, Inc.*, upon which the States rely, supports Mr. Kellum's argument that that Stipulation governs this matter. 2005 WL 2736558 (E.D.N.Y. Oct. 24, 2005). In *State Farm*, one of the defendants unilaterally invoked the Fifth Amendment after the court denied his motion to stay discovery pending the outcome of a criminal case against him. *Id.* at *6. As part of the invocation, the defendant amended his interrogatory responses and added language allowing for further supplementation after the criminal trial. *Id.* The court granted plaintiff's motion to strike those portions of the responses that gave the defendant a unilateral right to withdraw his Fifth Amendment privilege, instructing defendant that he would need to apply to the court before withdrawing the privilege, but denied without prejudice plaintiff's motion to preclude the defendant "from offering information in the future as to those matters about which he has asserted the Fifth Amendment." *Id.* at *6-7. Here, Mr. Kellum and the States, with permission of the court, entered into a Stipulation that preserved both Mr. Kellum's right to later revoke his invocation and the States' right to oppose a second deposition. Thus, *State Farm* imposes no obligation on Mr. Kellum to formally move to revoke.

for a second time, decide after the fact that they did not like the substance of his testimony, and then belatedly pretend as if the deposition never occurred. The States' gamesmanship goes even further than that here because they seek to have it both ways—arguing that Mr. Kellum's testimony is inadmissible when Defendants cite it, while simultaneously relying on Mr. Kellum's testimony to further their case. *See* Mot. 7-8, 11. The Stipulation was intended to prevent precisely this type of opportunistic behavior. Indeed, its wording is clear: it permits Mr. Kellum to "later withdraw the invocation of" the Fifth Amendment (with no requirement to apply to the court to do so) and permits the States to "seek any relief otherwise permitted by law or the Court's Pretrial Orders," including "an adverse inference instruction" or "to seek or oppose a second deposition of Mr. Kellum." Stipulation ¶¶ 2-3. The onus to seek relief was not on Mr. Kellum.

## III. THE STATES SUFFERED NO UNDUE PREJUDICE FROM MR. KELLUM'S REVOCATION.

The Opposition does not identify any prejudice arising from Mr. Kellum's revocation, much less undue prejudice. Opp'n 10-14; Mot. 12-15. All that the States offer is a conclusory assertion that they were somehow prejudiced by Mr. Kellum's substantive participation in the case and citations to other cases that are nothing like this one. *See 4003-4005 5th Ave.*, 55 F.3d 78 (claimant obstructed discovery for a year, only invoked the privilege after being ordered to respond, and then sought to withdraw on the eve of trial); *SEC v. Hirshberg*, 173 F.3d 846 (2d Cir. 1999) (defendants waited to withdraw privilege until after summary judgment motion was filed, a key witness had died making any deposition impossible, and the withdrawal came only in the form of a one-sided affidavit with no opportunity for cross-examination); *SEC v. Smart*, 678 F.3d 850 (10th Cir. 2012) (the defendant skipped his own deposition, failed to participate in discovery at all, and only sought to withdraw via self-serving declarations submitted to oppose summary judgment); *SEC v. Merrill Scott & Assocs., Ltd.*, 505 F. Supp. 2d 1193 (D. Utah 2007) (defendant

obstructed discovery for five years, never attended a single opposing deposition, and only submitted sworn responses one month before a summary judgment hearing).

The States' belated complaints about Mr. Kellum's submission of a declaration in connection with separate summary judgment briefing preceding his second deposition do not support a finding of prejudice. Opp'n 11-12.[3] The States did not object to that declaration on the grounds that Mr. Kellum had not properly withdrawn his invocation, and they should not be permitted to do so now. *See* Plaintiff States' Opp'n to Defs' Joint Mot. for Summ. Judg. on Overarching Conspiracy Claims (Feb. 20, 2025), ECF 612; Plaintiff States' Reply in Support of States' Mot. for Partial Summ. Judg. (Feb. 20, 2025), ECF 560 n.14. Moreover, because the Court denied Defendants' motion concerning the overarching conspiracy and granted the States' motion for partial summary judgment, the States suffered no injury. *See* Ruling on Mot. for Summ. Judg. (July 21, 2025), ECF 813; Ruling on Mot. for Summ. Judg. (Dec. 3, 2025), ECF 1123.

Nor were the States prejudiced by Mr. Kellum's second deposition, held April 7–10, 2025. It occurred well before any individual motions for summary judgment were filed (on July 9, 2025), giving the States ample time to address that testimony in their opposition briefs (filed October 7, 2025), and the States had the opportunity to ask Mr. Kellum all of the questions they desired. The States' apparent dislike for Mr. Kellum's testimony does not equate to prejudice.

The States' attempt to distinguish *Huaman v. Sirois*, 2015 WL 1806660, at *4 (D. Conn. Apr. 21, 2015), also misses the mark. Opp'n 12. The States contend that, unlike the defendant in *Huaman*, who gave sworn testimony to internal affairs before invoking the Fifth Amendment in the civil action, Mr. Kellum could tailor his second-deposition testimony to the evidence developed

[3] The November 20, 2024 declaration at issue was first submitted in connection with Defendants' Group 2 joint motion for summary judgment and then filed again in connection with Defendants' opposition to the States Group 1 motion for partial summary judgment.

in discovery and Defendants' theory of the case. But, just as in *Huaman*, the States have sworn statements from Mr. Kellum prior to his deposition in his guilty plea and sentencing hearing, they received Mr. Kellum's Sandoz emails through document productions by Sandoz long prior to his 2025 deposition, and they had records of government interviews that they could and did use to cross-examine Mr. Kellum at his deposition. And, as in *Huaman*, any prejudice to the States arising from Mr. Kellum's prior invocation was cured by "permitting [Mr. Kellum] to be deposed" prior to the filing of individual motions for summary judgment. 2015 WL 1806660, at *4.

## IV. THE COURT SHOULD NOT DRAW ADVERSE INFERENCES FROM MR. KELLUM'S PRIOR INVOCATION OF THE FIFTH AMENDMENT.

Aside from mischaracterizing the nature of the Motion, the States offer no substantive response to Mr. Kellum's argument that adverse inferences should not be drawn from his prior invocation of the Fifth Amendment. Opp'n 6; Mot. 15-18.[4] It is therefore undisputed that the probative value of references to Mr. Kellum's prior invocation is far outweighed by the danger of unfair prejudice, particularly when considering that Mr. Kellum has participated in discovery throughout this case, only asserted the Fifth Amendment until his criminal case concluded, and did not lie in wait for the record to develop before deciding whether to testify. *See* Mot. 16-18.

## CONCLUSION

For the foregoing reasons, Mr. Kellum respectfully requests that the Court (*i*) clarify that its rulings on Actavis's summary judgment motion are made without prejudice to Mr. Kellum's withdrawn assertion of the Fifth Amendment privilege and his ability to contest any adverse inference sought as a result; and (*ii*) consider the full record prior to making further rulings regarding Mr. Kellum's withdrawal of his Fifth Amendment invocation.

---

[4] The MDL court twice declined to impose an adverse inference against Mr. Kellum on summary judgment. *See* Mem. & Order, *In re Generic Pharms. Pricing Antitrust Litig.*, No. 2:16-md-2724 (E.D. Pa. Aug. 26, 2026), ECF 4946 at 22; *In re Generic Pharms. Pricing Antitrust Litig.*, 2025 WL 2483981, at *15-16 (E.D. Pa. Aug. 27, 2025).

Dated: August 28, 2026

By: */s/ Erica S. Weisgerber*
Erica S. Weisgerber (phv208088)
*Admitted Pro Hac Vice*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
eweisgerber@debevoise.com

Edward D. Hassi (phv02634)
*Admitted Pro Hac Vice*
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 383-8000
thassi@debevoise.com