**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THE STATE OF CONNECTICUT; THE STATE OF ALASKA; THE STATE OF ARIZONA; THE STATE OF ARKANSAS; THE STATE OF CALIFORNIA; THE STATE OF COLORADO; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF FLORIDA; THE STATE OF GEORGIA; THE TERRITORY OF GUAM; THE STATE OF HAWAII; THE STATE OF IDAHO; THE STATE OF ILLINOIS; THE STATE OF INDIANA; THE STATE OF IOWA; THE STATE OF KANSAS; THE COMMONWEALTH OF KENTUCKY; THE STATE OF LOUISIANA; THE STATE OF MAINE; THE STATE OF MARYLAND; THE COMMONWEALTH OF MASSACHUSETTS; THE STATE OF MICHIGAN; THE STATE OF MINNESOTA; THE STATE OF MISSISSIPPI; THE STATE OF MONTANA; THE STATE OF NEBRASKA; THE STATE OF NEVADA; THE STATE OF NEW HAMPSHIRE; THE STATE OF NEW JERSEY; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF NORTH DAKOTA; THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS; THE STATE OF OHIO; THE STATE OF OKLAHOMA; THE STATE OF OREGON; THE COMMONWEALTH OF PENNSYLVANIA; THE COMMONWEALTH OF PUERTO RICO; THE STATE OF RHODE ISLAND; THE STATE OF SOUTH CAROLINA; THE STATE OF TENNESSEE; THE STATE OF UTAH; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WASHINGTON; THE STATE OF WEST VIRGINIA; THE STATE OF WISCONSIN; and U.S. VIRGIN ISLANDS,<br><br>*Plaintiffs*,<br><br>v. | No. 3:20-cv-00802-MPS |

SANDOZ, INC.; ACTAVIS HOLDCO US, INC.; ACTAVIS ELIZABETH LLC; ACTAVIS PHARMA, INC.; AMNEAL PHARMACEUTICALS, INC.; AMNEAL PHARMACEUTICALS, LLC; ARA APRAHAMIAN; AUROBINDO PHARMA U.S.A., INC.; BAUSCH HEALTH AMERICAS, INC.; BAUSCH HEALTH US, LLC; MITCHELL BLASHINSKY; DOUGLAS BOOTHE; FOUGERA PHARMACEUTICALS INC.; GLENMARK PHARMACEUTICALS INC., USA; JAMES (JIM) GRAUSO; GREENSTONE LLC; G&W LABORATORIES, INC.; WALTER KACZMAREK; ARMANDO KELLUM; LANNETT COMPANY, INC.; LUPIN PHARMACEUTICALS, INC.; MALLINCKRODT INC.; MALLINCKRODT LLC; MALLINCKRODT plc; MYLAN INC.; MYLAN PHARMACEUTICALS INC.; KURT ORLOFSKI; MICHAEL PERFETTO; PERRIGO NEW YORK, INC.; PFIZER INC.; SUN PHARMACEUTICAL INDUSTRIES, INC.; TARO PHARMACEUTICALS USA, INC.; TELIGENT, INC.; ERIKA VOGEL-BAYLOR; JOHN WESOLOWSKI; and WOCKHARDT USA LLC,

*Defendants*.

**<u>RULING ON MOTION FOR SUMMARY JUDGMENT</u>**

In this action, the Plaintiffs, the Attorneys General of most of the States and several U.S. territories ("the States"), allege that thirty-six pharmaceutical companies and executives ("the Defendants") each participated in a series of conspiracies, as well as an overarching conspiracy, to fix prices, allocate markets, and rig bids in the sale of dozens of generic drug products. ECF No. 196. Defendant Michael Perfetto has moved for summary judgment on all the States' claims. ECF No. 994. I assume familiarity with the factual and procedural background of this case, the parties' briefs and statements of fact, and the applicable legal standards. I incorporate by reference my recent rulings on Taro's and Actavis's motions for summary judgment, ECF Nos. 1410, 1459.

For the reasons set forth below, I GRANT IN PART AND DENY IN PART Perfetto's motion for summary judgment.

## I. BACKGROUND

Perfetto was employed by Actavis from 2003 to 2013 as Vice President of Sales and Marketing, and by Taro from 2013 to August 2017 as its Chief Commercial Officer. ECF No. 1040 ¶ 1. In his role at Actavis, Perfetto oversaw its pricing and bidding for generic drugs. ECF No. 1050-1 ¶ 1. While at Taro, Perfetto was among "key individuals involved in pricing." ECF No. 1036-1 ¶ 39. The States allege that Perfetto participated in antitrust conspiracies covering forty-one generic drugs in his roles at Actavis or Taro. ECF No. 196 ¶¶ 1796–1803.

I assume familiarity with the factual and procedural background of this case, the parties' briefs and statements of fact, and the applicable legal standards. I write only enough to explain my reasoning.

## II. DISCUSSION

Perfetto moves for summary judgment on the grounds that there is no evidence to connect him to the misconduct alleged in the amended complaint, that the States' claims are time-barred, that the States lack standing, and that the state-law claims fail for lack of sufficient forum contacts. Perfetto also moves for summary judgment on the States' request for injunctive relief.

### A. Evidence of Perfetto's Involvement in the Alleged Conspiracies

#### 1. Evidence of Involvement Discussed in Prior Rulings

I have previously ruled on motions for partial summary judgment from both of Perfetto's former employers, Actavis and Taro. In both rulings, I granted summary judgment to the Defendants as to some of the States' claims regarding conspiracies on certain drugs upon finding that the evidence was insufficient for a reasonable jury to conclude that Taro or Actavis more likely than not reached an agreement to fix prices, rig bids, or allocate customers. *See generally* ECF

No. 1410 (Taro ruling); *Connecticut v. Sandoz, Inc.*, No. 20cv802, 2026 WL 1970994 (D. Conn. July 8, 2026) (Actavis ruling). For the same reasons expressed in the Taro ruling, I find that there is not enough evidence for a reasonable juror to find that Perfetto participated in alleged conspiracies as to Acetazolamide, Ammonium lactate cream and lotion, Carbamazepine ER (2009 to 2012 only), Desonide cream, Halobetasol propionate cream and ointment, and Hydrocortisone valerate cream, and I GRANT summary judgment as to those claims. *See* ECF No. 1410 at 184. For the same reasons expressed in the Actavis ruling, I GRANT summary judgment to Perfetto as to the States' claim of an anticompetitive agreement on Fluocinonide solution with Sandoz only.[1] *Sandoz, Inc.*, 2026 WL 1970994, at *19.

For other drugs, I denied summary judgment to Actavis or Taro upon finding that a reasonable jury could find that it was more likely than not that the firm conspired with its competitors. Perfetto argues, however, that even if the States can bring antitrust claims against his employers, he is nonetheless entitled to summary judgment because there is no evidence to connect him to the conduct alleged in the complaint. ECF No. 994-1 at 12 (asserting that the record "is devoid of any evidence that he joined or participated in the alleged conspiracy"). I disagree.

I denied summary judgment to Taro upon finding that a reasonable jury could find that the firm more likely than not participated in conspiracies as to eight of the drugs at issue in Taro's motion for summary judgment. ECF No. 1410 at 184. In finding that the evidence suggested that Taro participated in these conspiracies, I cited evidence of Perfetto's interfirm communications for five of these drugs: Clindamycin phosphate solution (*id.* at 119); Econazole nitrate cream (*id.*

[1] Although I found that Actavis did not conspire with Sandoz on Fluocinonide solution, I denied summary judgment to Actavis on the States' claim that it conspired with Taro. *Sandoz, Inc.*, 2026 WL 1970994, at *17–19. As discussed below, the evidence suggests that Perfetto participated in an agreement between Taro and Actavis on Fluocinonide solution.

at 130–31); Fluocinonide .1% cream (*id*. at 136, 139 (agreement between Taro and Glenmark); *see also Connecticut v. Sandoz, Inc.*, No. 20cv802, 2026 WL 2268225, at *39–40 (D. Conn. Aug. 6, 2026) (discussing agreement between Taro and Perrigo)); Fluocinonide gel (ECF No. 1410 at 141, 143, 146); and Terconazole cream (*id.* at 174). Similarly, in denying summary judgment to Actavis, I cited evidence of Perfetto's interfirm communications for Metronidazole cream and lotion (*Sandoz, Inc.*, 2026 WL 1970994, at *16) and Fluocinonide solution (*id.* at *17 (agreement between Taro and Actavis[2])).

In the present motion, Perfetto makes no arguments about specific drugs but maintains generally that phone records of calls that he had with competitors are benign because they show only that calls were made, that communications between competitors do not permit an inference of conspiracy, and that there is no direct evidence connecting him to any conspiracy. ECF No. 1117 at 13–17. Perfetto is incorrect. Calls that occur "immediately before or after pricing decisions" can be sufficient to establish the interfirm communications plus factor, which, when added to the parallel conduct described in my rulings on Taro's and Actavis's motions, would permit a reasonable juror to infer a conspiracy. *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-CM-27241, 2025 WL 2483981, at *14 (E.D. Pa. Aug. 27, 2025). As I have found previously, "the more frequent and the closer the calls are to a particular movement in the market, the more probative of a conspiracy this evidence becomes." ECF No. 1483 at 86. A reasonable jury could infer from the timing and volume of Perfetto's interfirm communications that coincided with developments in the drug markets that Perfetto participated in conspiracies on these drugs. As such, summary judgment is DENIED as to Clindamycin, Econazole, Fluocinonide .1% cream,

---

[2] Perfetto worked at Taro at the time of these interfirm communications. I addressed these allegations only in the Actavis ruling because Taro did not move for summary judgment on Fluocinonide solution.

Fluocinonide gel, Fluocinonide solution (agreement with Taro), Metronidazole cream and lotion, and Terconazole.

2. Evidence Not Previously Discussed

Although I denied summary judgment to Taro on Alclometasone dipropionate ointment, Metronidazole 1% gel, and Phenytoin, and to Actavis on Nystatin Ointment, I did not cite evidence of Perfetto's participation in a conspiracy concerning these drugs in my previous rulings.

For Alclometasone dipropionate ointment, the States allege that Taro conspired with Sandoz and Glenmark to increase prices in 2013. ECF No. 196 ¶¶ 763–75. The States point to two calls between Perfetto and Glenmark's Mitchell Blashinsky on May 14, 2013. ECF No. 1036-1 States' Additional Material Facts ("SAMF") ¶ 44 (citing ECF No. 951-1 at 140). Three days later, Blashinsky spoke with Sandoz's Christopher Bihari, who testified that their discussion concerned both Alclometasone dipropionate cream and ointment. ECF No. 964-1 at 905. About two weeks after that, Sandoz's Della Lubke called Taro's Doug Statler, who sent an email the next day to Aprahamian and Perfetto, among others at Taro, with Alclometasone "intel" that Sandoz "will go on back order and earliest release is December." ECF No. 946-1 at 162, 164. Aprahamian responded that Taro should "fire it up and lets get back in," i.e., reenter the market. *Id.* at 167. The next day, Taro's Statler called Glenmark's Blashinsky. *Id.* at 160. On June 6, 2013, Aprahamian emailed colleagues that he would "coordinate market adjustment on the ointment," ECF No. 958-1 at 418, and he called Bihari the following day, ECF No. 961-1 at 217. The following week, Taro and Glenmark both reentered the market at the same price. *See* ECF No. 1410 at 19.

As I found in the Taro ruling, the evidence of interfirm communications in close proximity to Taro's reentry into the market tends to exclude the possibility that Taro acted independently in deciding to return to the ointment market and in raising the market price in the process. *Id.* at 102–

06. While the evidence suggests that Aprahamian and Statler were the main forces driving Taro's coordination with its competitors, Perfetto's call to Blashinsky on May 14—during a time when Blashinsky was also communicating with Sandoz about the same drug—suggests that Perfetto was aware of and participated in an agreement between the competitors to raise prices on Alclometasone dipropionate ointment. *See id.* at 107 (finding "the evidence in the record is sufficient for 'a reasonable fact finder to infer that the conspiratorial explanation is more likely than not' in regard to Taro's reentry into the market for Acetazolamide dipropionate ointment." (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87, 98 (2d Cir. 2018))). Perfetto's motion is therefore DENIED as to Alclometasone dipropionate ointment.

The evidence does not suggest, however, that Perfetto similarly participated in Taro's alleged agreements on Metronidazole 1% gel or Phenytoin, or in Actavis's alleged agreement on Nystatin ointment. After reviewing the evidence described in the relevant statements of facts filed by all alleged conspirators on these drugs, I find no evidence that Perfetto communicated with competitors around the time of developments in these markets.[3] While the evidence suggests that Taro's Aprahamian communicated with competitors on Metronidazole 1% gel and Phenytoin, ECF No. 1014 at 165, 169, and that Actavis's Michael Dorsey did the same on Nystatin ointment, *Sandoz, Inc.*, 2026 WL 1970994, at *20–21, the States do not point to any evidence that suggests that Aprahamian or Dorsey then shared these discussions with Perfetto, leaving no reasonable basis to infer that he participated in these conspiracies.

[3] For Phenytoin only, the States point to evidence that Perfetto was present at a trade conference attended by all competitors that directly preceded other evidence of the firms' alleged collusion. ECF No. 1036-1 SAMF ¶ 209; ECF No. 1062 SAMF ¶ 8. Without evidence of Perfetto's later involvement, his attendance at the trade conference suggests only that he had the *opportunity* to collude, which is insufficient by itself to withstand summary judgment. *Maric v. St. Agnes Hosp. Corp.*, 65 F.3d 310, 313 (2d Cir. 1995).

As Perfetto argues, the States cannot "rely on guilty by corporate association" to suggest that because his employers conspired with competitors on Metronidazole 1% gel, Phenytoin, and Nystatin ointment, a jury could reasonably infer that he also joined a conspiracy. *See* ECF No. 1117 at 5–6 (citing *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 463 (1978) (antitrust liability requires "knowing involvement of each defendant, considered individually"). In the absence of any evidence of Perfetto's actual involvement in each single-drug conspiracy, evidence suggesting that Perfetto was aware of and participated in some of his employers' *other* single-drug conspiracies is insufficient to bootstrap him to every alleged conspiracy. *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (holding that merely suggesting that "if it happened there, it could have happened here" is insufficient to support a Sherman Act claim "absent any evidence of linkage between such [other] conduct and conduct here"). The States do not point to evidence of a "direct, logical relationship" between the drugs at issue to provide the requisite evidence of linkage between all the alleged conspiracies. *Ross v. Am. Exp. Co.*, 35 F. Supp. 3d 407, 449 (S.D.N.Y. 2014); *see also* ECF No. 1515 at 7 (finding the same in granting summary judgment to Perrigo executive Douglas Boothe on drugs for which the States lack evidence of his participation).[4] Nor does the evidence suggest that Perfetto must have known of or approved every anticompetitive action taken by others at Taro. For example, the evidence suggests that it was Aprahamian—not Perfetto—who determined both which customers Taro would target upon entering the market for Metronidazole 1% gel (see ECF No. 926-1 at 1300) and which prices to

[4] In the Boothe ruling, I also rejected the States' argument that "the cumulative effect of all the other price fixing and market allocation conspiracies" in which Boothe was directly involved suggested that he was aware of and participated in every conspiracy in which Perrigo was also involved. ECF No. 1515 at 7 (finding "[t]his is not nearly enough, in the absence of any other evidence, for a reasonable jury to find that Boothe more likely than not participated in each of these alleged conspiracies"). The States make no such argument as to Perfetto, but if they had, I would have rejected it for the same reason.

offer them (*see id.* at 933), and who then communicated with Bihari to allocate certain customers. *See* ECF No. 1410 at 74–76, 165–66. A reasonable jury could infer that while Aprahamian reported to Perfetto, he had a certain level of autonomy and did not consult with Perfetto every time he colluded with a competitor. To be sure, Sandoz's Bihari, who is cooperating with the States, testified that during the periods in which he was coordinating pricing and market allocation with Aprahamian, that he "was assuming [Aprahamian] had discussions with Mike Perfetto as well, but I do not know that for certain." ECF No. 964-1 at 800. But this speculative statement from Aprahamian's frequent collaborator does not amount to evidence against Perfetto.

For these reasons, I GRANT summary judgment to Perfetto as to Metronidazole 1% gel, Phenytoin, and Nystatin ointment.

3. General Arguments

As noted, Perfetto did not make drug-specific arguments, and Taro and Actavis did not move for summary judgment as to each drug for which the States bring a claim. Because the parties have not briefed the question of Perfetto's involvement for the remainder of drug products in Count 25, or the question of whether a reasonable jury could find that a conspiracy on these products existed,[5] I decline to reach these questions at this stage. For the purpose of resolving Perfetto's motion, it is sufficient to find that his general challenges to various categories of evidence are all unavailing, largely for reasons discussed in previous rulings.

[5] Some Defendants have moved for summary judgment on a handful of drugs for which the States also bring claims against Perfetto in Count 25. *See, e.g.*, ECF No. 1011-1 at 31–37 (Glenmark's motion on Desoximetasone ointment); ECF No. 975-1 at 11 (Armando Kellum's motion on Methylphenidate HCL extended release). But as these briefs focus on the involvement of other Defendants, they provide no basis to determine whether Perfetto was involved in a particular conspiracy.

Perfetto first takes issue with the testimony of cooperating witness Anthony Thomassey. ECF No. 1117 at 6–7. I have repeatedly rejected other Defendants' challenges to Thomassey's testimony, including challenges to its admissibility. *Sandoz, Inc.*, 2026 WL 2268225, at *26; *Connecticut v. Sandoz, Inc.*, No. 20cv802, 2025 WL 3470502, at *6 n.6 (D. Conn. Dec. 3, 2025). I reject Perfetto's arguments for the same reasons.

Perfetto also argues that I should not draw any adverse inferences as to Ara Aprahamian's Fifth Amendment invocation. ECF No. 1117 at 8. This too is not new territory. I have previously discussed under what circumstances an adverse inference may be drawn from a defendant's invocation of the Fifth Amendment. *See, e.g., Connecticut v. Sandoz, Inc.*, No. 20cv802, 2026 WL 75851, at *11 (D. Conn. Jan. 9, 2026); ECF No. 1410 at 99. In all instances in which I cited Aprahamian's Fifth Amendment invocation, I did so near the end of a list of evidence from which a reasonable juror could infer an unlawful agreement, including, as discussed above, strong circumstantial evidence of interfirm communications timed closely with market movements. Thus, Aprahamian's invocations are minor supplements for other evidence, not substitutes as Perfetto contends.

Finally, Perfetto argues that the States' representation in their Rule 56(a)2 Statement of Additional Material Facts as to Paul Dutra's testimony is misleading. ECF No. 1117 at 8. In their Statement of Additional Material Facts, the States note that Dutra "testified that Mr. Perfetto communicated with Blashinsky (Glenmark) in May of 2013 to coordinate a price increase on Adapalene, Alclometasone cream and Clotrimazole cream."[6] ECF No. 1040 SAMF ¶ 2. The

[6] The States bring claims concerning Alclometasone cream and Clotrimazole cream, but not Adapalene, against Perfetto in Count 25. I make no finding as to these drugs because, as stated above, no party has briefed the issues of Perfetto's involvement or whether a reasonable jury could find that a conspiracy on these drugs existed.

deposition transcript indicates that Dutra testified that (1) as of May 14, 2013, there was an agreement between Glenmark and Taro to raise prices on certain products including Adapalene, Alclometasone cream and Clotrimazole cream, (2) that he was aware that Blashinsky was communicating with Taro in May of 2013 in order to coordinate those price increases, and (3) on May 14, 2013, Blashinsky had multiple calls with Perfetto plus another call with the Taro main office line.[7] ECF No. 964-1 at 2227. The States' representation of Dutra's testimony elides these statements into an inference that a reasonable jury could make upon hearing these statements. But even if the States' description of the testimony is not entirely accurate, that is not a reason to discount the States' evidence of phone records showing calls around market movements that suggest Perfetto participated in these alleged conspiracies.[8]

As my rulings on Taro's and Actavis's motions for summary judgment make clear, the record contains evidence from which a reasonable juror could infer that Perfetto participated in conspiracies to facilitate market allocation and price fixing agreements, at least as to the drugs for which I denied summary judgment above.

[7] Perfetto argues that the States cannot attribute calls to Taro's main office line to Perfetto, as it is "impossible to determine who received or placed them." ECF No. 1117 at 11. I disagree. A jury could reasonably infer from the context of other calls between Blashinsky and Perfetto close in time to the calls that Blashinsky made to the main office line that Blashinsky was again communicating with Perfetto. *See* ECF No. 1410 at 130 n.40 ("Based on prior history of frequent communications between Boothe and Perfetto, and considering the evidence in the light most favorable to the States, I agree that Boothe likely spoke with Perfetto when he called the main Taro office line on this occasion.").

[8] Moreover, Perfetto's reply brief contains a similarly misleading statement regarding the States' position on a material fact. ECF No. 1117 at 9 (asserting that "the States admit that former Perrigo executive Douglas Boothe 'never discussed pricing or allocation of customers' with Mr. Perfetto and denied reaching any agreement with him.'"). The States admitted only that Boothe "*testified that* he never discussed pricing or allocation of customers with" Perfetto; they did not admit that Boothe's testimony was accurate. ECF 979-2 ¶ 80.

**B. Statute of Limitations**

Perfetto also moves for summary judgment on the grounds that all claims against him are time-barred. ECF No. 994-1 at 10. In doing so, he adopts the arguments made by the Defendants in their Joint Motion for Summary Judgment on Statute of Limitations and Laches Grounds, ECF Nos. 617, 618. *See* ECF No. 994-1 at 11 n.3. Perfetto argues that, as asserted in the Defendants' briefing, "all of the States' claims are untimely with respect to all Defendants." ECF No. 994-1 at 11. I rejected this argument in the statute of limitations ruling, finding that the conclusions of the States' expert Dr. Frederick Warren-Boulton "raise a genuine dispute of fact about whether the continued elevated prices for the drugs at issue[] were the product of continuing conspiratorial conduct by the Defendants even beyond the filing of the complaint." *Sandoz, Inc.*, 2025 WL 3043397, at *13. As I found, because "any new purchase at such inflated prices creates a new accrual date for price-fixing claims under the continuing violation doctrine . . . the States' claims are timely to the extent they are related to any drug for which Dr. Warren-Boulton does not indicate an end date for inflated prices." *Id.*

Dr. Warren-Boulton indicated end dates for inflated prices on only two drugs for which the States bring claims against Perfetto—Clotrimazole 1% cream and Triamcinolone acetonide paste.[9] *Id.* (citing ECF No. 711 at 641–42); *see* ECF No. 196 ¶ 1798. For these two drugs, "there is no evidence that the Defendants took any overt acts in the form of sales at supracompetitive prices for the following drugs past" December 31, 2016. *Sandoz, Inc.*, 2025 WL 3043397, at *13. So, in the absence of an overarching conspiracy claim against Perfetto, it appears that the States'

[9] Dr. Warren-Boulton also listed an end date for one strength of Desoximetasone ointment (0.25%), but not for another (0.05%). ECF No. 711 at 641. Because the evidence suggests that sales for at least one strength continued into the limitations period, and the record is not clear as to which strengths the States allege Perfetto conspired, I decline to determine at this stage whether the States' Desoximetasone ointment claims are timely.

claims against Perfetto relating to these drugs accrued more than three years before the filing of the complaint, placing them outside some of the state-law limitation periods. *See id.* at *23–65 (discussing limitations periods for various state laws). Because Perfetto did not analyze this issue or raise any drug-specific arguments in his motion, I will permit the States to file a supplemental brief outlining a basis for the timeliness of their Clotrimazole 1% cream and Triamcinolone acetonide paste claims under laws for which the limitations period is three years or less. The brief must not exceed ten pages and be filed within **fourteen days** of this ruling. If the States do not file a brief, I will grant Perfetto's motion as to Clotrimazole 1% cream and Triamcinolone acetonide paste. If the States do file a brief, Perfetto may file a response not to exceed ten pages and in no more than fourteen days after the States' filing. No further briefing is allowed.

For all other drugs, I find that there is at least a dispute of fact that the States' claims regarding these drugs are timely where the continuing violation doctrine (or analogous methods by which new accrual dates may be set under state law) apply. *See id.* at *15. It does not matter that the latest allegation of anticompetitive conduct by Perfetto himself occurred in 2015 because "foreseeable acts of one co-conspirator in furtherance of the conspiracy are attributable to all co-conspirators" for statute-of-limitations purposes. *United States v. Milstein*, 401 F.3d 53, 72 (2d Cir. 2005). I have already found that the acts in furtherance of the alleged conspiracies here were foreseeable to all co-conspirators. *Sandoz, Inc.*, 2025 WL 3043397, at *10. This includes Perfetto. Moreover, Perfetto offers no argument or evidence that his retirement was an act of affirmative withdrawal from any conspiracy, and so I presume that his participation in the conspiracy continued until the last overt act by any of the conspirators. *Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 288 F. Supp. 2d 325, 329 (E.D.N.Y. 2003) (citing *United States v. Panebianco*, 543 F.2d 447, 453 (2d Cir. 1976)).

For the reasons explained in previous rulings, I deny summary judgment on this ground as to all drugs except Clotrimazole 1% cream and Triamcinolone acetonide paste.

**C. Standing**

Perfetto next argues that the States cannot establish antitrust standing, ECF No. 994-1 at 18, and incorporates the arguments set forth in the Defendants' joint motion, ECF No. 629, as to this argument. I have already addressed and rejected this argument in denying the Defendants' joint motion. *Connecticut v. Sandoz, Inc.*, 820 F. Supp. 3d 125, 143–54 (D. Conn. 2026) (denying joint motion for summary judgment on the basis of antitrust standing with respect to all of the States' damages claims, except the claims for premiums paid to MCOs); *see also* ECF No. 1513 (rejecting Grauso's argument that claims against him should be dismissed for lack of standing).

**D. State-Law Claims**

I have previously addressed Perfetto's constitutional challenges that certain States lack sufficient contacts to the alleged conspiracies to justify imposing state laws. *See Sandoz, Inc.*, 820 F. Supp. 3d at 165–67 (declining to reach the Defendants' dormant Commerce Clause arguments at this stage and denying summary judgment on Due Process and Full Faith and Credit Clauses grounds). For the same reasons expressed in that ruling, I decline to reach any argument that the claims contravene the dormant Commerce Clause, and I otherwise deny summary judgment "because genuine issues of fact exist about whether the Defendants expected that the laws of each State would apply to their conspiratorial agreements." *Id.* at 165.

Perfetto also argues that the state-law claims against him in Count Twenty-Eight of the complaint fail "when the core Sherman Act claim [in Count Twenty-Five] collapses, because they are all premised on the same underlying conduct." ECF No. 994-1 at 19. As I noted in an earlier ruling on Sun's motion for summary judgment, the States have conceded that "the allegations and

evidence in the record pertain 'to Sherman Act conduct' alone." ECF No. 1395 at 39–40 (citing the States' representation made during a status conference, ECF No. 1319 at 10). Thus, the rulings on the various drug claims made above apply equally to Count Twenty-Five and Count Twenty-Eight.

**E. Injunctive Relief**

Perfetto also argues that the States' claim for injunctive relief under Section 16 of the Clayton Act fails because they cannot prove an immediate threat of injury. ECF No. 994-1 at 17. In support, Perfetto asserts that he retired in 2017. *Id.*; ECF No. 1040 ¶ 2; ECF No. 1009-1 ¶ 1 (Interr. Response); ECF No. 1009-2 at 10 ("I've been retired a long time."), 13 (testifying that he retired in 2017). The States do not address Perfetto's argument. *See generally* ECF No. 1039.

Section 16 of the Clayton Act allows plaintiffs to sue for injunctive relief "against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. To obtain injunctive relief, a plaintiff "need only demonstrate a significant threat of injury from an impending violation or from a contemporary violation likely to continue or recur." *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 130 (1969). Because the States have not responded to Perfetto's argument about injunctive relief, I find that the States have abandoned their claim for injunctive relief against Perfetto.[10] *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned"). I therefore GRANT Perfetto's motion as to injunctive relief.

[10] This ruling should *not* be read as suggesting that Perfetto's retirement alone was sufficient to find that his alleged conduct is unlikely to continue or recur. As far as the record shows, nothing prevents him from coming out of retirement.

## III. CONCLUSION

For these reasons, Perfetto's motion for summary judgment is GRANTED as to Acetazolamide, Ammonium Lactate cream and lotion, Carbamazepine ER (2009 to 2012 only), Desonide cream, Halobetasol propionate cream and ointment, Hydrocortisone valerate cream, Metronidazole 1% gel, Nystatin ointment, and Phenytoin, and as to the States' claim for injunctive relief. As for Fluocinonide solution, the motion is GRANTED as to an agreement with Sandoz and DENIED as to an agreement with Taro. I invite the States to provide further briefing on Clotrimazole 1% cream and Triamcinolone acetonide paste and defer judgment on those claims. As to all other claims, the motion is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
September 30, 2026