**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

THE STATE OF CONNECTICUT; THE STATE OF ALASKA; THE STATE OF ARIZONA; THE STATE OF ARKANSAS; THE STATE OF CALIFORNIA; THE STATE OF COLORADO; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF FLORIDA; THE STATE OF GEORGIA; THE TERRITORY OF GUAM; THE STATE OF HAWAII; THE STATE OF IDAHO; THE STATE OF ILLINOIS; THE STATE OF INDIANA; THE STATE OF IOWA; THE STATE OF KANSAS; THE COMMONWEALTH OF KENTUCKY; THE STATE OF LOUISIANA; THE STATE OF MAINE; THE STATE OF MARYLAND; THE COMMONWEALTH OF MASSACHUSETTS; THE STATE OF MICHIGAN; THE STATE OF MINNESOTA; THE STATE OF MISSISSIPPI; THE STATE OF MONTANA; THE STATE OF NEBRASKA; THE STATE OF NEVADA; THE STATE OF NEW HAMPSHIRE; THE STATE OF NEW JERSEY; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF NORTH DAKOTA; THE COMMONWEALTH OF THE NORTHERN MARIANA ISLAND; THE STATE OF OHIO; THE STATE OF OKLAHOMA; THE STATE OF OREGON; THE COMMONWEALTH OF PENNSYLVANIA; THE COMMONWEALTH OF PUERTO RICO; THE STATE OF RHODE ISLAND; THE STATE OF SOUTH CAROLINA; THE STATE OF TENNESSEE; THE STATE OF UTAH; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WASHINGTON; THE STATE OF WEST VIRGINIA; THE STATE OF WISCONSIN; and U.S. VIRGIN ISLANDS,

*Plaintiffs*,

v.

No. 3:20-cv-00802-MPS

SANDOZ, INC.; ACTAVIS HOLDCO US, INC.; ACTAVIS ELIZABETH LLC; ACTAVIS PHARMA, INC.; AMNEAL PHARMACEUTICALS, INC.; AMNEAL PHARMACEUTICALS, LLC; ARA APRAHAMIAN; AUROBINDO PHARMA U.S.A., INC.; BAUSCH HEALTH AMERICAS, INC.; BAUSCH HEALTH US, LLC; MITCHELL BLASHINSKY; DOUGLAS BOOTHE; FOUGERA PHARMACEUTICALS INC.; GLENMARK PHARMACEUTICALS INC., USA; JAMES (JIM) GRAUSO; GREENSTONE LLC; G&W LABORATORIES, INC.; WALTER KACZMAREK; ARMANDO KELLUM; LANNETT COMPANY, INC.; LUPIN PHARMACEUTICALS, INC.; MALLINCKRODT INC.; MALLINCKRODT LLC; MALLINCKRODT plc; MYLAN INC.; MYLAN PHARMACEUTICALS INC.; KURT ORLOFSKI; MICHAEL PERFETTO; PERRIGO NEW YORK, INC.; PFIZER INC.; SUN PHARMACEUTICAL INDUSTRIES, INC.; TARO PHARMACEUTICALS USA, INC.; TELIGENT, INC.; ERIKA VOGEL-BAYLOR; JOHN WESOLOWSKI; and WOCKHARDT USA LLC,

*Defendants*.

**RULING ON MOTION TO PRECLUDE**

In this case brought by State Attorneys General alleging price-fixing and other antitrust violations by generic drug makers, the States move to preclude the testimony of two witnesses, James Nesta and Michael Aigner, who worked for Defendants Mylan Inc. and Mylan Pharmaceuticals Inc. ("Mylan") during the period of alleged misconduct. Both witnesses invoked their right against self-incrimination under the Fifth Amendment in response to all questions during depositions taken in 2022. *See* ECF No. 964-1 at 4–93, 4988–5185. After the close of discovery and after the Court had denied Mylan's motion for summary judgment, Mylan informed the States that the witnesses sought to withdraw their invocations and provide substantive testimony at new depositions. ECF No. 1421. The States ask me to "prevent Mylan from presenting untimely

deposition testimony" from these two witnesses or, in the alternative, to impose "remedial measures," including admitting the witnesses' earlier deposition testimony in which they invoked their Fifth Amendment rights, providing an adverse inference instruction to the jury, requiring that the witnesses testify live, and instructing the witnesses on the potential consequences of their withdrawals.

Since the States filed their motion, there have been two significant developments. First, I have scheduled the trial of the bulk of the allegations in this case to begin on February 3, 2027. Second, the subsequent depositions of the two witnesses, which were jointly noticed in this case and the related MDL proceeding, have been completed, with the States choosing not to attend. So the issue before me now is whether and under what conditions the parties may use the subsequent depositions of the two witnesses at trial. As explained below, I conclude that Mylan (or other Defendants) may use the substantive testimony of Nesta and Aigner but that the States may also use the earlier depositions reflecting Fifth Amendment invocations. I will decide after the pretrial conference whether the witnesses must testify live or whether the parties may designate relevant, non-cumulative portions of the two sets of depositions. I will give an appropriate jury instruction, including an adverse inference instruction. I will not caution the witnesses, who are represented by counsel, about the consequences of their decisions.

## I. BACKGROUND

In addition to this case, the witnesses figure in a multidistrict litigation ("MDL") in the Eastern District of Pennsylvania (No. 16-md-2724), where private plaintiffs have brought claims based on much of the same conduct at issue here. In 2025, ahead of a trial in the MDL, the witnesses purported to withdraw their Fifth Amendment invocations as to a single drug, Clomipramine. ECF Nos. 1421-4 and 1421-5. The MDL court ruled that any witness's revocation

of the Fifth Amendment may be withdrawn provided that the opposing party is notified and resulting depositions occur at least two months before trial. MDL ECF No. 3348 at 6. In November 2025, the witnesses provided substantive testimony about Clomipramine at second depositions but stated that they would continue to invoke the Fifth Amendment in response to questions about other drugs or cases. *See, e.g.*, ECF No. 1421-5, at 13–15. Although Clomipramine is also at issue in another case before me (No. 19cv710, "*Teva*"), the States opted not to participate in the 2025 depositions because the witnesses had not asked this Court to withdraw their invocations and because fact discovery in this case had closed in October 2023. ECF No. 1444-1 at 2.

In January 2026, I denied summary judgment to Mylan in this case. ECF No. 1149. On April 17, 2026, the States learned that the witnesses intended to withdraw their invocations. ECF No. 1421-2 at 8. On April 24, Mylan's counsel asked whether the States would consent to a motion to withdraw the witnesses' Fifth Amendment invocations. ECF No. 1421-2 at 4. On May 6, the States indicated that they would not consent to a motion "absent agreement to admit their Fifth Amendment testimony at trial and other conditions," including an "instruct[ion to] the jury that it may draw an adverse inference from these invocations." *Id.* On May 13, the States followed up to ask if the witnesses would proceed with filing motions to withdraw and whether the Defendants would agree to the States' conditions. *Id.* at 3–4. On May 14 and 15, Mylan and the witnesses indicated they would not agree to the conditions the States proposed. *Id.* at 2–3. On May 18, the private plaintiffs in the MDL agreed to open discovery for the limited purpose of deposing the witnesses in early July. ECF No. 1421-3 at 2.

On May 20, 2026, the States filed the present motion to preclude. ECF No. 1421. In its opposition brief, Mylan contends that the witnesses were in the process of preparing a motion to withdraw their Fifth Amendment invocations when the States filed the motion. ECF No. 1444 at

12 n.13. Mylan also requests that the Court view its opposition as a motion to withdraw the witnesses' invocations, to the extent a motion is necessary.[1] *Id.*

With the present motion still pending, counsel for the private plaintiffs in the MDL deposed Aigner for seven hours on July 15 and Nesta for fifteen hours on July 21–22. ECF No. 1520 at 1–2. The States did not attend these depositions after informing Mylan that "they would not participate in the depositions unless Mylan received this Court's permission to re-open discovery before the depositions proceeded." *Id.* at 2.

## II. LEGAL STANDARD

It is well established that a civil litigant may invoke the Fifth Amendment privilege against self-incrimination and that the privilege extends to the discovery process. *See United States v. 4003–4005 5th Ave.,* 55 F.3d 78, 82 (2d Cir.1995). "Consideration of a motion seeking leave to withdraw the invocation of a Fifth Amendment privilege calls for an exercise of discretion by the reviewing court." *Huaman v. Sirois*, No. 13cv484, 2015 WL 1806660, at *1 (D. Conn. Apr. 21, 2015). The Second Circuit has held that "courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege." *4003–4005 5th Ave.*, 55 F.3d at 84. But the Second Circuit has also cautioned that withdrawal of the claim of privilege should not "be permitted carelessly," and that "trial courts must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties." *Id.* The court further advised:

> If it appears that a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery process, trial courts, to prevent prejudice to opposing parties, may adopt remedial procedures or impose sanctions. In such circumstances,

[1] I make no determination in this ruling as to whether a witness must seek leave of Court to withdraw an invocation of the Fifth Amendment privilege.

> particularly if the litigant's request to waive comes only at the "eleventh hour" and appears to be part of a manipulative, "cat-and-mouse approach" to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege.

*Id.* at 84–85 (citations omitted); *see also Huaman,* 2015 WL 1806660, at *2–4 (analyzing the legitimacy of the invocation and the prejudice to the plaintiff in determining whether to grant a withdrawal motion).

## III. DISCUSSION

### A. Preclusion

In accordance with the overriding "goal of permitting as much testimony as possible," I will permit Mylan or any other party to use the witnesses' July 2026 testimony in this case. The witnesses' revocation did not come on the eve of trial; the Court had not yet set any trial date when the witnesses were deposed. Even now trial remains over three months away. *Compare Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989) (precluding defendant from testifying four days before trial after refusing to answer questions during discovery and holding that "[a] defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial"). Moreover, Mylan provided the States with notice and the opportunity to participate in all of the witnesses' depositions. The States' decision not to attend or cross-examine the witnesses at their 2026 depositions was a tactical decision that has no bearing on a determination of prejudice. While, as I discuss below, there is some unfair prejudice to the States from the timing of the witnesses' decisions to withdraw their Fifth Amendment assertions, I find that "the goal of permitting as much testimony as possible

to be presented," *4003–4005 5th Ave.*, 55 F.3d at 84, must prevail here, and I can take other steps to address the prejudice to the States.[2]

So I DENY the States' motion insofar as it seeks to preclude Nesta's and Aigner's withdrawal of their Fifth Amendment invocations or the use of their recent depositions in this action.

**B. Remedial Measures**

The witnesses' decisions to withdraw their Fifth Amendment invocations after the close of discovery and after my ruling denying Mylan's motion for summary judgment do not come without consequences. *See Huaman,* 2015 WL 1806660, at *2 (highlighting the importance of striking a balance between the parties); *In re Capacitors Antitrust Litig.*, No. 17-md-2801, 2020 WL 13985044, at *1 (N.D. Cal. Jan. 15, 2020) (noting "there is enough time [before trial] to strike a balance between the parties" and implementing conditions on subsequent depositions). As noted, the Second Circuit has held that trial courts have the discretion to "adopt remedial procedures" in circumstances in which the request to withdraw invocations "appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation." *4003-4005 5th Ave.*, 55 F.3d at 84–85. I find that the Second Circuit's "cat-and-mouse" description fits Mylan's approach here and thus that remedial measures are warranted.

The timing of the witnesses' decisions to withdraw their invocations of the Fifth Amendment privilege strongly suggests these decisions stemmed from a desire to give Mylan a litigation advantage, rather than from any change in the prospect of criminal prosecution. Even if

[2] This determination is based on facts specific to Nesta and Aigner's Fifth Amendment invocations and is not an invitation for the Defendants to notice depositions for other witnesses who have previously invoked the Fifth Amendment.

the initial invocation of the privilege in 2022 was driven by legitimate concerns about prosecution,[3] neither the witnesses nor Mylan has adequately explained whether the same concerns persisted until 2026 or even when they chose to provide substantive testimony as to a single drug in November 2025 ahead of the MDL trial. Mylan and the witnesses have made vague assertions that "the threat of prosecution has diminished over time," but none points to any specific development in the DOJ investigation—such as a declination letter, the expiration of a particular statute of limitations, or other indication that the witnesses no longer faced a risk of prosecution. *See* ECF No. 1444 at 17 (Mylan asserting that the witnesses "concluded the threat of prosecution has diminished over time"); ECF No. 1444-4 at 1 (declaration from Aigner's counsel noting that "[t]he circumstances surrounding the Department of Justice ["DOJ"] investigation progressed and materially changed following Mr. Aigner's 2022 invocation, including public developments indicating that the investigation's focus had changed over time"); ECF No. 1443 at 3 (Nesta citing July 2024 corporate press release announcing that the DOJ had advised that Mylan was no longer a subject of its antitrust investigation). As the States point out, the witnesses at their Clomipramine depositions either "denied the existence of any communications [with the DOJ] or invoked attorney-client privilege" when asked about any changes in their perception of the possibility of prosecution. ECF No. 1421-1 at 8 (citing ECF No. 1421-4 at 5–7; ECF No. 1421-5 at 5–7). Nor do Mylan or the witnesses even attempt to point to any development since their November 2025 Clomipramine depositions that altered the risk of criminal prosecution as to all drugs other than Clomipramine. In short, Mylan and the witnesses point to nothing related to the risk of criminal

[3] Mylan and Nesta appear to offer contradictory explanations regarding the applicable criminal statute of limitations. Mylan contends that it is nearly impossible to know when or whether the statute of limitations expired, *see* ECF No. 1444 at 20 n.19, while Nesta avers that he seeks to revoke his prior invocations "[b]ecause the applicable criminal statute of limitations, under any possible theory, has expired." ECF No. 1443 at 4.

prosecution—which should be the rationale for invoking the Fifth Amendment privilege in the first place—that would explain why the witnesses agreed to withdraw their assertions of the privilege.

I agree with the States that "the only changed circumstance" that appears to explain the timing of the withdrawals is the progression of litigation against Mylan. ECF No. 1421-1 at 8; *see* ECF No. 1444 at 18 n.17 (Mylan confirming that "the witnesses have now agreed to testify because the *Humana I* trial is approaching and the parties in the MDL are subject to [that Court's] prior order providing guidance on when, before trial, withdrawal of a Fifth Amendment invocation is appropriate"). Mylan admits that the purpose of the witnesses' withdrawals is "to provide substantive testimony for use at trial." ECF No. 1444 at 10. And there is evidence that Mylan has substantial ability to control the witnesses' decision as to whether and when to drop their Fifth Amendment shields to provide substantive testimony. *See, e.g.*, ECF No. 1421-4 at 7–8, 11–13 (Nesta testifying at Clomipramine deposition that Mylan had "referred" him to his counsel; that Mylan "has. . . represented [him] working with [his counsel]"; that Mylan is paying his attorney's fees; that he signed an agreement to "represent my company"; that if he fails to "cooperate or do the right thing" or "lie[s] in any way," he will be required to repay the legal fees; and that Mylan will indemnify him unless the law requires otherwise).

Mylan has secured an advantage from the timing of the witnesses' decisions. Withdrawing the Fifth Amendment privilege after the Court's ruling on summary judgment provides the witnesses with the opportunity to "tailor their responses to rebut the States' case without fear of extrinsic impeachment." ECF No. 1421-1 at 10. That the States had the opportunity to cross-examine the witnesses at their recent depositions does not wholly eliminate the inherent advantage for the Defendants that the timing of this maneuver provides. Ordinarily, a witness being deposed

has no opportunity to frame answers around what all the other witnesses might have said, let alone to fill gaps or shore up weaknesses identified in a court's summary judgment ruling. Further, such a late deposition risks opening the door for additional discovery, which, here, would leave the States to choose between delaying trial while they moved the Court to reopen discovery to obtain rebuttal evidence and pushing ahead with trial without the extrinsic evidence that could support their case.

All of this suggests that the timing of the witnesses' decisions to withdraw their Fifth Amendment invocations "appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation," *4003-4005 5th Ave.*, 55 F.3d at 85, in which Mylan is pulling the strings. Further, because neither Mylan nor the witnesses point to anything suggesting the witnesses could not have made the same withdrawal decision years earlier,[4] the States have also suffered the prejudice of the witnesses' fading memories. Mylan does not dispute that Nesta testified that he could not remember in response to over one hundred questions at his November 2025 Clomipramine deposition. *See* ECF No. 1421-1 at 11 n.6. So while I will allow the testimony, I find it necessary to craft the following remedial measures.

First, I will admit the witnesses' prior invocations of the Fifth Amendment privilege as evidence at the upcoming trial and instruct the jury that they may draw an adverse inference based on the witnesses' prior claims of privilege. *See SEC v. Dibella*, No. 04cv1342, 2007 WL 1395105, at *3–4 (D. Conn. May 8, 2007) ("Allowing the jury to hear evidence of Defendant's invocation of the Fifth amendment privilege prevents the privilege from being used as a weapon, which

[4] As noted, Nesta points to a corporate press release in July 2024 in which a Mylan-related entity announced that the DOJ no longer considered the company to be a subject of its investigation. It remains unclear, however, when the DOJ first communicated that determination to Mylan's counsel and whether that determination meant that Nesta and Aigner no longer had reason to fear prosecution.

furthers the policy behind the inference."). In *Dibella*, the court permitted the jury to draw an adverse inference where the revoked invocations came "almost a year after Plaintiff began producing documents to Defendants, and less than six months before" trial. *Id.* Similarly, the witnesses' withdrawal here comes years after the discovery period in this case came and went, and months after the Court's denial of summary judgment to Mylan. It will be up to the jury to determine whether the witnesses invoked the privilege because of legitimate threats of criminal prosecution or because they wanted to avoid providing substantive testimony in this case. *See, e.g.*, *SEC v. Cassano*, No. 99-cv-3822, 2000 WL 1512617, at *2 n.1 (S.D.N.Y. Oct. 11, 2000) (noting that the fact that a witness's Fifth Amendment invocation "occurred some time ago and that these witnesses subsequently have waived the privilege in this action goes to the weight of the inference, not to the propriety of drawing it"). Allowing the States to introduce the earlier Fifth Amendment invocations, along with evidence of the timing of the witnesses' decisions to change course, would permit the jury to see a fuller picture and to assess the credibility of the witnesses' substantive responses with more information.

To afford the jury the full breadth of the evidence these witnesses have to offer, they would testify live and be permitted to explain why they made the decisions to initially invoke the Fifth Amendment and then to drop that shield; at their depositions, however, they invoked the attorney-client privilege in response to questions on that subject. At this time, I will reserve on whether to (1) require Mylan to produce the witnesses for live testimony, and (2) allow them to waive the attorney-client privilege, likely subject to additional pretrial discovery by the States, to explain the rationales for their changing stances with respect to the Fifth Amendment.

Because the witnesses are both represented by counsel, I decline the States' request to caution the witnesses about their Fifth Amendment protections and the consequences of waiving them.

**IV. CONCLUSION**

The States' Motion to Preclude the testimony of witnesses James Nesta and Michael Aigner is DENIED insofar as it seeks to preclude the witnesses' withdrawal of their Fifth Amendment invocations. The Motion is GRANTED as to the remedial measures described herein. I will decide whether to require live testimony and to allow explanations of the witnesses' decisions after the November 12 pretrial conference, to which the witnesses and their lawyers are invited.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
October 16, 2026